**<u>EXHIBIT B</u>**

**Redline**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AZZUR GROUP HOLDINGS, LLC, *et al.*,[1] | Case No. 25-10342 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Related D.I.: [__] & [__]13** |

**ORDER (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH SALE OF ASSETS OF THE DEBTORS AND RELATED BID PROTECTIONS, (II) APPROVING FORM AND MANNER OF NOTICE, (III) SCHEDULING AUCTION AND SALE HEARING, (IV) AUTHORIZING PROCEDURES GOVERNING ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND UNEXPIRED LEASES, AND (V) GRANTING RELATED RELIEF**

Upon the motion [Docket No. [●]D.I. 13] (the "Motion")[2] of the Debtors in the above-captioned chapter 11 cases (the Chapter 11 Cases") seeking, pursuant to sections 105, 363, 365, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014 and Local Rules 2002-1, 6004-1, 9006-1, and 9013-1(m), an order (this "Order") (a) approving certain bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures") in connection with the Sale(s) of the Debtors' Assets, including in relation to (i) the "Acquired Assets" that comprise the "Business" as such terms are defined in that certain Asset Purchase Agreement, dated as of March 2, 2025 (as, and as amended by that certain letter agreement, dated as of March 27, 2025, the form of which is attached hereto as **Exhibit 2** (as further amended, restated, supplemented, or otherwise modified from time to time, the "Stalking Horse

---

[1] A list of the Debtors in these chapterChapter 11 casesCases, along with the last four digits of each Debtor's federal tax identification number, may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Azzur. The Debtors' headquarters and the mailing address for the Debtors is 330 South Warminster Road, Suite 341, Hatboro, PA 19040.

[2] Capitalized terms not otherwise defined in this Order shall have the meanings given to them in the Motion or the Bidding Procedures, as applicable.

APA"), by and among the Debtors, as "Sellers", and Eliquent Life Sciences, Inc. (and any permitted assignee under the Stalking Horse APA), as "Purchaser" (the "Stalking Horse Bidder"), and such Acquired Assets and such Business, the "Consulting Business", and the Bid set forth in the Stalking Horse APA, the "Stalking Horse Bid", and (ii) the Assets related to the COD Business, and the form and manner of notice thereof, substantially in the form attached hereto as **Exhibit 23** (the "Sale Notice"), (b) authorizing the Debtors to designate the Stalking Horse Bidder and approving the Bid Protections in accordance with the Bidding Procedures, (c) approving the form and manner of notice of the Stalking Horse APA (and the transactions contemplated therein), the Sale of the Consulting Business to the Stalking Horse Bidder, and Stalking Horse Sale Objection Deadline in the form of the notice attached as **Exhibit 34** to this Order (the "Stalking Horse Sale Objection Deadline Notice"), (d) scheduling an Auction and a Sale Hearing in connection with the Sale, (e) establishing certain assumption and assignment procedures and approving the form and manner of notice thereof, substantially in the form attached hereto as **Exhibit 45** (the "Assumption and Assignment Notice"); and (f) approving the form and manner of notice of the Successful Bidder Notice in the form of the notice attached hereto as **Exhibit 56** (the "Successful Bidder Notice") and the Court having reviewed the Motion and conducted a hearing to consider the relief requested therein regarding the Bidding Procedures and related matters (the "Bidding Procedures Hearing"); and the Court having considered the First Day Declaration, and the statements of counsel in support of the Motion, and the evidence presented at the Bidding Procedures Hearing; and after due deliberation and sufficient cause appearing therefor, it is hereby **FOUND AND DETERMINED THAT**:[3]

---

[3]  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. All findings of fact and

A.      The Court has jurisdiction over this matter and over the property of the Debtors and their bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.   This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).   The statutory predicates for the relief sought herein are sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, and Local Rules 2002-1, 6004-1, 9006-1, and 9013-1(m).  Venue of the Chapter 11 Cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The Debtors have offered good and sufficient reasons for, and the best interest of their estates will be served by, the Court granting the Motion to the extent provided in this Order, including (i) approving the Bidding Procedures, attached hereto as **Exhibit 1**, and the form and manner of notice thereof substantially in the form of the Sale Notice, attached hereto as **Exhibit 2~~3~~**, (ii) approving the form and manner of notice of the Stalking Horse APA (and the transactions contemplated therein), the Sale of the Consulting Business to the Stalking Horse Bidder, and Stalking Horse Sale Objection Deadline in the form of the Stalking Horse Sale Objection Deadline Notice, attached hereto as **Exhibit 3~~4~~**, (iii) approving the form and manner of notice of procedures governing the assumption and assignment of certain contracts and unexpired leases in the form of the Assumption and Assignment Notice, attached hereto as **Exhibit 4~~5~~**; (iv) approving the Successful Bidder Notice, attached hereto as **Exhibit 5~~6~~**, and (v) scheduling a hearing to authorize and approve the Debtors' assumption and assignment of the Assigned Contracts.

---

conclusions of law announced by the Court at the Bidding Procedures Hearing are hereby incorporated herein to the extent not inconsistent herewith.

C.      **Notice of the Bidding Procedures Motion.**  Good and sufficient notice of the relief sought in the Motion has been given under the circumstances, and no further notice is required except as set forth herein with respect to the Auction and the Sale Hearing.  Subject to the immediately preceding sentence, a reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

D.      **Bidding Procedures Motion.**  In accordance with Local Rules 6004-1 and 9013-1, the Debtors have properly filed and noticed the Motion.  The issuance and immediate effectiveness of this Order as of the date hereof, including approval of the Bidding Procedures, is supported by evidence of compelling business justifications and other circumstances demonstrating that the relief granted by this Order is necessary and appropriate.

E.      **Sale Notice**.  The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is appropriate, sufficient, and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, proposed Sale(s), and the Sale Hearing, including, without limitation:  (a) the date, time, and place of the Auction (if any) and the Sale Hearing and related objection deadline, including the Non-Stalking Horse Sale Objection Deadline; (b) the Bidding Procedures; and (c) the Sale(s) being free and clear of liens, claims, encumbrances, and other interests (except as set forth in the applicable purchase agreement), and no other or further notice of the Auction, the Sale Hearing, the Bidding Procedures, or Sale(s) shall be required.

F.      **Stalking Horse Sale Objection Deadline Notice**.  The Stalking Horse Sale Objection Deadline Notice, substantially in the form attached hereto as **Exhibit ~~3~~4**, is appropriate, sufficient, and reasonably calculated to provide all interested parties with timely and proper notice of the Stalking Horse APA and the transactions contemplated therein, the Sale of the Consulting Business to the Stalking Horse Bidder free and clear of liens, claims,

encumbrances, and other interests (except as set forth in the Stalking Horse APA), and the Stalking Horse Sale Objection Deadline, and no other or further notice of the Stalking Horse APA, the Sale of the Consulting Business to the Stalking Horse Bidder, or the Stalking Horse Sale Objection Deadline shall be required.

       G.     **Assumption and Assignment Procedures**.  The Assumption and Assignment Notice, substantially in the form attached hereto as **Exhibit 45**, is appropriate, sufficient, and reasonably calculated to provide all non-Debtor Counterparties to the Debtors' Contracts and Leases with proper notice of the potential assumption and assignment of their Contracts and Leases, the proposed cure amounts relating thereto, and the Assumption and Assignment Procedures, and no other or further notice of such potential assumption and assignment, cure amounts, or the Assumption and Assignment Procedures shall be required; *provided* that the mere listing of any Contract or Lease on the Assumption and Assignment Notice does not require or guarantee that such Contract or Lease will be assumed and assigned, and all rights of the Debtors and the Stalking Horse Bidder with respect to such Contract or Lease are hereby reserved.  The Assumption and Assignment Procedures and the Assumption and Assignment Notice are reasonable and appropriate, tailored to provide an adequate opportunity for all counterparties to assert any objections to the potential assumption and assignment of any Contracts and Leases and related Cure Costs, and comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

       H.     **Successful Bidder Notice**.  The Successful Bidder Notice, substantially in the form attached hereto as **Exhibit 56**, is appropriate, sufficient, and reasonably calculated to provide all interested parties with timely and proper notice of the proposed Successful Bid(s), including, without limitation: (a) the Successful Bidder(s); (b) the Back-Up Bidder(s), if

applicable; (c) the key terms of the proposed Sale; and (d) the date, time, and place of the Sale Hearing.

I.      **Stalking Horse APA**.   The Stalking Horse Bid contemplated by the Stalking Horse Agreement, attached to the Motion as Exhibit B, satisfies the requirements necessary to be deemed a Qualified Bid.

J.      **Bidding Procedures.** The Bidding Procedures are fair, reasonable, and appropriate under the circumstances; were negotiated at arm's-length and in good faith by the Debtors and the Stalking Horse Bidder; are reasonably designed to maximize the value to be achieved for the Assets for the benefit of the Debtors' estates, their creditors, and other parties in interest; and are consistent with the Debtors' exercise of their respective duties under applicable law.

K.      **Bid Protections.** Subject to approval at the Sale Hearing: (i) the Debtors have demonstrated a compelling business justification for the payment of the Bid Protections under the circumstances set forth in the Stalking Horse APA; and (ii) the Bid Protections, to the extent payable under the Stalking Horse APA, (a) are an actual and necessary cost of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code, (b) are of substantial benefit to the Debtors' estates and are commensurate to the real and material benefits conferred upon the Debtors' estates by the Stalking Horse Bidder, (c) are fair, reasonable and appropriate, including in light of the size and nature of the Sale and the efforts that have been and will be expended by the Stalking Horse Bidder, (d) have been negotiated by the parties and their respective advisors at arm's-length and in good faith, and (e) are necessary to ensure that the Stalking Horse Bidder will continue to pursue the Sale.  The Bid Protections are a material inducement for, and condition of, the Stalking Horse Bidder's entry into the

1617765414.4

Stalking Horse APA. The Stalking Horse Bidder is unwilling to commit to purchase the Assets under the terms of the Stalking Horse APA unless the Stalking Horse Bidder is assured payment of the Bid Protections in accordance with the Stalking Horse APA.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED to the extent provided herein.  All objections to the entry of this Order or to the relief provided herein that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled.

2.      The Debtors are authorized to enter into and perform their obligations under the Stalking Horse APA, subject to higher or other better offers in accordance with this Order and the Bidding Procedures.  ~~The Stalking Horse APA is a valid agreement enforceable in accordance with its terms without further order of the Court.~~

3.      The Bidding Procedures, attached as **Exhibit 1** to this Order, are hereby approved in their entirety, incorporated by reference as if fully set forth herein, and shall govern the ~~auction~~Auction and sale process relating to the Assets.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.  The Debtors and Stretto, Inc., their claims and noticing agent, are authorized to take any and all actions necessary to implement the Bidding Procedures and any notice contemplated by this Order or the Bidding Procedures.

4.      On March 3, 6, 10, 21, and 24, 2025, the Debtors provided due and adequate notice to all non-Debtor Counterparties to the Debtors' Contracts and Leases of the potential assumption and assignment of their Contracts and Leases, the proposed cure amounts relating

thereto, and the Assumption and Assignment Procedures, through the filing and service of the Assumption and Assignment Notice as provided for in the ~~affidavit~~affidavits of service filed on the docket of the ~~chapter~~Chapter 11 ~~cases at Docket No. [●]~~ (Cases at D.I. Nos. 47, 114-15, 123, and 135 (collectively, the "Assumption and Assignment Notice AOS").

5.        On March 3, 2025, the Debtors provided due and adequate notice of the proposed Stalking Horse APA and the transactions contemplated therein, the Sale of the Consulting Business to the Stalking Horse Bidder, and the Stalking Horse Sale Objection Deadline through the filing and service of the Stalking Horse Sale Objection Deadline Notice as provided for in the affidavit of service filed on the docket of the ~~chapter~~Chapter 11 ~~cases at Docket No. [●]~~ (Cases at D.I. Nos. 47, 114, and 135 (collectively, the "Stalking Horse Sale Objection Deadline Notice AOS").

6.        Objections to approval of the Stalking Horse APA and the Sale of the Consulting Business free and clear of liens, claims, encumbrances, and other interests (except as set forth in the Stalking Horse APA) to the Stalking Horse Bidder must ~~be~~have been in writing, ~~state~~stated the basis of such objection with specificity, and ~~be~~shall have been filed with this Court and served on or before **4:00 p.m. (prevailing Eastern Time) on March 24, 2025** (the "Stalking Horse Sale Objection Deadline")[4] on the following parties (collectively, the "Notice Parties"):

(a)        proposed counsel to the Debtors, DLA Piper LLP (US) (i) 1201 North Market Street, Suite 2100 Wilmington, Delaware 19801 (Attn.: Stuart M. Brown [stuart.brown@us.dlapiper.com]); and (ii) 444 West Lake Street, Suite 900 Chicago, Illinois 60606 (Attn.: W. Benjamin Winger [benjamin.winger@us.dlapiper.com] and Katherine Allison [katie.allison@us.dlapiper.com]);

---

[4] The Stalking Horse Sale Objection Deadline shall apply to all parties in interest except the Committee (defined herein).  The Committee's deadline to object to the approval of the Stalking Horse APA and the Sale of the Consulting Business free and clear of liens, claims, encumbrances, and other interests (except as set forth in the Stalking Horse APA) to the Stalking Horse Bidder is 4:00 p.m. (prevailing Eastern Time) on April 7, 2025.

(b)     proposed financial advisor to the Debtors, Ankura Consulting Group, LLC, 485 Lexington Avenue, 10th Floor, New York, New York 10017 (Attn.: M. Benjamin Jones, Chief Restructuring Officer of the Debtors [ben.jones@ankura.com]);

(c)     proposed investment banker to the Debtors, Brown Gibbons Lang & Co. Securities, One Magnificent Mile, 980 N. Michigan Ave., Suite 1800, Chicago, IL 60611 (Attn.: Kyle Brown [kbrown@bglco.com] and T. Michael Madden [mmadden@bglco.com]);

(d)     counsel to the DIP Lender and Pre-Petition Lender, (i) Richards, Layton & Finger, PA, 920 North King Street, Wilmington, Delaware 19801 (Attn.: John H. Knight [knight@rlf.com]) and (ii) Otterbourg P.C., 230 Park Avenue, New York, New York 10169 (Attn.: Andrew M. Kramer [akramer@otterbourg.com] and James V. Drew [jdrew@otterbourg.com]);

(e) counsel to any official committee appointed in these chapter 11 cases;

(e)     proposed counsel to the Official Committee of Unsecured Creditors (the "Committee"), Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801) (Attn.: Laura Davis Jones [ljones@pszjlaw.com], David M. Bertenthal [dbertenthal@pszjlaw.com], Colin R. Robinson [crobinson@pszjlaw.com.], and Edward A. Corma [ecorma@pszjlaw.com]);

(f)     counsel to the Stalking Horse Bidder, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036-8704 (Attn.: Cristine Schwarzman, Esq. [cristine.schwarzman@ropesgray.com] and Patricia Chen, Esq. [patricia.chen@ropesgray.com]; and

(g)     the Office of the United States Trustee for Region 3, J. Caleb Boggs Federal Building, 844 King St., Lockbox 35, Wilmington, Delaware 19801 (Attn.: Jonathan Lipshie [jon.lipshie@usdoj.gov]).

7.     Any objections to (i) the Sale of the Assets to a Successful Bidder, with the exception of objections related to the Stalking Horse APA transactions, (ii) the conduct of the Auction, (iii) the identity of any Successful Bidder other than the Stalking Horse Bidder, and (iv) adequate assurance of future performance by any Successful Bidder other than the Stalking Horse Bidder must be in writing, state the basis of such objection with specificity, and be filed with this Court and served on or before **4:00 p.m. (prevailing Eastern Time) on April 7~~14~~,** **2025** (the "Non-Stalking Horse Sale Objection Deadline") on the Notice Parties.

A.      **The Stalking Horse APA and the Bid Protections**

8.      Any obligations of the Debtors set forth in the Stalking Horse APA that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order are authorized as set forth herein.

9.      Subject to final approval at the Sale Hearing, the Debtors are authorized, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to enter into and perform under the Stalking Horse APA, subject to the solicitation of higher or otherwise better bids at the Auction. The Subject to the terms of the Bidding Procedures Order and the Bidding Procedures, the Stalking Horse APA shall be binding and enforceable on the parties thereto in accordance with its terms.  The failure to describe specifically or include any provision of the Stalking Horse APA or related documents in the Motion or herein shall not diminish or impair the effectiveness of such provision.  The Stalking Horse APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, solely in accordance with the terms thereof, without further order of the Court; provided, however, the parties may not amend the Purchase Price, Bid Protections, or make any other changes to the Stalking Horse APA which are materially adverse to the Debtors without further order of this Court.  The Stalking Horse Bidder and its counsel and advisors have acted in "good faith" within the meaning of section 363(m) of the Bankruptcy Code in connection with the Stalking Horse Bidder's negotiation of the Break-Up Fee, the Expense Reimbursement, the Bidding Procedures, and the entry into the Stalking Horse APA.

10.     In accordance with the Bidding Procedures and the Stalking Horse APA, the Stalking Horse Bidder shall be entitled to the Break-Up Fee of $1,680,000, which represents three (3) percent of the cash component of the Purchase Price.  The Stalking Horse Bidder shall

also be entitled to the Expense Reimbursement, up to a maximum amount of $1,000,000, solely in accordance with the Stalking Horse APA and the Bidding Procedures.  The Break-Up Fee and the Expense Reimbursement are hereby approved and the Debtors are authorized to incur and pay the Break-Up Fee and the Expense Reimbursement to the Stalking Horse Bidder in accordance with the Stalking Horse APA without further action or order by the Court.³In accordance with the terms of ⁵  Notwithstanding any contrary provision in the Stalking Horse APA, the Stalking Horse Bidder shall have an allowed superpriority administrative claim in respect of the Break-Up Fee (with the priority of aan "SuperpriorityAdministrative Claim" as defined in the Stalking Horse APA) and an allowed administrative claim in respect of the Expense Reimbursement (with the priority of an "Administrative Claim" as defined in the Stalking Horse APA) in the Debtors' chapterChapter 11 casesCases under Sectionssections 503 and 507 of the Bankruptcy Code.  Any request by the Stalking Horse Bidder for the Expense Reimbursement shall be provided to the U.S. Trustee, counsel to the Debtors, counsel to the DIP Lender and Pre-Petition Lender, and counsel to the Committee and shall be accompanied by invoices (which may be in summary form but shall include a general description of the nature of the matters worked on, a list of professionals who worked on the matter, their hourly rate (if applicable), and the number of hours billed by each professional) and shall be subject to a review period by the U.S. Trustee and the Committee of ten days after the delivery of such invoices (the "Expense Reimbursement Review Period"); provided, that the Stalking Horse Bidder shall not be required to provide information subject to the attorney-client privilege, any information constituting attorney work product, or any confidential information (and if provided by the

---

³ As used in this paragraph, "Break-Up Fee" and "Expense Reimbursement" shall have the definitions set forth in the Stalking Horse APA.
⁵ As used in this paragraph, "Break-Up Fee" and "Expense Reimbursement" shall have the definitions set forth in the Stalking Horse APA.

1617765414.4

Stalking Horse Bidder, the provision of such information shall not constitute any waiver of the attorney-client privilege, the attorney work product doctrine or confidentiality).  The Debtors shall pay such request for the Expense Reimbursement in accordance with this Order and the Stalking Horse APA within five (5) days after the expiration of the Expense Reimbursement Review Period (without further order by or application to the Court or notice to any other party), unless the U.S. Trustee or the Committee serves a written objection to such request upon the Stalking Horse Bidder prior to the expiration of the Expense Reimbursement Review Period (which objection shall be limited to the reasonableness of such fees and expenses and shall detail the specific fees or expenses subject to such objection and the basis for such objection), in which case the Debtors shall pay (i) the undisputed amounts in accordance herewith and (ii) the disputed amounts at such time as such objection is consensually resolved between the Stalking Horse Bidder and the objecting party or as otherwise ordered by the Court.  The Debtors' obligation to pay the Break-Up Fee and Expense Reimbursement shall survive termination of the Stalking Horse APA, dismissal or conversion of any of the chapterChapter 11 casesCases, and confirmation of any chapter 11 plan.

11.    Other than any Bid Protections approved for the Stalking Horse Bidder in accordance with the Bidding Procedures and in connection with the Stalking Horse APA, no person or entity shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment with respect to the Assets, and by submitting such a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature in connection with such bid, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.  Notwithstanding the foregoing, the Debtors are authorized to designate a stalking horse bidder and seek approval,

by appropriate motion to this Court, of bid protections with respect to the Assets comprising the COD Business.

**B.      The Bidding Procedures, Auction, and Sale Hearing**

12.      The Debtors are authorized to solicit bids and conduct an Auction, if necessary, pursuant to the terms set forth in the Bidding Procedures.  The Bidding Procedures shall govern the submission, receipt, and analysis of all bids, and any party desiring to submit a bid on the Assets must do so strictly in accordance with the terms of the Bidding Procedures and this Order.

13.      The deadline for submitting a Qualified Bid shall be **April ~~1~~7, 2025, at 5:00 p.m. (prevailing Eastern Time)**, unless extended by the Debtors pursuant to the Bidding Procedures (the "Bid Deadline").

14.      All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the transfer of the Assets.

15.      The Debtors shall inform Qualified Bidders that their Bids have been designated as Qualified Bids no later than **April ~~2~~8, 2025 at 5:00 p.m. (prevailing Eastern Time)**.

16.      If no Qualified Bid other than the Stalking Horse Bid is submitted on or before the Bid Deadline, the Debtors will not hold an Auction and the Stalking Horse Bid will be deemed the Successful Bid for the Consulting Business (as defined in the Bidding Procedures).

17.      If at least two Qualified Bids are received by the Bid Deadline with regard to any particular Assets, the Debtors will conduct the Auction.  The Auction will take place on **April ~~3~~9, 2025, starting at 10:00 a.m. (prevailing Eastern Time)** via live auction at the offices of DLA Piper LLP (US), 444 W. Lake Street, Suite 900, Chicago, Illinois 60606 and/or remote video.

18.     Each Qualified Bidder participating at the Auction will be required to confirm in writing, and on the record at the Auction, that (a) it has not engaged in any collusion with respect to the Bidding Process, and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder or Back-Up Bidder.

19.     Any party in interest may attend (but not participate in) the Auction if any such party in interest provides the Debtors with written notice of its intention to attend the Auction on or before the Bid Deadline, which written notice shall be sent to DLA Piper via electronic mail at the addresses set forth in the Bidding Procedures.  The Consultation Parties may attend the Auction without sending prior written notice of their intention to do so.  For the avoidance of doubt, only Qualified Bidders (including any Stalking Horse Bidder, which shall be deemed a Qualified Bidder at all times) will be entitled to make any Bids at the Auction.

20.     The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid.

21.     For all purposes under the Bidding Procedures: (a) the Stalking Horse Bidder shall be considered a Qualified Bidder, and the Stalking Horse APA shall be considered a Qualified Bid; (b) the Stalking Horse Bidder is, and will be deemed to be, a Qualified Bidder for all purposes under the Bidding Procedures, without regard to any of the requirements or conditions set forth herein and without any other or further action by the Stalking Horse Purchaser; and (c) in determining whether the Potential Bidders constitute Qualified Bidders, the Debtors may consider a combination of bids for the Assets.  The Debtors, in consultation with the Consultation Parties, may select multiple Bids.

22.     Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualified Bid is the highest or otherwise best Bid for the Assets or

1617765414.4

subsets thereof and which Qualified Bid is the second highest or otherwise second highest bid for the Assets or subsets thereof.

23.     If no Qualified Bids (other than the Stalking Horse Bid) are received with respect to the Consulting Business (as defined in the Bidding Procedures), or if an Auction is held for the Consulting Business and the Stalking Horse Bidder is the Successful Bidder at any such Auction, the Court shall convene a Sale Hearing on **April 4[11], 2025, at [●]:[●] [a/p].m. (prevailing Eastern Time)**, at which time the Court will consider approval of the sale proposed by the Stalking Horse APA to the Stalking Horse Bidder as the Successful Bidder.

24.     If an Auction is heldIn all other scenarios, the Court shall convene the Sale Hearing on **April 9[16], 2025, at [●]:[●] [a/p].m. (prevailing Eastern Time)**, at which time the Court will consider approval of the Sale to the Successful Bidder(s) or Back-Up Bidder(s) and the entry of the Sale Order.  Subject to consultation with the Consultation Parties (and the Stalking Horse Bidder, if the Stalking Horse Bidder is the Successful Bidder), the Debtors may adjourn the Sale Hearing from time to time without further notice to creditors or other parties in interest other than by announcement of said adjournment at the Sale Hearing or in notice or agenda filed with the Court.

## C.     Assumption and Assignment Procedures

25.     The Assumption and Assignment Notice, substantially in the form attached as **Exhibit 4** to this Order, which the Debtors filed and served on each of the non-Debtor Counterparties listed therein by first class mail and/or email on **March 3, 6, 10, 21, and 24, 2025** as provided for in the affidavitaffidavits of service filed on the docket of the chapterChapter 11 cases at Docket No. [●]Cases at D.I. Nos. 47, 114-15, 123, and 135, is hereby approved.  The Assumption and Assignment Notice included a schedule with the name of each non-Debtor

Counterparty to the Contracts and Leases, a description of the Contracts and Leases potentially to be assumed and assigned in connection with the Sale and the amount, if any, the Debtors believe is necessary to cure, or compensate the non-Debtor Counterparties for, any defaults under such agreements as required by section 365 of the Bankruptcy Code (the "Cure Costs").  The Debtors may, in consultation with the Stalking Horse Bidder, provide supplemental Assumption and Assignment Notices if the Debtors discover Contracts or Leases that were inadvertently omitted from the initial Assumption and Assignment Notice or such notice erroneously reports the cure amount.  The mere listing of any Contract or Lease on the Assumption and Assignment Notice does not require or guarantee that such Contract or Lease will be assumed and assigned, and all rights of the Debtors and the Stalking Horse Bidder with respect to such Contract or Lease are hereby reserved.  For the avoidance of doubt, Contracts and Leases listed in any Assumption and Assignment Notice shall be deemed to include any statements of work, purchase orders or similar ancillary agreements or arrangements which are issued or entered into pursuant to, or in accordance with, such Contracts and Leases (including any such statements of work, purchase orders or similar ancillary agreements or arrangements which are entered into with an affiliate to the Counterparty listed therein).  Each Counterparty listed in any Assumption and Assignment Notice with respect to a Contract that is a master service agreement shall be deemed to include its affiliates that are party to statements of work, purchase orders or similar ancillary agreements or arrangements issued or entered into pursuant to, or in accordance with, such master service agreements.

26.    Objections to the Cure Costs or the potential assumption and assignment of any Contract or Lease identified in the Assumption and Assignment Notice (an "Assignment Objection") must be in writing, state the basis of such objection with specificity

as well as what Cure Costs are required (if applicable), be filed with the Court, and be served on the Notice Parties no later than **March 24, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Assigned Contract Objection Deadline"); provided that if the Debtors serve any supplemental Assumption and Assignment Notice, the Assigned Contract Objection Deadline for any such objections relating to the Contracts and Leases identified in such Assumption and Assignment Notice shall be **4:00 p.m. (prevailing Eastern Time) on the later of March 24, 2025, and the date that is 14 days after service of such supplemental Assumption and Assignment Notice**.

27.     Unless a non-Debtor Counterparty to an Contract or Lease has timely and properly filed and served an Assignment Objection, such non-Debtor Counterparty shall (a) be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to its Contract or Lease, and the Debtors and the Successful Bidder shall be entitled to rely solely upon the Cure Costs set forth in the Assumption and Assignment Notice; (b) be deemed to have consented to the potential assumption and assignment of such Contract or Lease to the Successful Bidder; and (c) be forever barred, estopped, and permanently enjoined from asserting or claiming against the Debtors, the Successful Bidder or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment and assumption must be satisfied under such Contract or Lease or that there is any objection or defense to the assumption and assignment of such Contract or Lease to the Successful Bidder (including any failure to provide adequate assurance of adequate performance).  In addition, the Cure Costs set forth in the Assumption and Assignment Notice shall be binding upon the non-Debtor Counterparty to the Contracts and Leases for all purposes in these ~~chapter~~Chapter 11 ~~cases~~Cases and will constitute a final determination of the total Cure Costs required to be paid by the Purchaser in connection with the assumption and assignment of the Assigned Contracts.

1617765414.4

28.     Where a non-Debtor Counterparty to a Contract or Lease timely and properly files an Assignment Objection asserting a cure amount higher or different than the proposed Cure Cost (a "Disputed Cure Cost") or to the potential assumption and assignment of its Contract or Lease, then (a) to the extent that the parties are able to consensually resolve an Assignment Objection to the proposed Cure Cost, the Cure Cost shall be as agreed between the parties, or (b) to the extent the parties are unable to consensually resolve the dispute, then such Assignment Objection, including the Disputed Cure Cost (if any), will be heard at the Sale Hearing or at such other hearing or at such other date and time as may be agreed to by the parties or fixed by the Court; provided, however, that if the Assignment Objection relates solely to the Disputed Cure Costs, the underlying Contract or Lease may be conditionally assumed by the Debtors and assigned to the Stalking Horse Bidder (or in the event the Stalking Horse Bidder is not the Successful Bidder, then to the Successful Bidder or the Back-Up Bidder), pending the Court's adjudication of the Disputed Cure Costs, provided that the cure amount that the non-Debtor Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the non-Debtor Counterparty) is deposited in a segregated account by the ~~Debtors, the~~ Stalking Horse Bidder (or, in the event the Stalking Horse Bidder is not the Successful Bidder, then the Successful Bidder or the Back-Up Bidder).  The Stalking Horse Bidder shall be entitled to re-designate any "Assigned Contract" as an "Excluded Contract" at any time after the Court's determination of the Disputed Cure Cost or any other contested matter with the applicable non-Debtor Counterparty.

29.     For the avoidance of doubt, notwithstanding anything to the contrary herein or in the Stalking Horse APA, the insurance policies issued by Federal Insurance Company listed on Schedule 3.22 of the Stalking Horse APA shall not be assumed, assumed and assigned, sold or

otherwise transferred pursuant to this Order.  For the avoidance of doubt, all parties' rights are reserved with respect to any proposed assumption, assumption and assignment, cure, rejection, sale, or other transfer of the insurance policies issued by Federal Insurance Company listed on Schedule 3.22 of the Stalking Horse APA.

**D.    Notice Procedures**

30.    29. The form of the Sale Notice, the Stalking Horse Sale Objection Deadline Notice, the Assumption and Assignment Notice, and the Successful Bidder Notice annexed hereto are hereby approved and appropriate and sufficient for all purposes and no other or further notice shall be required.  No finding or ruling is made in this Order as to the merits of any motion for approval of the Sale.

31.    30. As soon as reasonably practicable after entry of this Order, the Debtors shall cause the Sale Notice to be served by regular mail and/or email upon the Sale Notice Parties, post the Sale Notice and this Order to the Case Website, and publish the Sale Notice once in the national edition of *USA Today*, the *Wall Street Journal*, or similar national publication. Publication of the Sale Notice as described in this Order conforms to the requirements of Bankruptcy Rules 2002(l) and 9008, and is reasonably calculated to provide notice to any affected party, including any Potential Bidder(s), and to afford the affected party the opportunity to exercise any rights affected by the Motion and the relief granted by this Order.

32.    31. The Stalking Horse Sale Objection Deadline Notice, which the Debtors filed and served on each of the Sale Notice Parties by first class mail and/or email on **March 3, 2025** as provided for in the Stalking Horse Sale Objection Deadline Notice AOS and posted on the Case Website, is hereby approved.

1617765414.4

33. ~~32.~~ The Assumption and Assignment Notice, which the Debtors filed and served on each of the non-Debtor Counterparties to the Contracts and Leases by first class mail and/or email on **March 3, 2025** as provided for in the Assumption and Assignment Notice AOS and posted on the Case Website, is hereby approved.

34. ~~33.~~ Promptly after the conclusion of the Auction (if any) or if there is no Auction for the Consulting Business, promptly after the Bid Deadline (but in any event not more than 24 hours following the close of the Auction or the Bid Deadline, as applicable), the Debtors shall cause the Successful Bidder Notice to be filed and posted on the Case Website.

~~34. Failure to timely file an objection to the Sale in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, or consummation of the Sale, and shall be deemed to constitute consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto including, without limitation, for purposes of section 363(f) of the Bankruptcy Code.~~

35. All parties (whether or not Qualified Bidders) that participate in the Bidding Process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the Bidding Process, the Auction and/or the Sale) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution, and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

**E.    Miscellaneous Provisions**

36. In the event there is any conflict between this Order and the Bidding Procedures, the terms and conditions of this Order shall control and govern in all respects.

37.     The requirements set forth in Local Rules 6004-1 and 9013-1 are hereby satisfied, modified, or waived.

38.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), 6006(d), 7052 or 9014, this Order shall be immediately effective and enforceable upon its entry.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

39.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

**Exhibit 1**

**Bidding Procedures**

1617765414.4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AZZUR GROUP HOLDINGS LLC, *et al.*,[1] | Case No. 25-10342 (KBO) |
| Debtors. | (Jointly Administered) |

## BIDDING PROCEDURES

On March 2, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

On March [27], 2025, the Bankruptcy Court entered an order [Docket No.D.I. [●]] (the "Bidding Procedures Order") approving these bidding procedures (the "Bidding Procedures"). The Bidding Procedures set forth the process by which the Debtors, in consultation with the Consultation Parties (as defined and set forth below), are authorized to conduct an auction (the "Auction") for one or more sales (the "Sale(s)") of the Debtors' businesses and assets (the "Assets"), including in relation to (i) the "Acquired Assets" that comprise the "Business" as such terms are defined in that certain Asset Purchase Agreement, dated as of March 2, 2025 (as, and as amended by that certain letter agreement, dated as of March 27, 2025, and attached to the Bidding Procedures Order as Exhibit 2 (as further amended, restated, supplemented, or otherwise modified from time to time, the "Stalking Horse APA"), by and among the Debtors named therein, as Sellers, and Eliquent Life Sciences, Inc. (and any permitted assignee under the Stalking Horse APA), as Purchaser (the "Stalking Horse Bidder"), and attached hereto as **Schedule 1** (such Acquired Assets and such Business, the "Consulting Business" and the bid set forth in the Stalking Horse APA, the "Stalking Horse Bid") and (ii) the business and assets related to the cleanroom-on-demand, or "COD Business" for which there is no stalking horse bidder as of the date hereof.

Subject to entry of the applicable sale order (the "Sale Order"), the Sale(s) may be implemented pursuant to the terms and conditions of the Stalking Horse APA (in the case of the Consulting Business), as the same may be amended, restated, supplemented, or otherwise modified from time to time pursuant to the terms and conditions thereof, subject to the receipt of higher or otherwise better Bids (as defined below), section 363 of the Bankruptcy Code, and/or a chapter 11 plan, in each case in accordance with these Bidding Procedures.

---

[1] A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.stretto.com/Azzur. The Debtors' headquarters and the mailing address for the Debtors is 330 South Warminster Road, Suite 341, Hatboro, PA 19040.

<div style="border:1px solid">

**Copies of the Bidding Procedures Order or other documents related thereto are available upon request to the Debtors' proposed claims and noticing agent, Stretto, or by visiting the Debtors' restructuring website at https://www.stretto.com/Azzur.**

**The applicable Debtor representatives and their contact information are set forth below.**

**Proposed Investment Banker to the Debtors – Brown Gibbons Lang & Company Securities, LLC ("BGL")**

Brown Gibbons Lang & Co. Securities
One Magnificent Mile
980 N. Michigan Ave., Suite 1800
Chicago, IL 60611
Attn: Kyle Brown [kbrown@bglco.com] and T. Michael Madden [mmadden@bglco.com]

**Proposed Financial Advisor to the Debtors – Ankura Consulting Group, LLC ("Ankura")**

Ankura Consulting Group, LLC
485 Lexington Avenue, 10th Floor
New York, New York 10017
Attn: M. Benjamin Jones, Chief Restructuring Officer [ben.jones@ankura.com]

**Proposed Counsel to the Debtors - DLA Piper LLP (US) ("DLA Piper"):**

DLA Piper LLP (US)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Attn: Stuart M. Brown, Esq. [stuart.brown@us.dlapiper.com]

- and -

444 West Lake Street, Suite 900
Chicago, Illinois 60606
Attn: W. Benjamin Winger, Esq. [benjamin.winger@us.dlapiper.com]; Katherine Allison, Esq. [katie.allison@us.dlapiper.com]

</div>

## KEY DATES & DEADLINES

These Bidding Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in an Auction, thereby competing to make the highest or otherwise best offer or combination of offers which, in the aggregate, will make the highest or otherwise best offer to acquire some or all of the Debtors' businesses and/or Assets.  The Debtors may consider bids from multiple bidders (including multiple bids submitted by the same bidder) in any combination for the Debtors' businesses and/or Assets.  The Debtors may select multiple bids.

1616055844.13

Subject to the Debtors' rights set forth herein, the following table sets forth key dates and deadlines with respect to the Sale process.

| Event or Deadline | Date and Time[2] |
|---|---|
| ~~Deadline for Debtors to serve~~Service of the Stalking Horse Sale Objection Deadline Notice and the Assumption and Assignment Notice | **March 3, 2025** |
| Assigned Contract Objection Deadline | No later than **March 24, 2025, at 4:00 p.m. (prevailing Eastern Time)**, objections shall ~~be~~have been filed and served in relation to the (i) proposed cure amount to be paid in connection with the potential assumption and assignment of any Contract or Lease, and (ii) potential assumption and assignment of any Contract or Lease to the Stalking Horse Bidder, including the ability of the Stalking Horse Bidder to provide adequate assurance of future performance; provided that if the Debtors serve any supplemental Assumption and Assignment Notice, the Assigned Contract Objection Deadline for any such objections relating to the Contracts and Leases identified in such Assumption and Assignment Notice will be **4:00 p.m. (prevailing Eastern Time) on the later of March 24, 2025, and the date that is 14 days after service of such supplemental Assumption and Assignment Notice**. |
| Stalking Horse Sale Objection Deadline[3] | No later than **March 24, 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Stalking Horse Sale Objection Deadline") objections shall ~~be~~have been filed and served in relation to the proposed Sale of the Consulting Business to the Stalking Horse Bidder pursuant to the Stalking Horse |

---

[2] Capitalized terms used in this section retain the meanings ascribed to such terms in these Bidding Procedures.

[3] The Stalking Horse Sale Objection Deadline shall apply to all parties in interest except the Committee (defined herein). The Committee's deadline to object to the approval of the Stalking Horse APA and the Sale of the Consulting Business free and clear of liens, claims, encumbrances, and other interests (except as set forth in the Stalking Horse APA) to the Stalking Horse Bidder is 4:00 p.m. (prevailing Eastern Time) on April 7, 2025.

1616055844.13

| | APA or to the form of proposed Sale Order. |
|---|---|
| Hearing to Approve the Bidding Procedures Motion ~~and Stalking Horse APA~~ | **March 2427, 2025 at [●]:[●] [a./p.]/m2:00 p.m. (prevailing Eastern Time)~~, subject to the Bankruptcy Court's availability~~** |
| Deadline for Debtors to serve the Sale Notice | **March 2531, 2025** |
| Bid Deadline | **April 17, 2025, at 5:00 p.m. (prevailing Eastern Time)** |
| Deadline for Debtors to Designate Qualified Bids | **April 28, 2025, at 5:00 p.m. (prevailing Eastern Time)** |
| Deadline for Debtors to Identify Baseline Bid (if necessary) | No later than **April 28, 2025, at 5:00 p.m. (prevailing Eastern Time)** (the day before the Auction), the Debtors will provide copies of the Baseline Bid(s) (as defined below) to all Qualified Bidders (as defined below) |
| Auction (if applicable) | An Auction may be held on **April 39, 2025, at 10:00 a.m. (prevailing Eastern Time)** via live auction and/or remote video |
| Successful Bidder Notice Deadline | Promptly after the conclusion of the Auction (if any) or if there is no Auction for the Consulting Business, promptly after the Bid Deadline (but in any event not more than 24 hours following the close of the Auction or the Bid Deadline, as applicable), the Debtors shall announce the Successful Bid and the Backup Bidder, file the Successful Bidder Notice and post the Successful Bidder Notice on the Case Website, identifying the Successful Bidder and Backup Bidder (if any). |
| Non-Stalking Horse Sale Objection Deadline | If the Successful Bidder or Backup Bidder that prevails at the Auction is not the Stalking Horse Bidder, the deadline to object solely to (i) the identity of a Successful Bidder or Backup Bidder or (ii) the ability of the Successful Bidder or Backup Bidder to provide adequate assurance of future performance under any Contract or Lease shall be **April 714, 2025, at 4:00 p.m. (prevailing Eastern Time)** |
| Sale Hearing | **If there is an Auction for the sale of the Consulting Business and the Stalking Horse Bidder is not the Successful Bidder at such Auction, the sale Hearing shall be** April **9[16], 2025, at [●]:[●] [a./p.]m. (prevailing Eastern Time)** or as soon thereafter as the Bankruptcy Court's calendar permits; *provided~~, however,~~* that if there is |

4

| | no Auction ~~because there are no Qualified Bids besides~~for the sale of the Consulting Business and/or the Stalking Horse ~~Bid, the Sale Hearing~~Bidder is the Successful Bidder at any such Auction, the sale hearing with respect to the Stalking Horse APA shall occur ~~on~~at **April 4[11], 2025,** at [●]:[●] **[a./p.]m. (prevailing Eastern Time)** or as soon thereafter as the Bankruptcy Court's calendar permits |
| Target Closing Date | No later than **May ~~1~~2, 2025** |

The Debtors reserve the right to designate a stalking horse bidder for the COD Business (the "COD Stalking Horse Bidder") and to request bid protections in the form of a break-up fee and/or expense reimbursement for such COD Stalking Horse Bidder by an appropriate motion to the Bankruptcy Court.

## MARKETING PROCESS

The Debtors, with the assistance of their advisors, have conducted, and will continue to conduct, an extensive marketing process. Prepetition, the Debtors, through their advisors, distributed teaser and other promotional materials to potentially interested parties advising them of the opportunity to acquire the Assets pursuant to a chapter 11 plan, section 363 transaction, or otherwise, and will continue to do so postpetition, subject to court approval of the Bidding Procedures Order. The Debtors' representatives, including their Chief Restructuring Officer and BGL, have and shall continue to oversee the sale process.

**Contact Parties**

Through the marketing process, the Debtors' proposed investment banker, BGL, developed a list of parties whom it believed may be interested in, and whom the Debtors reasonably believe would have the financial resources to consummate, a sale. The list of parties includes both strategic investors and financial investors (collectively, the "Contact Parties"). The Contact Parties include parties whom the Debtors or their advisors previously contacted regarding a transaction, regardless of whether such parties expressed any interest at such time in pursuing a transaction. The Debtors will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

The Debtors may distribute (to the extent not already distributed) to each Contact Party and any other interested party or potential bidder—other than the Stalking Horse Bidder—(each, a "Potential Bidder") a copy of an information package, which is comprised of: (i) a copy of the Bidding Procedures, the Bidding Procedures Order, and the bidding procedures motion; (ii) a form confidentiality agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtors; and (iii) such other materials as may be appropriate under the circumstances.

**Participation Requirements and Diligence Materials**

To receive due diligence information, including full access to the Debtors' electronic data room and to additional non-public information regarding the Debtors, a Potential Bidder must deliver the following documents (collectively, the "Preliminary Bid Documents") **by email** at the addresses set forth above to the following: (i) DLA Piper, (ii) BGL, and (iii) Ankura (collectively, the "Bid Recipients"):[4]

1. To the extent not already executed, an executed and signed Confidentiality Agreement on terms acceptable to the Debtors;

2. The identity of the Potential Bidder and a list of contacts for the Potential Bidder;

3. A description of the diligence the Potential Bidder seeks to conduct; and

4. Evidence by the Potential Bidder of its financial capacity to close a proposed transaction, which may include financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, the party that will bear liability for a breach).

Promptly after a Potential Bidder delivers Preliminary Bid Documents to the Bid Recipients, the Debtors, in consultation with the Consultation Parties, will (i) assess the adequacy of the evidence of the Potential Bidder's financial capacity and (ii) notify the Potential Bidder whether the Preliminary Bid Documents are acceptable and whether the Potential Bidder may proceed to conduct due diligence, submit a bid, and participate in the Auction, as applicable. Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents (each, a "Bidder") may submit Bids; provided, however, that the Debtors, in their reasonable discretion, may agree to waive some or all of the Potential Bidder requirements set forth herein. The Debtors reserve the right to work with any Potential Bidder to cure any deficiencies in the Preliminary Bid Documents.

As soon as reasonably practicable after the Debtors, in consultation with the Consultation Parties, determine that a Potential Bidder is a Bidder, the Debtors will provide such Bidder with access to an electronic data room and reasonable due diligence information as reasonably requested by such Bidder (to the extent such Bidder has not already been provided such access and information). All substantive direct communications, including any due diligence requests, with Potential Bidders and Qualified Bidders shall be through and directed to BGL (via email is sufficient). BGL will work to facilitate meetings between any interested Bidder and the Debtors' management team, as appropriate.

The Debtors and their advisors, including BGL, will coordinate all reasonable requests from Bidders for additional information and due diligence access. The Debtors, in consultation with the Consultation Parties, may decline to provide such information to Bidders who, in the Debtors' business judgment and in consultation with the Consultation Parties, have not

---

[4] The Debtors shall provide the Preliminary Bid Documents to the Committee's professionals on a "professionals eyes' only basis" on the same day that the Debtors receive such documents.

established, or who have raised doubt, that such Bidder intends in good faith or has the capacity to consummate a transaction.

For any Bidder who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold, in consultation with the Consultation Parties, any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such Bidder at such time.

The due diligence period will end on the Bid Deadline for all Bidders.  After the Bid Deadline, the Debtors will have no obligation to furnish any due diligence information.

The Debtors will provide the Stalking Horse Bidder with access to all material due diligence materials, management presentations, on-site inspections, and other information provided to any Bidder or Qualified Bidder that were not previously made available to the Stalking Horse Bidder concurrently with the provisions of such information or materials to such Potential Bidder or Qualified Bidder, as applicable.

Each Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Bidder and its contemplated transaction.

**Consultation Parties**

The terms "Consultation Party" or "Consultation Parties" shall mean: (i) counsel for Manufacturers and Trust Company, the prepetition facility lender and the proposed DIP lender (the "DIP Lender") and Pre-Petition Lender, (a) Richards, Layton & Finger, PA, 920 North King Street, Wilmington, Delaware 19801 (Attn.: John H. Knight [knight@rlf.com]) and (b) Otterbourg P.C., 230 Park Avenue, New York, New York 10169 (Attn.: Andrew M. Kramer [akramer@otterbourg.com] and James V. Drew [jdrew@otterbourg.com]), and (ii) the~~proposed~~ counsel to ~~any statutory committee~~the Official Committee of Unsecured Creditors appointed in ~~the~~these chapter 11 cases,~~if any~~ (~~each, a~~the "Committee")~~.~~³, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801) (Attn.: Laura Davis Jones [ljones@pszjlaw.com], David M. Bertenthal [dbertenthal@pszjlaw.com], Colin R. Robinson [crobinson@pszjlaw.com.], and Edward A. Corma [ecorma@pszjlaw.com]).⁵

---

³ To the extent that any Consultation Party, including any member of a Committee, becomes a Bidder for any Assets in connection with these Bidding Procedures, or is a participant in any active or prospective Bid with respect to any Asset(s), such applicable Consultation Party shall immediately cease to be a Consultation Party unless and until such party unequivocally revokes its Bid and waives its right to continue in the bidding process.  Materials and information provided by the Debtors or their advisors to the advisors to any Consultation Party may be shared with such Consultation Party, subject in all respects to these Bidding Procedures, the Bidding Procedures Order, and the respective Confidentiality Agreement entered into by, and among, or otherwise agreed to, between each such Consultation Party and the Debtors.

⁵ To the extent that any Consultation Party, including any member of a Committee, becomes a Bidder for any Assets in connection with these Bidding Procedures, or is a participant in any active or prospective Bid with respect to any Asset(s), such applicable Consultation Party shall immediately cease to be a Consultation Party unless and until such party unequivocally revokes its Bid and waives its right to continue in the bidding process.  Materials and

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bidding Procedures (i) shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment and (ii) shall not limit any of the DIP Lender's or a Committee's rights to object to or challenge the Debtors' decisions or actions that are subject to such consultation rights.

## STALKING HORSE BIDDER AND BID PROTECTIONS

Subject to Bankruptcy Court approval, and pursuant to the Stalking Horse APA, the Stalking Horse Bidder has committed to pay a purchase price worth a total aggregate consideration as set forth in the Stalking Horse APA (the "Purchase Price"), free and clear of all claims or encumbrances (other than Assumed Liabilities and Permitted Encumbrances, as defined in the Stalking Horse APA).  To provide the Stalking Horse Bidder with an incentive to participate in a competitive process and to compensate the Stalking Horse Bidder for (i) performing substantial due diligence and expending the time, energy, resources, and expenses related thereto and (ii) entering into the Stalking Horse APA with the knowledge and risk that arises from participating in the Sale and subsequent bidding process, in the event of a termination of the Stalking Horse APA and on the terms and conditions set forth in the Stalking Horse APA, the Stalking Horse Bidder shall be entitled to the following Bid Protections: (a) the Debtors will pay the Stalking Horse Bidder (at the time required under the Stalking Horse APA) a break-up fee in the amount equal to $1,680,000 (the "Break-Up Fee"), which represents 3% of the cash component of the Purchase Price, and (b) the Debtors will reimburse the Stalking Horse Bidder (at the time required under the Stalking Horse APA) for its actual, documented and reasonable out of pocket costs, fees and expenses incurred or to be incurred by Purchaser or its Affiliates, including reasonable fees, costs and expenses of any professionals (including financial advisors, outside legal counsel, accountants, experts and consultants) retained by Purchaser or its Affiliates in connection with or related to the authorization, preparation, investigation, negotiation, execution and performance of the Stalking Horse APA and the transactions thereunder, including the Bankruptcy Cases and other judicial and regulatory proceedings related to such transactions, in an aggregate amount not to exceed $1,000,000 (the "Expense Reimbursement," and together with the Break-Up Fee, the "Bid Protections").

To the extent an Overbid (as defined below) is deemed the Successful Bid (as defined below), such Overbid must provide cash satisfactory to pay the Bid Protections in full to the Stalking Horse Bidder.

Upon consummation of such Overbid, the Bid Protections, to the extent not previously paid in accordance with, and solely to the extent payable under and subject to the terms of the Stalking Horse APA and the Bidding Procedures Order shall be paid from the proceeds of any such sale.  For the avoidance of doubt, the foregoing applies whether such Overbid transaction is

---

information provided by the Debtors or their advisors to the advisors to any Consultation Party may be shared with such Consultation Party, subject in all respects to these Bidding Procedures, the Bidding Procedures Order, and the respective Confidentiality Agreement entered into by, and among, or otherwise agreed to, between each such Consultation Party and the Debtors.

consummated pursuant to section 363 of the Bankruptcy Code, pursuant to a chapter 11 plan, or other transaction.

The Stalking Horse Bidder shall be deemed to be a Qualified Bidder and is not required to make any deposit other than as contemplated in the Stalking Horse APA.  References to "Potential Bidder," "Bidder," and "Bid" in the sections on "Participation Requirements and Diligence Materials" and "Bid Requirements" shall not include the Stalking Horse Bidder or the Stalking Horse Bid.

## AUCTION PROCESS

**Bid Deadline**

A Potential Bidder that desires to make a proposal, solicitation, or offer (each, a "Bid") shall transmit written copies of such Bid in both Portable Document Format (.pdf) and Microsoft Word (.doc/.docx)  **via email** to each of the Bid Recipients so as to be **actually received** by them on or before **April ~~1~~7, 2025 at 5:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline").[6]

**Bid Requirements**

Each Bid must be submitted in writing and satisfy the following requirements (collectively, the "Bid Requirements"):

(i)  **Form and Contents**.  All Bids shall be in the form of an irrevocable offer letter from a person or persons that the Debtors, in their reasonable discretion taking into account their fiduciary duties, determine are financially able to consummate a transaction, which letter must state and include:

a.  Assets: Each Bid must clearly specify the Debtors' assets that are included in the Bid (it being understood that while Bids for a portion or subset of the Assets may be permitted, in determining whether the Bid is a Qualified Bid, the Debtors may consider whether the combined consideration for the Debtors' assets (taking into account such Bid and other Bids) exceeds the Purchase Price of the Stalking Horse APA and/or other aspects of the Bid).

b.  Purchase Price: Each Bid must clearly set forth the terms of any proposed transaction, including and identifying separately any cash and non-cash components of the proposed transaction consideration, such as certain liabilities to be assumed by the Bidder as part of the transaction, for example.  The proposed Purchase Price should be a single point value in U.S. dollars for the total enterprise value of the Assets the Bidder seeks to acquire on a cash-free, debt-free basis.

c.  Minimum Overbid: Each Bid for the Consulting Business (i) must propose a Purchase Price equal to or greater than the sum of (a) the value of the Stalking Horse Bid, as determined by the Debtors in consultation with the Consultation Parties (including the Break-Up Fee and Expense Reimbursement) and (b) an

---

[6] The Debtors shall provide copies of each Bid to the Committee's professionals on a "professionals eyes' only" basis on the same day that the Debtors receive such documents.

initial overbid of at least $200,000; (ii) must be on terms that are not materially more burdensome than the terms of the Stalking Horse Bid; and (iii) must obligate the Potential Bidder to pay, to the extent provided in the applicable APA, all liabilities and expenses that the Stalking Horse Bidder under the Agreement has agreed to pay, including Assumed Liabilities (as defined in the Stalking Horse APA).

There are no Minimum Overbid requirements for Bids for Assets other than the Consulting Business.

d. <u>Capacity to Consummate</u>: Each Bid must include a statement or evidence reflecting that (i) the Bidder is prepared to consummate the transaction upon entry of an order of the Bankruptcy Court approving the Sale to the Successful Bidder, (ii) the Bidder has made or will make as soon as reasonably practicable, all necessary filings, if any, with respect to any regulatory, antitrust, and other laws and pay fees associated therewith, and (iii) the Bidders' plan and ability to obtain all requisite governmental, regulatory, or other third-party approvals, and the proposed timing for the Bidder to undertake the actions required to obtain such approvals, if any.

e. <u>Committed Financing</u>: To the extent that a Bid is not accompanied by evidence of the Bidder's capacity to consummate the transaction set forth in its Bid with cash on hand, each Bid must include evidence of committed financing (debt or equity funding, as applicable), including the identity and contact information of the specific person(s) or entity(s) responsible for such committed funding whom BGL or DLA Piper should contact regarding such funding, that demonstrates that the Bidder has received sufficient debt and/or equity funding commitments to satisfy the Bidder's Purchase Price and other obligations under its Bid.  Such funding commitments or other financing must be acceptable to the Debtors (in consultation with the Consultation Parties) and must be unconditional and not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors.

f. <u>Contingencies; No Financing or Diligence Outs</u>: A Bid shall not be conditioned on a Bidder obtaining, or the sufficiency of, financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, which shall not be more burdensome, in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, than those contemplated by the Stalking Horse APA. Each Bid must identify with particularity each and every condition to closing, including the Debtors' executory contracts and unexpired leases (the "<u>Contracts and Leases</u>") for which assumption and assignment is required.  Bidders must have completed all of their due diligence by the Bid Deadline, including all business, legal, accounting, and other confirmatory diligence.

g. <u>Identity</u>: Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Bidder if such Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated

by such Bid), and the complete terms of any such participation. Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific person(s) and counsel whom the Debtors' advisors should contact regarding such Bid.

h. <u>Authorization</u>: Each Bid must contain evidence that the Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the transaction(s) contemplated in such Bid; <u>provided</u>, <u>however</u>, that if the Bidder is an entity specially formed for the purpose of effectuating the transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the transaction by the equity holder(s) of such Bidder.

i. <u>Expenses, Disclaimer to Fees</u>: Each Bid (other than the Stalking Horse Bid) must disclaim any right to receive a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Bidder will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting a Bid any Potential Bidder is waiving any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

Notwithstanding the foregoing, for the COD Business only, the Debtors reserve the right to designate a COD Stalking Horse Bidder and seek bid protections in the form of a break-up fee and/or expense reimbursement for such Bid by an appropriate motion to the Bankruptcy Court.

j. <u>Irrevocability</u>: Each Bid must provide in writing that, by submitting its Bid, each Bidder is agreeing that the Qualified Bidder's offer is irrevocable until the selection of the Successful Bidder, <u>provided</u> that if such bidder is selected as the Successful Bidder or the Backup Bidder its offer shall remain irrevocable until the earlier of (i) two (2) days after the closing of the sale to the Successful Bidder or the Backup Bidder and (ii) the date that is thirty (30) days after the Sale Hearing.

k. <u>Backup Bid</u>: Each Bid shall acknowledge that the Bidder agrees to be a Backup Bidder in accordance with the terms of these Bid Procedures, should the Bid be so selected.

l. <u>Assigned Contracts and Leases; Adequate Assurance of Future Performance</u>: Each Bid must identify any and all Contracts and Leases of the Debtors that the Bidder wishes to be assumed and assigned to it pursuant to the transaction. A Bid must specify that such Bidder will be responsible for any cure costs associated with such assumption and include a good faith estimate of such cure costs (which estimate shall be provided by the Debtors). Further, a Bid must provide evidence of adequate assurance of future performance under such Contracts and Leases to be assumed and assigned.

m. <u>Employees</u>: Each Bid must (i) specify whether the Bidder intends to hire employees of the Debtors, (ii) indicate the treatment of the Debtors'

compensation, incentive, bonus or other compensatory arrangements, and (iii) specify treatment of employee benefits to be provided to the employees.

n. <u>As Is, Where is</u>: Each Bid must include a written acknowledgement and representation that the Bidder: (1) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (2) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (3) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's Transaction Documents.

o. <u>Expected Closing Date</u>: Each Bid shall state the Bidder's expected date of closing of the Sale, which shall be no later than May ~~1~~2, 2025; <u>provided</u>, that such closing date may be extended pursuant to the terms of the applicable APA.

(ii) **Executed Purchase Agreement; Marked Agreement**: Each Bid must be accompanied by executed transaction documents, including a draft asset purchase agreement (an "<u>APA</u>") in Portable Document Format (.pdf) and Microsoft Word (.doc/.docx), in form and substance reasonably satisfactory to the Debtors.

Any Bid that includes some or all assets related to the Consulting Business must submit an APA substantially the same form as the Stalking Horse APA, which also much include a blackline of the proposed APA against the Stalking Horse APA.

Each APA must be submitted together with all exhibits and schedules, and include terms relating to Purchase Price and the time of closing, prepared and executed by the Bidder (the "<u>Transaction Documents</u>").

(iii) **Consent to Jurisdiction**. Each Bidder must submit to the exclusive jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bid Procedures, the Sale documents, and the closing of the sale, as applicable.

(iv) **Good Faith Deposit**. Each Bid must be accompanied by a cash deposit in an amount equal to 10% of the aggregate value of the cash consideration of the Bid to be held in an escrow account to be identified and established by the Debtors (the "<u>Deposit</u>"). To the extent a Bid is modified before, during, or after the Auction in any manner that increases the purchase price contemplated by such Bid, the Debtors reserve the right to require that such Bidder increase its Deposit so that it equals 10% of the increased value of the aggregate value of the cash components of the proposed transaction.

(v) **Compliance with the Bankruptcy Code and Non-Bankruptcy Law; Acknowledgement**. Each Bid must comply in all respects with the Bankruptcy Code and any applicable non-bankruptcy law. Each Bid must also include a written acknowledgment that the Bidder agrees to all of the terms of the Sale set forth in these Bidding Procedures.

(vi) **Joint Bids**. The Debtors, in consultation with the Consultation Parties, are authorized to approve joint Bids in their reasonable discretion on a case-by-case basis.

By submitting its Bid, each Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of the Bidding Procedures and to refrain from submitting a Bid or

seeking to reopen the Auction after conclusion of the Auction. **The submission of a Bid shall constitute a binding and irrevocable offer to acquire the Assets reflected in such Bid.**

**Designation of Qualified Bidders**

Any Bid received before the Bid Deadline will be considered a "Qualified Bid", and each Bidder that submits a Qualified Bid will be considered a "Qualified Bidder", if the Debtors, in consultation with the Consultation Parties, determine that such Bid:

1. satisfies the Bid Requirements; and

2. is reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a timeframe acceptable to the Debtors.

Within 24 hours after the Bid Deadline, the Debtors will notify each Bidder of its status as to whether such party is a Qualified Bidder.

If any Bid is determined not to be a Qualified Bid, the Debtors will refund such Bidder's Deposit promptly after the Bid Deadline.

To the extent there is any dispute whether a Bid is a Qualified Bid, such dispute may be raised with the Bankruptcy Court on an expedited basis.

Between the date that the Debtors notify a Bidder that it is a Qualified Bidder and the Auction date, the Debtors may (in consultation with the Consultation Parties) discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. During the period that such Qualified Bid remains binding as specified in these Bidding Procedures, without the prior written consent of the Debtors (in consultation with the Consultation Parties), a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase its Purchase Price, or otherwise improve the terms of, the Qualified Bid; provided that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

**Credit Bid**

Any Qualified Bidder who has a valid, undisputed, and perfected lien on any of the Debtors' assets (a "Secured Creditor") shall have the right to credit bid all or a portion of such Secured Creditor's allowed secured claims pursuant to section 363(k) of the Bankruptcy Code; provided, that a credit bid shall not constitute a Qualified Bid for the Consulting Business if the Bid does not include a cash component sufficient to pay in full, in cash, (i) all Bid Protections, (ii) an initial incremental overbid of $200,000, and (iii) all claims for which there are valid, perfected, and unavoidable liens on any of the Debtors' assets included in such Bid that are senior in priority to those of the Bidder seeking to credit bid (unless such senior lien holder consents to alternative treatment). All rights to credit bid shall be subject to the terms of the

13

Interim DIP Order and the Committee's challenge rights under such order and/or the Final DIP Order.

**The Auction**

If necessary, the Auction shall take place on **April 39, 2025 at 10:00 a.m. (prevailing Eastern Time)**, via live auction and/or remote video; or such other place and time as the Debtors shall notify all Qualified Bidders that have submitted Qualified Bids.

Prior to **5:00 p.m. (prevailing Eastern Time) on April 28, 2025** (the day before the Auction), the Debtors and their advisors will evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, the highest or otherwise best Bid for the Consulting Business and for each other set or group of Assets (each, a "Baseline Bid"). The Debtors will provide each Qualified Bidder, including the Stalking Horse Bidder, with a copy of the applicable Baseline Bid no later than **5:00 p.m. (prevailing Eastern Time) April 28, 2025** (the day before the Auction commences) (if applicable). The determination of which Qualified Bid constitutes a Baseline Bid and which Qualified Bid constitutes a Successful Bid shall take into account any factors the Debtors (in consultation with the Consultation Parties) deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things: (a) the type and amount of Assets sought to be purchased in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof including any terms or consideration of such Qualified Bid; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Baseline Bid; (e) the assets and liabilities excluded from the Qualified Bid and any Contracts and Leases or other liabilities proposed to be assumed; (f) any benefit to the Debtors' estates from any assumption of liabilities or waiver of liabilities; (g) the likelihood of a Qualified Bid leading to a confirmed chapter 11 plan; (h) the transaction structure and execution risk, including conditions to, timing of, and certainty of closing, availability of financing and financial wherewithal to meet all commitments, and any required governmental or other approvals; (i) the tax consequences of such Qualified Bid; and (j) any other factors the Debtors may, consistent with their fiduciary duties, reasonably deem relevant (collectively, the "Bid Assessment Criteria").

If no Qualified Bids other than the Stalking Horse Bid are received prior to the Bid Deadline, then the Auction will not occur, the Stalking Horse Bid shall be deemed the Successful Bid for the Consulting Business and the Debtors shall file a notice of the cancellation of the Auction and the selection of the Stalking Horse Bid as the Successful Bid with the Bankruptcy Court within 24 hours following the Bid Deadline, and, subject to the terms of the Stalking Horse APA, the Debtors will pursue entry of an order by the Bankruptcy Court authorizing the Sale of the Consulting Business to the Stalking Horse Bidder as soon as practicable.

**The Auction Shall Be Conducted According to the Following Procedures:**

1. The Debtors Shall Preside over the Auction; Participation and Attendance at the Auction:

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of each Baseline Bid. Only the Stalking

Horse Bidder and other Qualified Bidders will be entitled to make Bids at the Auction. All incremental Bids made thereafter shall be Overbids and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including each Baseline Bid, all Overbids, and the Successful Bid.

Only Qualified Bidders that have submitted Qualified Bids by the Bid Deadline are eligible to participate in the Auction, subject to the terms of these Bidding Procedures and other limitations as may reasonably be imposed by the Debtors. Qualified Bidders participating in the Auction must appear at the Auction in person or through a duly authorized representative.

Any party in interest may attend (but not participate in) the Auction if any such party in interest provides the Debtors with written notice of its intention to attend the Auction on or before the Bid Deadline, which written notice shall be sent to DLA Piper via electronic mail at the addresses set forth above. The Consultation Parties may attend the Auction without sending prior written notice of their intention to do so.

The Debtors, in consultation with the Consultation Parties, shall have the discretion to determine how to proceed when auctioning the Debtors' assets, including by doing so in groupings that do not include all of the Assets so as to maximize the value of the Assets.

2. <u>Overbid Terms and Procedures</u>:

An "<u>Overbid</u>" is any bid made at the Auction by a Qualified Bidder after the Debtors' announcement of the applicable Baseline Bid. Each Overbid must comply with the following conditions:

(i)    <u>Minimum Overbid Increment</u>. Any Overbid, including any Bids by the Stalking Horse Bidder, must be made in minimum increments of at least $200,000 in cash, cash equivalents, or such other consideration that the Debtors, after consultation with the Consultation Parties, deem equivalent (the "<u>Minimum Overbid Increment</u>"). For the avoidance of doubt, in calculating the amount of any Overbid made by the Stalking Horse Bidder, the Stalking Horse Bidder shall be entitled to a credit in the amount of the Bid Protections (the "<u>Stalking Horse Credit</u>"). If the Stalking Horse Bid is the Successful Bid for the Consulting Business, the Stalking Horse Bidder shall not be required to fund that portion of its Successful Bid that is equal to the Stalking Horse Credit.

(ii)   <u>Overbid Alterations</u>. An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Qualified Bid or Overbid and shall otherwise comply with the terms of these Bidding Procedures.

(iii)  <u>Conclusion of Each Overbid Round</u>. Upon the solicitation of each round of Overbids, the Debtors may announce a deadline (the "<u>Overbid Round Deadline</u>"), subject to extension by the Debtors, by which time any Overbids must be submitted to the Debtors.
After each Overbid Round Deadline, the Debtors may determine, in consultation with the Consultation Parties, and taking into account the Bid Assessment

15

Criteria, whether an Overbid is higher or otherwise better than the Baseline Bid in the initial Overbid round or, in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "Prevailing Highest Bid"). The Debtors shall announce and describe to all Qualified Bidders present at the Auction the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid, the identity of the bidder with the Prevailing Highest Bid, as well as the value attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

3.  Consideration of Overbids:

The Debtors, in consultation with the Consultation Parties, reserve the right to adjourn the Auction as necessary to (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) provide Qualified Bidders with additional time to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to offer such additional evidence as the Debtors may require, such as with respect to financial capacity or sufficient funding or financing, in order to consummate the proposed Transaction at the prevailing Overbid amount.

4.  Closing the Auction:

The Auction shall continue until there is only one Qualified Bid—for the Consulting Business and for each other set or group of Assets—that the Debtors determine, after consultation with their financial and legal advisors and the Consultation Parties, and taking into account the Bid Assessment Criteria, to be the highest or otherwise best Qualified Bid for the Consulting Business and for each other set or group of Assets. Such Qualified Bid shall be declared the "Successful Bid", and such Qualified Bidder, the "Successful Bidder", and the Auction will be closed. Such acceptance by the Debtors of the Successful Bid (to be made in accordance with the terms of this section of the Bidding Procedures) is conditioned upon approval by the Bankruptcy Court of the Successful Bid. Following the closing of the Auction, the Debtors shall not initiate contact with, solicit, or encourage proposals from any person or entity with respect to the Assets that comprise the Successful Bid.

Promptly following the Debtors' selection of the Successful Bid and the conclusion of the Auction, the Debtors shall announce the Successful Bid and the Backup Bidder. The Debtors will file a notice identifying the Successful Bidder and Backup Bidder, as soon as reasonably practicable after closing the Auction, if any, and in any event not more than 24 hours following the close of the Auction.

5.  Backup Bidder:

Notwithstanding anything in these Bidding Procedures to the contrary, if the Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid at the Auction for the Assets shall be required to serve as a backup bidder (the "Backup Bidder") until such time that the Sale to the Successful Bidder is consummated, but no later than thirty (30) days past the Sale Hearing, and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

The identity of the Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder shall be announced by the Debtors, after consultation with the Consultation Parties, at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder. The Backup Bidder shall be required to keep its Qualified Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until the earlier of (i) two (2) days after the closing of the sale to the Successful Bidder and (ii) the date that is thirty (30) days after the Sale Hearing.

If a Successful Bidder fails to consummate the approved Transaction contemplated by its Successful Bid, the Debtors may select the Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Backup Bid without further order of the Bankruptcy Court or notice to any party. In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.

Notwithstanding anything to the contrary in these Bidding Procedures, the Stalking Horse APA (and not the Bidding Procedures) shall govern the terms and conditions of the deposit of the Stalking Horse Bidder and the Stalking Horse Bidder as Backup Bidder.

6. No Collusion; Good-Faith *Bona Fide* Offer:

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding, (ii) its Qualified Bid is a good-faith *bona fide* offer, and (iii) it intends to consummate the proposed Transaction if selected as the Successful Bidder or Backup Bidder on the terms and conditions set forth in the transaction documents governing its Bid.

**Procedures for Determining Cure Amounts and Adequate Assurance for Counterparties to Contracts and Leases**

On **March 3, 6, 10, 21, and 24, 2025**, the Debtors served a notice to each counterparty to a Contracts or Lease (each a "Counterparty") setting forth the Debtors' calculation of the cure amount, if any, that may be owed to such Counterparty if the Debtors decided to assume or assume and assign such Contract or Lease, and alerting such Counterparty that their Contract or Lease may be assumed and assigned to the Successful Bidder (the "Assumption and Assignment Notice"), a copy of which is attached to the Bid Procedures Order as Exhibit 4. The Debtors may provide supplemental Assumption and Assignment Notices if they discover Contracts or Leases that were inadvertently omitted from the initial Assumption and Assignment Notice or such Assumption and Assignment Notice erroneously reports the cure amount. The mere listing of any Contracts or Leases on any Assumption and Assignment Notice does not require or guarantee that such Contract or Lease will be assumed and assigned, and all rights of the Debtors and the Stalking Horse Bidder with respect to such Contract or Lease are hereby reserved.[47]

---

[47] For the avoidance of doubt, Contracts and Leases listed in any Assumption and Assignment Notice shall be deemed to include any statements of work, purchase orders or similar ancillary agreements or arrangements which

Any Counterparty that objects to (i) the potential assumption and assignment of any Contract or Lease to the Stalking Horse Bidder, including the ability of the Stalking Horse Bidder to provide adequate assurance of future performance, and (ii) the proposed cure amount to be paid in connection with the assumption and assignment of any Contract or Lease, must ~~file~~have filed an objection (an "Assignment Objection") **on or before 4:00 p.m. (prevailing Eastern Time) on March 24, 2025** (the "Assigned Contract Objection Deadline"); provided that if the Debtors serve any supplemental Assumption and Assignment Notice, the Assigned Contract Objection Deadline for any such objections relating to the Contracts and Leases identified in such Assumption and Assignment Notice shall be **4:00 p.m. (prevailing Eastern Time) on the later of March 24, 2025, and the date that is 14 days after service of such supplemental Assumption and Assignment Notice**.  Each Assignment Objection must be served on: (a) DLA Piper, (b) BGL, (c) Ankura, (d) counsel to the DIP Lender and Pre-Petition Lender, (i) Richards, Layton & Finger, PA, 920 North King Street, Wilmington, Delaware 19801 (Attn.: John H. Knight [knight@rlf.com]) and (ii) Otterbourg P.C., 230 Park Avenue, New York, New York 10169 (Attn.: Andrew M. Kramer [akramer@otterbourg.com] and James V. Drew [jdrew@otterbourg.com]), (e) ~~counsel or~~ proposed counsel to ~~any Committee~~the Committee, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801) (Attn.: Laura Davis Jones [ljones@pszjlaw.com], David M. Bertenthal [dbertenthal@pszjlaw.com], Colin R. Robinson [crobinson@pszjlaw.com.], and Edward A. Corma [ecorma@pszjlaw.com]), (f) counsel to the Stalking Horse Bidder, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036-8704 (Attention:  Cristine Schwarzman [cristine.schwarzman@ropesgray.com]  and Patricia Chen [patricia.chen@ropesgray.com], and (g) the Office of the United States Trustee for Region 3 (Attn.: Jonathan Lipshie [jon.lipshie@usdoj.gov]) (collectively, the "Notice Parties"); and filed with the Clerk of the Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, DE 19801.  If a Counterparty does not timely file and serve an Assignment Objection, that party will be forever barred from objecting to (x) the Debtors' proposed cure amount or (y) the assignment of that party's Contract or Lease to the Stalking Horse Bidder or Successful Bidder, as applicable.

With respect to any Successful Bidder that prevails at the Auction that is not the Stalking Horse Bidder, the deadline to object solely to (i) the identity of such Successful Bidder or (ii) the ability of such Successful Bidder to provide adequate assurance of future performance under any Contract or Lease (each, a "Post-Auction Objection") shall be **4:00 p.m. (prevailing Eastern Time) on April ~~7~~14, 2025** (the "Non-Stalking Horse Sale Objection Deadline").  Each Post-Auction Objection must be served on the Notice Parties and filed with the Clerk of the Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, DE 19801, so it is actually received no later than the Non-Stalking Horse Sale Objection Deadline.  If a Post-Auction Objection is not filed, parties will be forever barred from objecting

---

deemed to include any statements of work, purchase orders or similar ancillary agreements or arrangements which are issued or entered into pursuant to, or in accordance with, such Contracts and Leases (including any such statements of work, purchase orders or similar ancillary agreements or arrangements which are entered into with an affiliate to the Counterparty listed therein). Each Counterparty listed in any Assumption and Assignment Notice shall be deemed to include its affiliates.

1616055844.13

to the identity of the Successful Bidder or to the assignment of that party's Contract or Lease to the Successful Bidder.

If a Counterparty to a Contract or Lease files a timely Assignment Objection or Post-Auction Objection, as applicable, asserting a higher cure amount than the amount listed in the Assumption and Assignment Notice or to the possible assignment of that Counterparty's Contract or Lease, including the Successful Bidder's ability to provide adequate assurance of future performance, and the parties are unable to consensually resolve the dispute, the amount to be paid (if any) under section 365 of the Bankruptcy Code or, as the case may be, the Debtors' ability to assign the Contract or Lease to the Successful Bidder will be determined at the Sale Hearing or at a later date as fixed by the Bankruptcy Court.

**Sale Hearing**

Each Successful Bid and any Backup Bid shall be subject to approval by the Bankruptcy Court. A hearing to consider approval of the ~~Successful Bid and any Backup Bid (or to approve the Stalking Horse Bid as the Successful Bid if no Auction is held) (the "Sale Hearing") is proposed to take place on **April 4, 2025**, if there is no Auction, or **April 9, 2025**, if there is an Auction. At the~~ sale of the Assets free and clear of all liens, claims and encumbrances (a "Sale Hearing") shall occur on **April [11], 2025 at [●]:[●] [a/p].m. (Eastern Time)**, if the Auction is cancelled or if the Stalking Horse Bidder is the Successful Bidder at an Auction for the Consulting Business, or on or about **April [16], 2025, at [●]:[●] [a/p].m. (Eastern Time)** in all other scenarios, or as soon thereafter as the Bankruptcy Court's calendar permits. For the avoidance of doubt, at any Sale Hearing, the Debtors will present such Successful Bid(s) and Backup Bid(s) to the Bankruptcy Court for approval. Any Bidder that participates at an Auction may object to the conduct of the Auction at the Sale Hearing.

The Sale Hearing may be adjourned by the Debtors (in consultation with the Stalking Horse Bidder, if the Stalking Horse Bidder is the Successful Bidder) from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice, which may be a hearing agenda stating the adjournment, on the docket of the chapter 11 cases, provided, that nothing contained herein shall be deemed to modify any rights or remedies available to the Stalking Horse Bidder under the Stalking Horse APA, including, without limitation, with respect to any breach thereunder.

**Return of Deposit**

The Deposits for each Qualified Bidder shall be held in one or more escrow accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) promptly after the Auction. The Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at closing.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors will have no obligation to return the Deposit deposited by such Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition

to any and all rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Bankruptcy Court.

The Debtors shall return the Deposit to the Backup Bidder within seven (7) days after (i) the closing with the Successful Bidder or (ii) the expiration of thirty (30) days from the Sale Hearing. Upon the return of any such Deposit, the Backup Bid shall be deemed revoked and no longer enforceable.

**Reservation of Rights & Fiduciary Out**

The Debtors reserve their rights to modify these Bidding Procedures in their reasonable business judgment and in consultation with the Consultation Parties in any manner that will best promote the goals of these Bidding Procedures, or impose, at or prior to the Auction, additional customary terms and conditions in connection with a Sale, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all Bids or Qualified Bids, subject, in the case of the Stalking Horse Bidder, to the terms and conditions of the Stalking Horse APA.

For the avoidance of doubt and notwithstanding anything to the contrary herein, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or the board of directors, board of managers, or similar governing body of a Debtor to take any action or to refrain from taking any action related to any sale transaction to the extent that such Debtor or governing body determine, in good faith upon advice of outside legal counsel, that taking or failing to take such action would be inconsistent with applicable law or its fiduciary obligations under applicable law. Further, except as provided in Section 4 (Closing of the Auction) of these Bidding Procedures or the Stalking Horse APA, nothing in these Bidding Procedures or the Bidding Procedures Order shall diminish the right of the Debtors and their respective directors, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to: (a) consider, respond to, and facilitate alternate proposals for sales or other restructuring transactions involving any or all of the Assets (each, an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiation of Alternate Proposals; and (e) enter into or continue discussions or negotiations with holders of claims against or equity interests in a Debtor or any other party in interest in these chapter 11 cases or any other entity regarding Alternate Proposals.

**No Modification of Bidding Procedures**

These Bidding Procedures may not be modified except with the express prior written consent of the Debtors ~~and~~or approval of the Bankruptcy Court.

<div align="center">#     #     #     #</div>

1616055844.13

**Exhibit 2**

**Form of March 27, 2025 Letter Agreement**

1617765414.4

March 27, 2025

Azzur Group, LLC
330 South Warminister Road, Suite 341
Hatboro, Pennsylvania 19040

Eliquent Life Sciences, Inc.
1055 Thomas Jefferson St NW, Suite 450
Washington, DC 20007
E-mail:        spurtell@eliquent.com
Attention:     Steve Purtell


Reference is hereby made to that certain Asset Purchase Agreement (as amended from time to time, the "Purchase Agreement"), dated as of March 2, 2025, by and among Eliquent Life Sciences, Inc., a Delaware corporation (the "Purchaser"), Azzur Group, LLC, a Pennsylvania limited liability company ("Azzur Group, LLC"), and the subsidiaries of Azzur Group, LLC that are indicated on the signature pages attached thereto ("Azzur Consulting Group", and together with Azzur Group, LLC, each a "Seller" and collectively "Sellers"). Capitalized terms not defined herein shall have the respective meanings ascribed to them in the Purchase Agreement.

In consideration of the mutual promises made herein and other good and valuable consideration set forth in the Purchase Agreement, the parties hereto hereby agree as follows:

1.    Amendments.

a.    The definition of "Alternative Transaction" in the Purchase Agreement is hereby amended and restated in its entirety as follows:

"Alternative Transaction" means any transaction (or series of transactions), whether direct or indirect, whereby any Person or group of Persons (other than Sellers and their Affiliates or Purchaser and its Affiliates) acquires (i) beneficial ownership of a majority of the equity interests of Sellers or (ii) the Business or substantially all of the Acquired Assets, in each case, whether by merger, sale of assets or equity, recapitalization, plan of reorganization or otherwise. Notwithstanding the foregoing, for the avoidance of doubt, a piecemeal liquidation or wind-down of Sellers' estates shall not be an Alternative Transaction.

b.    Section 8.1(g) of the Purchase Agreement is hereby amended and restated in its entirety as follows:

"by written notice from Purchaser to Sellers, if the Bankruptcy Court has not entered (i) the interim Financing Order by March 7, 2025, (ii) the Bidding Procedures Order by March 28, 2025, (iii) the final Financing Order by April [•], 2025, or (iv) the Sale Order by April 12, 2025."

c.    Section 8.1(f) of the Purchase Agreement is hereby amended and restated in its entirety as follows:

"by written notice from Purchaser to Sellers, if Sellers shall fail to file (A) a motion with the Bankruptcy Court seeking entry of the Bidding Procedures Order within one day of the Petition Date; or (B) the Notice of Successful Bidder with the Bankruptcy Court within two (2) Business Days following the designation of Purchaser as the Successful Bidder or the Backup Bidder, as applicable;"

d.  The following sentence shall be added as the last sentence of Section 8.2(c) of the Purchase Agreement:

"Notwithstanding any terms to the contrary herein, the Break-Up Fee shall not be payable in the event that this Agreement is terminated pursuant to Sections 8.1(a), (b), (c), (i), (j), (k), (l) or (m)(iii) or the Purchaser terminates this Agreement pursuant to Section 8.1(n) (unless, as to Section 8.1(n) only, Sellers make a determination to enter into an Alternative Transaction, in which case the Break-Up Fee shall be payable pursuant to the terms hereof)."

e.  The following sentence shall be added as the last two sentences of Section 8.2(d) of the Purchase Agreement:

"Notwithstanding any terms to the contrary herein, (I) the Expense Reimbursement shall not be payable in the event that this Agreement is terminated pursuant to (x) Section 8.1(a), (y) Section 8.1(g) (solely if the failure to comply with Section 8.1(g) is a result of the Bankruptcy Court's own scheduling or availability or the Sellers' discharge of fiduciary duties as provided in Section 10.19) or (z) Section 8.1(k) (unless the event giving rise to termination under Section 8.1(k) would result in the inability to consummate the transactions contemplated by this Agreement, in which case the Expense Reimbursement shall be payable); and (II) except in the event of the termination of this Agreement pursuant to Sections 8.1(c), (d), or (i), the Expense Reimbursement shall be due and payable solely out of the cash proceeds of an Alternative Transaction; provided, that, to the extent that the Expense Reimbursement is not payable pursuant to the foregoing, the Purchaser's rights to seek allowance and payment of the Expense Reimbursement under Sections 503 and 507 of the Bankruptcy Code or otherwise are hereby reserved (and the rights of the Committee (as defined in the Bidding Procedures Order) and the Sellers with respect to such allowance and payment are hereby reserved)."

2.  <u>Miscellaneous</u>.  The provisions set forth in Sections 10.3, 10.4, 10.5, 10.9, 10.13, 10.14 and 10.15 of the Purchase Agreement shall apply *mutatis mutandis* to this letter agreement as if set forth in full in this <u>Section 2</u>. To the extent of any conflicts between this letter agreement and the Purchase Agreement, the terms of this letter agreement shall prevail.

IN WITNESS WHEREOF, each of the undersigned has caused this Agreement to be executed by its duly authorized officer.


**THE BUYER:**                         ELIQUENT LIFE SCIENCES, INC.


By:_____
Name:
Title:

**THE SELLERS:**

152214775_2

Copies to:

Ropes & Gray LLP
191 North Wacker Drive, 32nd Floor
Chicago, Illinois 60606
E mail:        timothy.castelli@ropesgray.com;
               cristine.schwarzman@ropesgray.com;
               andrew.pomranke@ropesgray.com
Attention:     Timothy A. Castelli;
               Cristine Pirro Schwarzman;
               Andrew T. Pomranke


DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
E mail: benjamin.winger@us.dlapiper.com
        katie.allison@us.dlapiper.com
Attention: W. Benjamin Winger
           Katie Allison

**Exhibit 3**

**Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AZZUR GROUP HOLDINGS, LLC, *et al.*,[1] | Case No. Case No. 25-10342 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I.: [___]13 & [__]** |

### NOTICE OF AUCTION, SALE HEARING AND CERTAIN RELATED DEADLINES

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

      1.     On March 2, 2025, the above-captioned debtors and debtors-in-possessions (the "Debtors") filed voluntary petitions for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

      2.     On March 3, 2025, the Debtors filed a motion [Docket No. [●]D.I. 13] (the "Bidding Procedures and Sale Motion"), pursuant to sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code and Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), seeking entry of an order (the "Bidding Procedures Order") (a) scheduling an auction (the "Auction") for the sale of the Debtors' assets (the "Assets") and a hearing to approve the sale of the Assets (the "Sale Hearing"), (b) approving procedures (the "Bidding Procedures")[2] for submitting competing bids for the Assets, (c) authorizing the Debtors to designate the Stalking Horse Bidder and approving the Bid Protections in accordance with the Stalking Horse APA and Bidding Procedures Order, (d) subject to final Court approval at the Sale Hearing, authorizing and approving the Debtors to enter into and perform under the Stalking Horse APA, as applicable, subject to higher or otherwise better offers submitted in accordance with the Bidding Procedures, (e) approving the form and manner of the notice of the Auction and the Sale Hearing, (f) establishing procedures for the assumption and assignment of the Contracts and Leases (as defined in the Bidding Procedures Order) to any purchaser(s) of the Assets and approving the form and manner of notice thereof, and (g) scheduling a hearing to approve the Debtors' assumption and assignment of the Assigned Contracts, payment of the applicable cure amounts (if any), and/or resolve any objections thereto.

---

[1] A list of the Debtors in these chapterChapter 11 casesCases, along with the last four digits of each Debtor's federal tax identification number, may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Azzur. The Debtors' headquarters and the mailing address for the Debtors is 330 South Warminster Road, Suite 341, Hatboro, PA 19040.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures.

3.       On March [●], ~~2023~~2025, the Bankruptcy Court entered the Bidding Procedures Order [~~Docket No~~D.I. [●]]. Pursuant to the Bidding Procedures Order, if at least two (2) Qualified Bids with regard to any particular Assets (as defined in the Bidding Procedures Order) are received by the Bid Deadline (as defined below), the Debtors will conduct the Auction. **The Auction shall be held live at the offices of DLA Piper LLP (US) located at 444 W. Lake St., Ste. 900, Chicago, IL 606060, and/or virtual, on April 3~~9~~, 2025, starting at 10:00 a.m. (prevailing Eastern Time) or such other time as the Debtors shall designate and notify to all Qualified Bidders.** Only the Debtors, the Qualified Bidders, the Consultation Parties, and each such parties' respective legal and financial advisors shall be entitled to attend the Auction, along with any other creditor, and any other party the Debtors deem appropriate.  Any party in interest may attend (but not participate in) the Auction if any such party in interest provides the Debtors with written notice of its intention to attend the Auction on or before the Bid Deadline, which written notice shall be sent to proposed counsel for the Debtors via electronic mail, to Stuart M. Brown, Esq. at stuart.brown@us.dlapiper.com, W. Benjamin Winger, Esq. at benjamin.winger@us.dlapiper.com, and Katherine Allison, Esq. at katie.allison@us.dlapiper.com~~]~~. **Only parties that have submitted a Qualified Bid, as set forth in the Bidding Procedures Order, by no later than April 1~~7~~, 2025, at 5:00 p.m. (prevailing Eastern Time) (the "Bid Deadline") may bid at the Auction.** *Any party that wishes to take part in this process and submit a Bid (as defined in the Bidding Procedures) for any portion of the Assets must submit their competing Bid prior to the Bid Deadline and in accordance with the Bidding Procedures.*

4.       **The Sale Hearing to consider approval of the Sale of the Assets to the Successful Bidder(s), free and clear of all liens, claims, encumbrances, and interests, will be held before the Honorable Karen B. Owens, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801, on April 9[16], 2025, at [●]:[●] [a./p.]m. (prevailing Eastern Time)~~;~~** provided, however, that if there is no Auction because there are no Qualified Bids besides the Stalking Horse Bid, or if the Stalking Horse Bidder is the Successful Bidder at an Auction for the Consulting Business, then the Sale Hearing shall occur on **April 4[11], 2025 at [●]: [●] [a./p.]m. (prevailing Eastern Time)**. Subject to consultation with the Consultation Parties (and the Stalking Horse Bidder, if the Stalking Horse Bidder is the Successful Bidder), the Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by including such adjournment on any agenda filed with the Bankruptcy Court or by the filing of a notice with the Bankruptcy Court.

**5.       The Debtors encourage all parties-in-interest to review the documents referenced herein in their entirety, including the Bidding Procedures and Sale Motion and the Bidding Procedures Order, which requests approval of a number of important dates and deadlines in connection with the Sale.**

6.       As set forth in the notice filed by the Debtors on the docket of the ~~chapter~~Chapter 11 ~~cases~~Cases on March 3, 2025, at ~~Docket No. [●]~~D.I. 41, objections to approval of the Stalking Horse APA and the transactions contemplated therein and the Sale of the Consulting Business free and clear of liens, claims, encumbrances, and other interests (except as set forth in the Stalking Horse APA) to the Stalking Horse Bidder ~~are~~were required to be in writing,

1617765414.4

stateshall have stated the basis of such objection with specificity, and beshall have been filed with the Bankruptcy Court and served on the following parties (collectively, the "Notice Parties") so that it issuch objection was **actually received by 4:00 p.m. (prevailing Eastern Time) on March 24, 2025** (the "Stalking Horse Sale Objection Deadline"):[3]

    (a)    proposed counsel to the Debtors, DLA Piper LLP (US) (i) 1201 North Market Street, Suite 2100 Wilmington, Delaware 19801 (Attn.: Stuart M. Brown [stuart.brown@us.dlapiper.com]; and (ii) 444 West Lake Street, Suite 900 Chicago, Illinois 60606 (Attn.: W. Benjamin Winger [benjamin.winger@us.dlapiper.com] and Katherine Allison [katie.allison@us.dlapiper.com]);

    (b)    proposed financial advisor to the Debtors, Ankura Consulting Group, LLC, 485 Lexington Avenue, 10th Floor, New York, New York 10017 (Attn.: M. Benjamin Jones, Chief Restructuring Officer of the Debtors [ben.jones@ankura.com]);

    (c)    proposed investment banker to the Debtors, Brown Gibbons Lang & Co. Securities, One Magnificent Mile, 980 N. Michigan Ave., Suite 1800, Chicago, IL 60611 (Attn.: Kyle Brown [kbrown@bglco.com] and T. Michael Madden [mmadden@bglco.com]);

    (d)    counsel to the DIP Lender and Pre-Petition Lender, (i) Richards, Layton & Finger, PA, 920 North King Street, Wilmington, Delaware 19801 (Attn.: John H. Knight [knight@rlf.com]) and (ii) Otterbourg P.C., 230 Park Avenue, New York, New York 10169 (Attn.: Andrew M. Kramer [akramer@otterbourg.com] and James V. Drew [jdrew@otterbourg.com]);

    (e) counsel to any official committee appointed in these chapter 11 cases;

    (e)    proposed counsel to the Official Committee of Unsecured Creditors (the "Committee"), Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801) (Attn.: Laura Davis Jones [ljones@pszjlaw.com], David M. Bertenthal [dbertenthal@pszjlaw.com], Colin R. Robinson [crobinson@pszjlaw.com.], and Edward A. Corma [ecorma@pszjlaw.com]);

    (f)    counsel to the Stalking Horse Bidder, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036-8704 (Attn.: Cristine Schwarzman, Esq. [cristine.schwarzman@ropesgray.com] and Patricia Chen, Esq. [patricia.chen@ropesgray.com]; and

---

[3] The Stalking Horse Sale Objection Deadline shall apply to all parties in interest except the Committee (defined herein). The Committee's deadline to object to the approval of the Stalking Horse APA and the Sale of the Consulting Business free and clear of liens, claims, encumbrances, and other interests (except as set forth in the Stalking Horse APA) to the Stalking Horse Bidder is 4:00 p.m. (prevailing Eastern Time) on April 7, 2025.

1617765414.4

(g)  the Office of the United States Trustee for Region 3, J. Caleb Boggs Federal Building, 844 King St., Lockbox 35, Wilmington, Delaware 19801 (Attn.: Jonathan Lipshie [jon.lipshie@usdoj.gov]).

7.  **Objections related solely to (i) the Sale of the Assets to a Successful Bidder other than the Stalking Horse Bidder, (ii) the conduct of the Auction, (iii) the identity of any Successful Bidder other than the Stalking Horse Bidder, and (iv) adequate assurance of future performance by any Successful Bidder other than the Stalking Horse Bidder must be in writing, state the basis of such objection with specificity, and be filed with the Bankruptcy Court and served so that it is actually received by the Notice Parties by April 7[14], 2025, at 4:00 p.m. (prevailing Eastern Time).**

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT(S), AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED WITHOUT FURTHER HEARING AND NOTICE.**

8.  This Sale Notice is subject to the fuller terms and conditions of the Bidding Procedures and Sale Motion and the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict. The Debtors encourage all parties-in-interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of the Assets and/or copies of any related document, including the Bidding Procedures and Sale Motion, the Bidding Procedures Order, or the proposed form of Sale Order may make a written request to Benjamin Winger [benjamin.winger@us.dlapiper.com] and Katherine Allison [katie.allison@us.dlapiper.com]. In addition, copies of the Bidding Procedures and Sale Motion, the Bidding Procedures Order and this Notice are on file with the Clerk of the Bankruptcy Court, Third Floor, 824 North Market Street, Wilmington, Delaware 19801, and are available (a) for free on the Debtors' restructuring website at https://cases.stretto.com/Azzur or (b) for a fee via PACER by visiting https://pacer.uscourts.gov.

Dated: [●], 2025
Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

 _/s/ DRAFT_____
Stuart M. Brown (DE - 4050)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2462
Email: stuart.brown@us.dlapiper.com

- and -

1617765414.4

W. Benjamin Winger (<u>admitted</u> *pro hac vice* ~~admission pending~~)444 West Lake Street, Suite 900Chicago, Illinois 60606Telephone: (312) 368-4000 Facsimile: (312) 236-7516Email: benjamin.winger@us.dlapiper.com

*[Proposed ]Counsel to the Debtors*

5

**Exhibit 34**

**Stalking Horse Sale Objection Deadline Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AZZUR GROUP HOLDINGS, LLC, *et al.*,[1] | Case No. Case No. 25-10342 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Re:Related** D.I. Nos.: [__]13 & [__] |

## NOTICE OF PROPOSED SALE PURSUANT TO
## STALKING HORSE APA AND RELATED DATES AND DEADLINES

### PLEASE TAKE NOTICE OF THE FOLLOWING:

1.    On March 2, 2025, the above-captioned debtors and debtors in possession (the "**Debtors**") filed voluntary petitions for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

2.    On March 3, 2025, the Debtors also filed a motion [Docket No. [●]D.I. 13] (the "**Bidding Procedures and Sale Motion**"), pursuant to 105(a), 363, 365, 503, and 507 of the Bankruptcy Code and Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), requesting entry of an order (the "**Bidding Procedures Order**"): (a) scheduling an auction (the "**Auction**") for the sale (the "**Sale**") of the Debtors' assets (the "**Assets**") on or about April 39, 2025, at 10:00 a.m. (ET); (b) scheduling a hearing to approve the sale of the Assets (the "**Sale Hearing**") on or about April 9[16], 2025, if the Auction occursfor the Consulting Business occurs and the Stalking Horse Bidder is not the Successful Bidder at such Auction, or, subject to the availability of the Court, on or about April 4[11], 2025, if the Auction is cancelled or if the Stalking Horse Bidder is the Successful Bidder at an Auction for the Consulting Business; (c) approving procedures (the "**Bidding Procedures**")[2] for submitting competing bids for the Assets; (d) authorizing the Debtors to designate the Stalking Horse Bidder, approving the Bid Protections, in accordance with the Stalking Horse APA and Bidding Procedures Order; (e) subject to final Court approval at the Sale Hearing, authorizing and approving the Debtors to enter into and perform under the Stalking Horse APA, as applicable, subject to higher or otherwise better offers submitted in accordance with the Bidding Procedures; (f) approving the form and manner of the notice of the Auction and the Sale Hearing and certain other dates and deadlines in connection with the Sale; (g)

---

[1] A list of the Debtors in these chapterChapter 11 casesCases, along with the last four digits of each Debtor's federal tax identification number, may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Azzur. The Debtors' headquarters and the mailing address for the Debtors is 330 South Warminster Road, Suite 341, Hatboro, PA 19040.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures.

establishing procedures for the assumption and assignment of the Assigned Contracts (as defined in the Bidding Procedures Order) to any purchaser(s) of the Assets and approving the manner of notice thereof; and (h) scheduling a hearing to approve assumption and assignment of the Assigned Contracts, payment of cure amounts (if any), and/or resolve any objections thereto.

3.     The hearing to consider approval of the Bidding Procedures before the Honorable Karen B. Owens, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, DE 19801 will be scheduled on or after the Stalking Horse Sale Objection Deadline.

4.     Pursuant to the Bidding Procedures and Sale Motion, the Debtors have requested approval of the sale of the Debtors' Consulting Business to Eliquent Life Sciences, Inc. (and its permitted assignees) (the "**Stalking Horse Bidder**") on the terms and conditions set forth in the Stalking Horse APA (subject to higher or better bids as set forth in the Bidding Procedures). Copies of the Stalking Horse APA and a proposed form of order approving the Sale pursuant to the Stalking Horse APA (the "**Sale Order**") are attached to the Bidding Procedures and Sale Motion as Exhibits B and C, respectively.

5.     **Pursuant to the Bidding Procedures and Sale Motion, the Debtors are requesting that all objections related to the approval of the Stalking Horse APA and the transactions contemplated therein and the Sale of the Consulting Business free and clear of liens, claims, encumbrances, and other interests (except as set forth in the Stalking Horse APA) to the Stalking Horse Bidder must ~~be~~have been in writing, ~~state~~stated the basis of such objection with specificity, and ~~be~~shall have been filed with the Bankruptcy Court and served on the following parties so that it ~~is~~was actually received by 4:00 p.m. (prevailing Eastern Time) on March 24, 2025 (the "Stalking Horse Sale Objection Deadline"):**[3] (a) proposed counsel to the Debtors, DLA Piper LLP (US) (i) 1201 North Market Street, Suite 2100 Wilmington, Delaware 19801 (Attn.: Stuart M. Brown [stuart.brown@us.dlapiper.com]); and (ii) 444 West Lake Street, Suite 900 Chicago, Illinois 60606 (Attn.: W. Benjamin Winger [benjamin.winger@us.dlapiper.com] and Katherine Allison [katie.allison@us.dlapiper.com]); (b) proposed financial advisor to the Debtors, Ankura Consulting Group, LLC, 485 Lexington Avenue, 10th Floor, New York, New York 10017 (Attn.: M. Benjamin Jones, Chief Restructuring Officer of the Debtors [ben.jones@ankura.com]); (c) proposed investment banker to the Debtors, Brown Gibbons Lang & Co. Securities, One Magnificent Mile, 980 N. Michigan Ave., Suite 1800, Chicago, IL 60611 (Attn.: Kyle Brown [kbrown@bglco.com] and T. Michael Madden [mmadden@bglco.com]); (d) counsel to the DIP Lender and Pre-Petition Lender, (i) Richards, Layton & Finger, PA, 920 North King Street, Wilmington, Delaware 19801 (Attn.: John H. Knight [knight@rlf.com]) and (ii) Otterbourg P.C., 230 Park Avenue, New York, New York 10169 (Attn.: Andrew M. Kramer [akramer@otterbourg.com] and James V. Drew [jdrew@otterbourg.com]); (e) ~~counsel to any official committee appointed in these chapter 11 cases~~proposed counsel to the Official Committee of Unsecured Creditors (the "Committee"), Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705,

---

[3] The Stalking Horse Sale Objection Deadline shall apply to all parties in interest except the Committee (defined herein).  The Committee's deadline to object to the approval of the Stalking Horse APA and the Sale of the Consulting Business free and clear of liens, claims, encumbrances, and other interests (except as set forth in the Stalking Horse APA) to the Stalking Horse Bidder is 4:00 p.m. (prevailing Eastern Time) on April 7, 2025.

1617765414.4

Wilmington, DE 19899-8705 (Courier 19801) (Attn.: Laura Davis Jones [ljones@pszjlaw.com], David M. Bertenthal [dbertenthal@pszjlaw.com], Colin R. Robinson [crobinson@pszjlaw.com], and Edward A. Corma [ecorma@pszjlaw.com]); (f) counsel to the Stalking Horse Bidder, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036-8704 (Attn.: Cristine Schwarzman, Esq. [cristine.schwarzman@ropesgray.com] and Patricia Chen, Esq. [patricia.chen@ropesgray.com]; and (g) the Office of the United States Trustee for Region 3, J. Caleb Boggs Federal Building, 844 King St., Lockbox 35, Wilmington, Delaware 19801 (Attn.: Jonathan Lipshie [jon.lipshie@usdoj.gov]).

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE SALE OF THE DEBTORS' CONSULTING BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE STALKING HORSE APA, AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED WITHOUT FURTHER HEARING AND NOTICE.**

6.     Pursuant to the Bidding Procedures and Sale Motion, the Debtors **have also requested** that the Sale Hearing to consider approval of the sale of the Assets free and clear of all liens, claims and encumbrances, be held before the Honorable [●]Karen B. Owens, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, on or about **April 4[11], 2025 at [●]:[●] [a/p].m. (Eastern Time)**, if the Auction is cancelled or if the Stalking Horse Bidder is the Successful Bidder at an Auction for the Consulting Business, or on or about **April 9[16], 2025, at [●]:[●] [a/p].m. (Eastern Time)** if there is an Auctionin all other scenarios. Subject to consultation with the Consultation Parties (and the Stalking Horse Bidder, if the Stalking Horse Bidder is the Successful Bidder), the Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by including such adjournment on any agenda filed with the Bankruptcy Court or by the filing of a notice with the Bankruptcy Court.

7.     This Notice is subject to the fuller terms and conditions of the Bidding Procedures and Sale Motion and the Bidding Procedures Order (once entered), and the terms of the Bidding Procedures Order (once entered) shall control in the event of any conflict.

**8.     The Debtors encourage all parties-in-interest to review the documents referenced herein in their entirety, including the Bidding Procedures and Sale Motion, which requests approval of a number of important dates and deadlines in connection with the Sale.**

9.     Parties interested in receiving more information regarding the Stalking Horse APA transaction or any related document, including the Bidding Procedures and Sale Motion, the proposed Bidding Procedures, the proposed Bidding Procedures Order, the Stalking Horse APA, or the proposed Sale Order may make a written request to Benjamin Winger [benjamin.winger@us.dlapiper.com] and Katherine Allison [katie.allison@us.dlapiper.com].

10.    This Notice is subject to the fuller terms and conditions of the Bidding Procedures and the Bidding Procedures Order.  In the event of any conflict, the Bidding Procedures Order shall control, and the Debtors encourage parties in interest to review such documents in their entirety.  Copies of the Bidding Procedures Motion, proposed Bidding Procedures Order, Bidding Procedures, this Notice, and any other related documents are available (a) for free on the Debtors' restructuring website at https://cases.stretto.com/Azzur or (b) for a fee via PACER by visiting https://pacer.uscourts.gov.

Dated: [●], 2025
Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

 _/s/ DRAFT_____
Stuart M. Brown (DE - 4050)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2462
Email:  stuart.brown@us.dlapiper.com

- _and_ -

W. Benjamin Winger (admitted _pro hac vice_ admission pending)444 West Lake Street, Suite 900Chicago, Illinois 60606Telephone: (312)   368-4000   Facsimile:   (312) 236-7516Email: benjamin.winger@us.dlapiper.com

_[Proposed ]Counsel to the Debtors_

**Exhibit 45**

**Assumption and Assignment Notice**

1617765414.4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AZZUR GROUP HOLDINGS, LLC, *et al.*,[1] | Case No. Case No. 25-10342 (KBO) |
| Debtors. | (Jointly Administered) |
| | ~~Re:~~Related D.I.: ~~[___] & [___]~~13 |

## NOTICE OF (I) POTENTIAL ASSUMPTION AND ASSIGNMENT OF
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (II) CURE AMOUNTS

> **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU**
> **OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN**
> **EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE**
> **OF THE DEBTORS AS SET FORTH ON <u>SCHEDULE A</u> ATTACHED HERETO.**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. On March 2, 2025, the above-captioned debtors and debtors in possession (the "**Debtors**") filed voluntary petitions for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

2. On March 3, 2025, the Debtors also filed a motion [~~Docket No. [●]~~D.I. 13] (the "**Bidding Procedures and Sale Motion**"), pursuant to 105(a), 363, 365, 503, and 507 of the Bankruptcy Code and Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), requesting entry of an order (the "**Bidding Procedures Order**"): (a) scheduling an auction (the "**Auction**") for the sale (the "**Sale**") of the Debtors' assets (the "**Assets**") on or about April 3, 2025, at 10:00 a.m. (ET); (b) scheduling a hearing to approve the sale of the Assets (the "**Sale Hearing**") on or about April [~~9~~16], 2025, if the Auction ~~occurs~~<u>for the Consulting Business occurs and the Stalking Horse Bidder is not the Successful Bidder at such Auction,</u> or, subject to the availability of the Court, on or about April [~~4~~11], 2025, if the Auction is cancelled <u>or if the Stalking Horse Bidder is the Successful Bidder at an Auction for the Consulting Business</u>; (c) approving procedures (the "**Bidding Procedures**")[2] for submitting competing bids for the Assets; (d) authorizing the Debtors to

---

[1] A list of the Debtors in these ~~chapter~~<u>Chapter</u> 11 ~~cases~~<u>Cases</u>, along with the last four digits of each Debtor's federal tax identification number, may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Azzur. The Debtors' headquarters and the mailing address for the Debtors is 330 South Warminster Road, Suite 341, Hatboro, PA 19040.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures.

designate the Stalking Horse Bidder, approving the Bid Protections, in accordance with the Stalking Horse APA and Bidding Procedures Order; (e) subject to final Court approval at the Sale Hearing, authorizing and approving the Debtors to enter into and perform under the Stalking Horse APA, as applicable, subject to higher or otherwise better offers submitted in accordance with the Bidding Procedures; (f) approving the form and manner of the notice of the Auction and the Sale Hearing and certain other dates and deadlines in connection with the Sale; (g) establishing procedures for the assumption and assignment of the Assigned Contracts (as defined in the Bidding Procedures Order) to any purchaser(s) of the Assets and approving the manner of notice thereof; and (h) scheduling a hearing to approve assumption and assignment of the Assigned Contracts, payment of cure amounts (if any), and/or resolve any objections thereto.

3.      The hearing to consider approval of the Bidding Procedures before the Honorable Karen B. Owens, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, DE 19801 will be scheduled on or after the Assigned Contract Objection Deadline.

4.      Pursuant to the Bidding Procedures and Sale Motion, the Debtors have requested approval of the sale of the Debtors' Consulting Business to Eliquent Life Sciences, Inc. (and its permitted assignees) (the "**Stalking Horse Bidder**") on the terms and conditions set forth in the Stalking Horse APA (subject to higher or better bids as set forth in the Bidding Procedures). Copies of the Stalking Horse APA and a proposed form of order approving the Sale pursuant to the Stalking Horse APA (the "**Sale Order**") are attached to the Bidding Procedures and Sale Motion as Exhibits B and C, respectively.

5.      **The Debtors encourage all parties-in-interest to review the documents referenced herein in their entirety, including the Bidding Procedures and Sale Motion and the proposed Bidding Procedures Order, which requests approval of a number of important dates and deadlines in connection with the Sale.**

6.      Pursuant to the Bidding Procedures and Sale Motion, the Debtors may potentially assume and assign to the Successful Bidder one or more of those executory contracts and unexpired leases listed on **Schedule A** annexed hereto (collectively, the "**Potentially Assigned Agreements**" and each, a "**Potentially Assigned Agreement**"), pursuant to section 365 of the Bankruptcy Code. **The mere listing of any Potentially Assigned Agreement on Schedule A does not require or guarantee that such Potentially Assigned Agreement will be assumed and assigned, and all rights of the Debtors and the Stalking Horse Bidder with respect to such Potentially Assigned Agreement lease are hereby reserved.**

7.      For the avoidance of doubt, the Potentially Assigned Agreements listed on **Schedule A** annexed hereto shall be deemed to include any statements of work, purchase orders or similar ancillary agreements or arrangements which are issued or entered into pursuant to, or in accordance with, such Potentially Assigned Agreement (including any such statements of work, purchase orders or similar ancillary agreements or arrangements which are entered into with an affiliate to the counterparty listed therein). Each counterparty listed on **Schedule A** annexed hereto shall be deemed to include its affiliates.

8.    The Debtors have indicated on **Schedule A** annexed hereto the amounts, if any, that the Debtors believe must be paid, pursuant to section 365 of the Bankruptcy Code, to cure the Potentially Assigned Agreements (in each instance, the "**Cure Amount**").

9.    Any party seeking to object to the validity of the Cure Amount as determined by the Debtors, or otherwise assert that any other amounts, defaults, conditions or pecuniary losses must be cured or satisfied under any of the Potentially Assigned Agreements, in order for such contract or lease to be assumed and assigned, to object to adequate assurance of future performance by the Stalking Horse Bidder, or to otherwise object to the potential assumption and assignment of its Potentially Assigned Agreements to the Stalking Horse Bidder must file an objection (an "**Assignment Objection**") that (a) is in writing, (b) states the specific bases for the Assignment Objection, including the specific monetary amount the party asserts to be due, the specific types of the alleged defaults, pecuniary losses, accrued amounts and conditions to assignment and the support therefor, (c) is filed with the Clerk of the Bankruptcy Court and (d) is served on (i) proposed counsel to the Debtors, DLA Piper LLP (US) (i) 1201 North Market Street, Suite 2100 Wilmington, Delaware 19801 (Attn.: Stuart M. Brown [stuart.brown@us.dlapiper.com]); and (ii) 444 West Lake Street, Suite 900 Chicago, Illinois 60606 (Attn.: W. Benjamin Winger [benjamin.winger@us.dlapiper.com] and Katherine Allison [katie.allison@us.dlapiper.com]); (ii) the Office of the United States Trustee for Region 3, J. Caleb Boggs Federal Building, 844 King St., Lockbox 35, Wilmington, Delaware 19801 (Attn.: Jonathan Lipshie [jon.lipshie@usdoj.gov]); (iii) counsel to the Stalking Horse Bidder, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036-8704 (Attn.: Cristine Schwarzman, Esq. [cristine.schwarzman@ropesgray.com] and Patricia Chen, Esq. [patricia.chen@ropesgray.com]; and (iv) ~~counsel to any official committee appointed in these chapter 11 cases~~proposed counsel to the Official Committee of Unsecured Creditors, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801) (Attn.: Laura Davis Jones [ljones@pszjlaw.com], David M. Bertenthal [dbertenthal@pszjlaw.com], Colin R. Robinson [crobinson@pszjlaw.com.], and Edward A. Corma [ecorma@pszjlaw.com]) (collectively, the "**Notice Parties**"), so that is **actually received by the foregoing parties** no later than **4:00 p.m. (ET) on March 24, 2025 (the "Assigned Contract Objection Deadline")**.[3]

10.    The Debtors shall file a notice identifying the Successful Bidder with the Bankruptcy Court and serve such notice upon parties in interest as soon as reasonably practicable after the conclusion of the Auction or if there is no Auction, the Bid Deadline.

11.    The Debtors have separately requested that all objections to the approval of the Stalking Horse APA and the transactions contemplated therein and the Sale of the Consulting Business free and clear of liens, claims, encumbrances, and other interests (except as set forth in the Stalking Horse APA) to the Stalking Horse Bidder be established as **March 24, 2025 at 4:00 p.m. (ET)**. *See* ~~Docket No. [~~●D.I. 41].

---

[3] ~~[Note to Form:  If the Debtors serve any supplemental Assumption and Assignment Notice, the Assigned Contract Objection Deadline for any such objections relating to the Contracts and Leases identified in such Assumption and Assignment Notice shall be **4:00 p.m. (prevailing Eastern Time) on the later of March 24, 2025, and the date that is 14 days after service of such supplemental Assumption and Assignment Notice.**]~~

1617765414.4

12. The Debtors have also separately requested that if an Auction is held, the deadline for all objections to (i) the Sale of the Assets to a Successful Bidder other than the Stalking Horse Bidder, (ii) the conduct of the Auction, (iii) the identity of any Successful Bidder other than the Stalking Horse Bidder, and (iv) adequate assurance of future performance by any Successful Bidder other than the Stalking Horse Bidder be established as **April ~~7~~14, 2025 at 4:00 p.m. (ET)**.

13. Unless an Assignment Objection, or any other objection to the proposed assumption and assignment of a Potentially Assigned Agreement, is timely and properly filed and served in accordance with this notice, the non-Debtor Counterparty to a Potentially Assigned Agreement shall (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Potentially Assigned Agreement, and the Debtors and the Successful Bidder(s) shall be entitled to rely solely upon the Cure Amount; (ii) be deemed to have consented to any assumption and assignment of such Potentially Assigned Agreement; and (iii) be forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder(s) that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Potentially Assigned Agreement or that there is any objection or defense to the assumption and assignment of such Potentially Assigned Agreement (including any failure to provide adequate assurance of adequate performance).

14. Where a non-Debtor Counterparty to a Potentially Assigned Agreement timely and properly files an Assignment Objection asserting a cure amount higher or different than the proposed Cure Cost (a "**Disputed Cure Cost**") or to the potential assumption and assignment of its Potentially Assigned Agreement, then (a) to the extent that the parties are able to consensually resolve an Assignment Objection to the proposed Cure Cost, the Cure Cost shall be as agreed between the parties, or (b) to the extent the parties are unable to consensually resolve the dispute, then such Assignment Objection, including the Disputed Cure Cost (if any), will be heard at the Sale Hearing or at such other hearing or at such other date and time as may be agreed to by the parties or fixed by the Court; provided, however, that if the Assignment Objection relates solely to the Disputed Cure Costs, the underlying Contract or Lease may be conditionally assumed by the Debtors and assigned to the Stalking Horse Bidder (or in the event the Stalking Horse Bidder is not the Successful Bidder, then to the Successful Bidder or the Back-Up Bidder), pending the Court's adjudication of the Disputed Cure Costs, provided that the cure amount that the non-Debtor Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the non-Debtor Counterparty) is deposited in a segregated account by the Debtors, the Stalking Horse Bidder (or, in the event the Stalking Horse Bidder is not the Successful Bidder, then the Successful Bidder or the Back-Up Bidder). The Stalking Horse Bidder shall be entitled to re-designate any "Assigned Contract" as an "Excluded Contract" at any time after the Court's determination of the Disputed Cure Cost or any other contested matter with the applicable non-Debtor Counterparty.

15. If you agree with the Cure Amount indicated on **Schedule A**, and otherwise do not object to the Debtors' assumption and assignment of your Potentially Assigned Agreement, you need not take any further action.

16.    The Debtors' decision to assume and assign the Potentially Assigned Agreements is subject to Bankruptcy Court approval and consummation of the sale of the Assets.

**Inclusion of any document on the list of Potentially Assigned Agreements shall not constitute or be deemed to be a determination or admission by the Debtors, the Stalking Horse Bidder, or the Successful Bidder(s) that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and all rights with respect thereto are being expressly reserved.**

This Notice is subject to the fuller terms and conditions of the Bidding Procedures and the Bidding Procedures Order.  In the event of any conflict, the Bidding Procedures Order shall control, and the Debtors encourage parties in interest to review such documents in their entirety. Copies of the Bidding Procedures Motion, proposed Bidding Procedures Order, Bidding Procedures, this Notice, and any other related documents are available (a) for free on the Debtors' restructuring website at https://cases.stretto.com/Azzur or (b) for a fee via PACER by visiting https://pacer.uscourts.gov.

Dated: March [●], 2025
Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

 /s/ DRAFT
Stuart M. Brown (DE - 4050)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2462
Email: stuart.brown@us.dlapiper.com

- and -

W. Benjamin Winger (admitted pro hac vice admission pending)444 West Lake Street, Suite 900Chicago, Illinois 60606Telephone: (312) 368-4000 Facsimile: (312) 236-7516Email: benjamin.winger@us.dlapiper.com

*[Proposed ]Counsel to the Debtors*

## SCHEDULE A

**Potentially Assigned Agreements**

1617765414.4

**Exhibit ~~5~~6**

**Successful Bidder Notice**

1617765414.4

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AZZUR GROUP HOLDINGS, LLC, *et al.*,[1] | Case No. Case No. 25-10342 (KBO) |
| Debtors. | (Jointly Administered) |
| | ~~Re:~~Related **D.I.:** ~~[___]~~13 & [___] |

### NOTICE OF SUCCESSFUL BIDDER

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

    1.    On March 2, 2025, the above-captioned debtors and debtors-in-possessions (the "<u>Debtors</u>") filed voluntary petitions for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>"), in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>").

    2.    On March 3, 2025, the Debtors filed a motion [~~Docket No. [●]~~D.I. 13] (the "<u>Bidding Procedures and Sale Motion</u>"), pursuant to sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code and Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>"), seeking entry of an order (the "<u>Bidding Procedures Order</u>") (a) scheduling an auction (the "<u>Auction</u>") for the sale of the Debtors' assets (the "<u>Assets</u>") and a hearing to approve the sale of the Assets (the "<u>Sale Hearing</u>"), (b) approving procedures (the "<u>Bidding Procedures</u>")[2] for submitting competing bids for the Assets, (c) authorizing the Debtors to designate the Stalking Horse Bidder and approving the Bid Protections in accordance with the Stalking Horse APA and Bidding Procedures Order, (d) subject to final Court approval at the Sale Hearing, authorizing and approving the Debtors to enter into and perform under the Stalking Horse APA, as applicable, subject to higher or otherwise better offers submitted in accordance with the Bidding Procedures, (e) approving the form and manner of the notice of the Auction and the Sale Hearing, (f) establishing procedures for the assumption and assignment of the Contracts and Leases (as defined in the Bidding Procedures Order) to any purchaser(s) of the Assets and approving the form and manner of notice thereof, and (g) scheduling a hearing to approve the Debtors' assumption and assignment

---

[1] A list of the Debtors in these ~~chapter~~Chapter 11 ~~cases~~Cases, along with the last four digits of each Debtor's federal tax identification number, may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Azzur. The Debtors' headquarters and the mailing address for the Debtors is 330 South Warminster Road, Suite 341, Hatboro, PA 19040.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures.

of the Assigned Contracts, payment of the applicable cure amounts (if any), and/or resolve any objections thereto.

3. On March [~~24~~27], ~~2023~~2025, the Bankruptcy Court entered the Bidding Procedures Order [~~Docket No~~D.I. [●]]. On **April** [●9], ~~2024~~**2025** at [●**10:00**] a.~~m./p~~.m. **(prevailing** ~~Central Time) / [●] a.m./p.m. (prevailing Central~~**Eastern** Time)**, pursuant to the Bidding Procedures Order, the Debtors conducted the Auction with respect to the Assets virtually and/or at the offices of DLA Piper LLP (US) located at 444 W. Lake St., Ste. 900, Chicago, IL ~~606060, and/or virtual, on April [3], 2025, at 10:00 a.m. (prevailing Eastern Time)~~.60606.

4. Upon the conclusion of the Auction, the Debtors, in the exercise of their reasonable, good-faith business judgement have selected (a) [●] as a Successful Bidder (the "Purchaser"), and (b) [●] as a Back-Up Bidder.

5. **The Sale Hearing to consider approval of the Successful Bid by the Purchaser, free and clear of all liens, claims, encumbrances, and interests, will be held before the Honorable Karen B. ~~Ownes~~Owens, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801, on April [●], 2025, at [●]:[●] [a/p].m. (prevailing Eastern Time)**. Subject to consultation with the Consultation Parties (and the Stalking Horse Bidder, if the Stalking Horse Bidder is the Successful Bidder), the Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by including such adjournment on any agenda filed with the Bankruptcy Court or by the filing of a notice with the Bankruptcy Court.  Any Bidder that participates at an Auction may object to the conduct of the Auction at the Sale Hearing.

6. **The Debtors encourage all parties-in-interest to review the documents referenced herein in their entirety, including the Bidding Procedures and Sale Motion and the Bidding Procedures Order, which requests approval of a number of important dates and deadlines in connection with the Sale.**

7. [Objections related solely to (i) the Sale of the Assets to a Successful Bidder other than the Stalking Horse Bidder, (ii) the conduct of the Auction, (iii) the identity of any Successful Bidder other than the Stalking Horse Bidder, and (iv) adequate assurance of future performance by any Successful Bidder other than the Stalking Horse Bidder, must be in writing, state the basis of such objection with specificity, and be filed with the Bankruptcy Court and served so that it is actually received by the following parties by **April ~~7~~14, 2025, at 4:00 p.m. (prevailing Eastern Time)**:

    (a)    proposed counsel to the Debtors, DLA Piper LLP (US) (i) 1201 North Market Street, Suite 2100 Wilmington, Delaware 19801 (Attn.: Stuart M. Brown [stuart.brown@us.dlapiper.com]); and (ii) 444 West Lake Street, Suite 900 Chicago, Illinois 60606 (Attn.: W. Benjamin Winger

[benjamin.winger@us.dlapiper.com] and Katherine Allison [katie.allison@us.dlapiper.com]);

(b)    proposed financial advisor to the Debtors, Ankura Consulting Group, LLC, 485 Lexington Avenue, 10th Floor, New York, New York 10017 (<u>Attn</u>.: M. Benjamin Jones, Chief Restructuring Officer of the Debtors [ben.jones@ankura.com]);

(c)    proposed investment banker to the Debtors, Brown Gibbons Lang & Co. Securities, One Magnificent Mile, 980 N. Michigan Ave., Suite 1800, Chicago, IL 60611 (<u>Attn</u>.: Kyle Brown [kbrown@bglco.com] and T. Michael Madden [mmadden@bglco.com]);

(d)    counsel to the DIP Lender and Pre-Petition Lender, (i) Richards, Layton & Finger, PA, 920 North King Street, Wilmington, Delaware 19801 (<u>Attn</u>.: John H. Knight [knight@rlf.com]) and (ii) Otterbourg P.C., 230 Park Avenue, New York, New York 10169 (<u>Attn</u>.: Andrew M. Kramer [akramer@otterbourg.com] and James V. Drew [jdrew@otterbourg.com]);

(e) counsel to any official committee appointed in these chapter 11 cases;

(e)    proposed counsel to the Official Committee of Unsecured Creditors, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801) (Attn.: Laura Davis Jones [ljones@pszjlaw.com], David M. Bertenthal [dbertenthal@pszjlaw.com], Colin R. Robinson [crobinson@pszjlaw.com.], and Edward A. Corma [ecorma@pszjlaw.com]);

(f)    counsel to the Stalking Horse Bidder, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036-8704 (<u>Attn</u>.: Cristine Schwarzman, Esq. [cristine.schwarzman@ropesgray.com] and Patricia Chen, Esq. [patricia.chen@ropesgray.com]; and

(g)    the Office of the United States Trustee for Region 3, J. Caleb Boggs Federal Building, 844 King St., Lockbox 35, Wilmington, Delaware 19801 (Attn.: Jonathan Lipshie [jon.lipshie@usdoj.gov]).\

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT(S), AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED WITHOUT FURTHER HEARING AND NOTICE.**

1617765414.4

8.      This Successful Bidder Notice is subject to the fuller terms and conditions of the Bidding Procedures and Sale Motion and the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict. The Debtors encourage all parties-in-interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of the Assets and/or copies of any related document, including the Bidding Procedures and Sale Motion, the Bidding Procedures Order, or the proposed form of Sale Order may make a written request to Benjamin Winger [benjamin.winger@us.dlapiper.com] and Katherine Allison [katie.allison@us.dlapiper.com]. In addition, copies of the Bidding Procedures and Sale Motion, the Bidding Procedures Order and this Notice are on file with the Clerk of the Bankruptcy Court, Third Floor, 824 North Market Street, Wilmington, Delaware 19801, and are available (a) for free on the Debtors' restructuring website at https://cases.stretto.com/Azzur or (b) for a fee via PACER by visiting https://pacer.uscourts.gov.

Dated: [●], 2025                          Respectfully submitted,
Wilmington, Delaware

                                          **DLA PIPER LLP (US)**

                                          _/s/ DRAFT_____
                                          Stuart M. Brown (DE - 4050)
                                          1201 N. Market Street, Suite 2100
                                          Wilmington, DE 19801
                                          Telephone: (302) 468-5700
                                          Facsimile: (302) 394-2462
                                          Email: stuart.brown@us.dlapiper.com

                                          *- and -*

                                          W. Benjamin Winger (admitted *pro hac vice* admission pending)444 West Lake Street, Suite 900Chicago, Illinois 60606Telephone: (312) 368-4000 Facsimile: (312) 236-7516Email: benjamin.winger@us.dlapiper.com

                                          *[Proposed ]Counsel to the Debtors*

1617765414.4

| Summary report: Litera Compare for Word 11.2.0.54 Document comparison done on 3/27/2025 1:07:54 PM | |
|---|---|
| **Style name:** DLAPiper | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** C:\Users\nm45305\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\DJ3DMJTO\Project Sky - Proposed Bidding Procedures Order Buyer Final Draft 3-3-2025 (002).docx | |
| **Modified filename:** C:\Users\nm45305\Downloads\Azzur - Proposed Bidding Procedures Order [Azzur Draft 3.27.25].docx | |
| **Changes:** | |
| Add | 166 |
| Delete | 166 |
| Move From | 1 |
| Move To | 1 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 334 |