IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AZZUR GROUP HOLDINGS LLC, *et al.*,[1] | Case No. 25-10342 (KBO) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: April 11, 2025 at 1:00 p.m. (ET)<br>Obj. Deadline: April 7, 2025 at 4:00 p.m. (ET) |

### OBJECTION OF THE CHUBB COMPANIES TO THE (I) NOTICE OF FILING OF THIRD SUPPLEMENTAL CURE NOTICE AND (II) SALE TRANSACTION

Federal Insurance Company, ACE American Insurance Company, ACE International Reinsurance Company Ltd, Illinois Union Insurance Company, Westchester Fire Insurance Company, and ACE Indemnity Insurance Company (and together with each of their affiliates and successors, the "Chubb Companies"), by and through their undersigned counsel, hereby file this Objection (the "Objection") with respect to the *Notice of Filing of Third Supplemental Cure Notice* [D.I. 138] (the "Cure Notice") and (ii) potential assumption and assignment of the Insurance Program (as defined herein) in connection with any sale, and in support of the Objection, the Chubb Companies respectfully state as follows:

### BACKGROUND

**A. The Bankruptcy Case**

1. On March 2, 2025 (the "Petition Date"), Azzur Group Holdings LLC and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for relief under chapter

---

[1] A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Azzur. The Debtors' headquarters and the mailing address for the Debtors is 330 South Warminster Road, Suite 341, Hatboro, PA 19040.

11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the

2. On March 3, 2025, the Debtors filed the *Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for the Potential Sale of the Debtors' Assets, (B) Scheduling Certain Dates with Respect Thereto, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing the Debtors to Enter Into the Consulting Stalking Horse APA and Related Bid Protections, (E) Approving Procedures for Assumption and Assignment, and (F) Granting Related Relief and (II)(A) Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [D.I. 13] (the "Bidding Procedures/Sale Motion")[2] pursuant to which the Debtors sought the Court's approval of the Bidding Procedures, Assumption and Assignment Procedures and authority to enter into the Stalking Horse APA, attached to the Bid Procedures/Sale Motion.

3. Pursuant to the Stalking Horse APA attached to the Bidding Procedures/Sale Motion, "all insurance policies and binders primarily relating to the Business" are Acquired Assets to be transferred in connection with the sale transaction; whereas "all current and prior insurance policies that do not relate primarily to the Business" are deemed to be Excluded Assets. Stalking Horse APA §§ 1.1(k), 1.2(p).

4. Appended to the Stalking Horse APA is Schedule 3.22, which contains a list of insurance policies maintained by the Debtors with respect to the Business (the

---

[2] Capitalized terms used herein but not defined shall have the meanings ascribed to them in Bidding Procedures/Sale Motion or the Stalking Horse APA, as applicable.

"Insurance Schedule"). The Insurance Schedule identifies the following policies issued by the Chubb Companies (the "Identified Chubb Policies"), as excerpted below:

| Insurance | Name of Insurer | Policy # | Coverage Date | Limits | Premiums |
|---|---|---|---|---|---|
| Commercial Total Package | Federal Insurance Company | 3608-67-98 | 07/31/2024 – 07/31/2025 | See Exhibit 3.22(a) | $193,272.00 Total Approximately $33,300.00 attributable to Business |
| Workers Compensation | Federal Insurance Company | 7184-11-57 | 07/31/2024 – 07/31/2025 | See Exhibit 3.22(a) | $117,632.00 Total Approximately $65,617.64 attributable to Business |
| Auto – Commercial | Federal Insurance Company | 7364-41-99 | 07/31/2024 – 07/31/2025 | See Exhibit 3.22(a) | $40,230.48 Total Approximately $5,317.00 attributable to Business |
| Excess Liability | Federal Insurance Company | 5672-33-43 | 07/31/2024 – 07/31/2025 | See Exhibit 3.22(a) | $55,000.00 Total Approximately $24,638.00 attributable to Business |
| Umbrella – Commercial | Federal Insurance Company | 5672-33-44 | 07/31/2024 – 07/31/2025 | See Exhibit 3.22(a) | $34,397.00 Total Approximately $15,409.00 attributable to Business |
| Pollution | Illinois Union Insurance Company | PPI G47482604 001 | 07/31/2024 – 07/31/2025 | Each Occurrence - $10,000,000 Aggregate - $10,000,000 | $39,365.00 Total Approximately $3,625.00 attributable to Business |

5. As detailed above, the Insurance Schedule identifies the total premiums and the portion allegedly attributable to the Business for each of the Identified Chubb Policies.

3

6. Additionally, section 1.5(b)(iii) of the Stalking Horse APA provides, in relevant part, that to the extent an Acquired Asset requires a Consent to permit assignment and such Consent is not obtained prior to the time to be assigned, such asset shall not be deemed to be assigned. This Section provides that in such an event, the Debtors will "cooperate in good faith in any lawful and commercially reasonable arrangement proposed by Purchaser, including subcontracting, licensing or sublicensing to Purchaser any or all of any Seller's rights and obligations with respect to any such Acquired Asset." Stalking Horse APA § 1.5(b)(iii)

7. It is unclear whether the Debtors are seeking to assume and assign or otherwise transfer the Identified Chubb Policies of the portions allegedly attributable to the Business in the Insurance Schedule.

8. On March 24, 2025, the Debtors filed the Cure Notice, which identifies the following Policies that may be assumed and assigned to a Successful Bidder in connection with a sale transaction and the proposed cure amount with respect to each:

| Debtor Name | Counterparty Name | Counterparty Address | Description of Contract | Cure Amount |
|---|---|---|---|---|
| Azzur Group, LLC | Federal Insurance Company | Capital Center 251 North Illinois Suite 1100 Indianapolis, IN 46204-1927 | Commercial Total Package (Policy 3608-67-98) | $0.00 |
| Azzur Group, LLC | Federal Insurance Company | Capital Center 251 North Illinois Suite 1100 Indianapolis, IN 46204-1927 | Workers' Compensation (Policy 7184-11-57) | $0.00 |
| Azzur Group, LLC | Federal Insurance Company | Capital Center 251 North Illinois Suite 1100 Indianapolis, IN 46204-1927 | Excess Liability (Policy 5672-33-43) | $0.00 |
| Azzur Group, LLC | Federal Insurance Company | Capital Center 251 North Illinois Suite 1100 Indianapolis, IN 46204-1927 | Umbrella – Commercial (Policy 5672-33-44) | $0.00 |
| Azzur Group LLC | Illinois Union Insurance Company | 525 West Monrow Street Suite 400 Chicago, IL 60661 | Pollution (Policy PPI G47482604 001) | $0.00 |

9.	As evident above, the Cure Notice fails to provide for any specificity with respect to the Policies, but asserts that, nevertheless, the cure amount is $0.00. As discussed herein, the Chubb Companies issued numerous policies to, and are parties to various agreements with, the Debtors.

10.	On March 28, 2025, the Court entered an order approving the Bidding Procedures Motion [D.I. 177] (the "Bidding Procedures Order"), which, among other things, clarified that notwithstanding Schedule 3.22 the Identified Chubb Policies were not assumed, assumed and assigned, sold or otherwise transferred connection with the Bidding Procedures Order.

**B. The Insurance Program**

11.	Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies").

12.	Pursuant to certain Policies and any agreements related thereto (collectively, the "Insurance Program"), the Chubb Companies provide, *inter alia*, commercial, general liability, workers' compensation, automobile, fiduciary liability, umbrella, pollution and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including, if applicable, one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Insurance Program (collectively, the "Obligations").[3]

---

[3]   The Obligations include both monetary and non-monetary obligations that the insureds, including one or more of the Debtors, may have.

13. The Obligations are payable over an extended period of time and are subject to future audits and adjustments.

## **OBJECTION**

14. Based on the Cure Notice and Schedule 3.22 of the Stalking Horse APA, the Debtors appear to contemplate a potential sale or other transfer of at least a portion of the Insurance Program in connection with the proposed sale transaction. The Chubb Companies, therefore, object to any sale transaction that the Debtors seek to assume and assign, sell, subcontract or otherwise transfer any portion of the Insurance Program and/or any of the rights benefits, interests and/or proceeds thereunder.

15. The Chubb Companies assert that (i) the Insurance Program must be assumed and assigned or otherwise transferred, if at all, as a whole, and in order to be entitled to any of the benefits of the Insurance Program, any Successful Bidder must remain liable for the Obligations thereunder; (ii) to the extent that the Debtors seek to assume and assign or otherwise transfer the Insurance Program and/or the rights, benefits, interests and/or proceeds thereunder, the Insurance Program and/or the rights, benefits, interests and/or proceeds thereunder cannot be assigned without the express written consent of the Chubb Companies, which written consent has not been sought or given; (iii) the Chubb Companies should not be responsible for determining which entity, as between the Debtors and any Successful Bidder, is entitled to coverage and/or the rights, benefits, interests and/or proceeds under the Insurance Program; (iv) any proposed cure amounts must be evaluated at the time of assumption; and (v) because the Chubb Companies cannot determine whether any Successful Bidder will intend to seek assignment of the Insurance Program and/or any of the rights, benefits, interests, and/or proceeds thereunder, the Chubb Companies lack adequate assurance of future performance under the Insurance Program by any Successful Bidder.

I. **The Insurance Program is Indivisible from the Obligations Thereunder.**

16. It is well-established that a party cannot receive the benefits of a contract without being liable for the obligations thereunder. *See Am. S. Ins. Co. v. DLM, LLC*, No. GLR-16-3628, 2017 U.S. Dist. LEXIS 105716, at *14 (D. Md. July 10, 2017) ("If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other."); *Tavenner v. United States* (*In re Vance*), 298 B.R. 262, 268 (Bankr. E.D. Va. 2003) ("'[A] debtor may not assume the favorable aspects of a contract [ ] and reject the unfavorable aspects of the same contract. . . [.]'") (citation omitted); *Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. App'x. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc.*, Inc., 148 Fed. App'x. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, (plaintiff) cannot have it both ways. (It) cannot rely on the contract when it works to its advantage, and repudiate it when it works to (its) disadvantage.") (citations and quotations omitted) (alterations in original); *Ricketts v. First Trust Co. of Lincoln, Neb.*, 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract"); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect.")

(citations omitted); *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences."); *see also In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("The [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.") (internal citations and quotations omitted) (alterations in original); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party.").

17.     It is also well-established that courts cannot alter terms of contracts, and must instead enforce them as written. *See, e.g.*, *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 679 (7th Cir. 2013) ("A court may not rewrite a contract to suit one of the parties but must enforce the terms as written.") (citation omitted); *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091 (9th Cir. 1997) (noting that a debtor's estate has "no greater rights in property than those held by the debtor prior to the bankruptcy"); *Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 484 F. Supp. 2d 850, 853 (N.D. Ill. 2007) (stating a "court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included") (citation omitted); *In re Lloyd E. Mitchell, Inc.*, 06-13250-NVA, 2012 Bankr. LEXIS 5531 (Bankr. D. Md. Nov. 29, 2012) (noting that "insurance contracts cannot be rewritten by th[e] Court"); *In re Best Mfg. Grp. LLC*, 2012 WL 589643, at *6 (Bankr. D.N.J. 2012) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."); *In re Enterprise Lighting Inc.*,

1994 Bankr. LEXIS 1307 at *7 (Bankr. E.D. Va. Jan. 21, 1994) (the generally broad equitable powers of a bankruptcy court "have not been interpreted to go so far as to allow the Court to rewrite contracts or create new contractual rights between the Debtor and a third party").

18. Moreover, the Insurance Program, which is an integrated insurance program, must be read, interpreted and enforced together. *See Huron Consulting Servs., LLC v. Physiotherapy Hldgs., Inc.* (*In re Physiotherapy Hldgs., Inc.*), 538 B.R. 225 (D. Del. 2015) (reversing bankruptcy court decision which permitted debtor to assume one agreement between itself and another party, and not the related agreements; holding that all agreements must be assumed or rejected together); *Allegheny Enters. v. J-W Operating Co.*, No. 10-02539, 2014 U.S. Dist. LEXIS 27998, at *18-19 (M.D. Pa. Mar. 5, 2014) (finding an integrated agreement where several contracts between the same parties govern the parties' relationship as to a particular subject); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating that "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

19. Accordingly, the Insurance Program must be assigned or otherwise transferred, if at all, as a whole and, in order to be entitled to any of the rights, benefits, interests, and/or proceeds under the Insurance Program, any Successful Bidder must also remain liable for the Obligations thereunder.

20. The Chubb Companies therefore object to the sale transaction and any purported assumption and assignment or other transfer of any portion of the Insurance Program and/or any of the rights, benefits, interests, and/or proceeds thereunder in connection therewith.

## II. The Insurance Program Cannot Be Assigned or Otherwise Transferred Without the Prior Written Consent of the Chubb Companies, Which Has Not Been Sought or Given.

21. To the extent that the Debtors seek to assign or otherwise transfer the Insurance Program in connection with any sale transaction, such assignment cannot occur without the express written consent of the Chubb Companies.

22. Section 365 of the Bankruptcy Code governs a debtor's use of executory contracts and unexpired leases and provides the basis by which a debtor may assume and assign said contracts.

23. Section 365(f)(1), which allows assignment of a contract or lease despite a prohibition, restriction, or condition in the contract to the contrary, is not without limits. Section 365(f) is subject to and controlled in all respects by section 365(c). *See* 11 U.S.C. § 365(f)(1) ("Except as provided in subsection (b) and (c) of this section[.]"); *see also In re Trump Ent. Resorts, Inc.*, 526 B.R. 116, 122 (Bankr. D. Del. 2015) ("Section 365(f)(1), though, is expressly subject to any alternative rule provided in Section 365(c).").

24. Pursuant to 11 U.S.C. § 365(c), a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or rendering performance to an entity other than the debtor and such party does not consent to the assumption or assignment. 11 U.S.C. § 365(c)(1)(A) and (B).

25. Therefore, under section 365(c)(1) "if non-bankruptcy law provides that the [counterparty] would have to consent to an assignment of the [executory] contract to a third party, i.e., someone 'other than the debtor or the debtor in possession,' then [the Debtor] . . . cannot assume that contract" and, by extension, assign it. *In re West Elecs. Inc.*, 852 F.2d 79, 83 (3d Cir. 1988); see also *Trump Ent. Resorts, Inc.*, 526 B.R. at 122 ("The Section 365(c)(1) limitation on the assumption of executory contracts applies whenever the contract is 'subject to a legal

prohibition against assignment' to a third party and the non-debtor party to the contract does no[t] consent to assignment.").

26. Applicable non-bankruptcy law does, in fact, prohibit the assignment of insurance policies without the insurer's consent. *See, e.g., Banco Popular v. Kanning*, No. A-13-CV-200 RP, 2015 U.S. Dist. LEXIS 175647, at *25 (W.D. Tex. Mar. 9, 2015) (finding that a purported assignment of an insurance policy that did not comply with the express terms of the insurance policy was not enforceable); *Rotella v. Cutting*, 2011 Tex. App. LEXIS 7116, Tex. App.—Fort Worth 2011, no pet.) (where an insurer's express written consent to any transfer of rights under an insurance policy is required by the terms of the policy, failure to evidence the insurer's express written consent renders any purported transfer invalid); *Mercedes-Benz of W. Chester v. Am. Family Ins.*, Nos. CA2009-09-244, CA2009-09-245, CA2009-09-246, 2010 Ohio App. LEXIS 1898 at ¶ 22 (Ohio Ct. App. May 24, 2010) (finding that third party "cannot impute a legally binding obligation to pay against [insurer]" where insureds assigned insurance contract without insurer's consent, because to find otherwise "would place an undue risk and burden on [insurer]"); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance policy is a personal contract between the insurer and the named insured and that "coverage terminates when the contract is assigned or transferred without the consent, permission, and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property).[4]

---

[4] Some courts have found that insurance policies may be assigned to a trust created under § 524(g) pursuant to a plan under § 1123 without the consent of the insurer. *See, e.g., In re Fed.-Mogul Glob.*, 684 F.3d 355, 382 (3d Cir. 2012) (holding that anti-assignment provisions in insurance policies were "preempted by § 1123(a)(5)(B) [of the Bankruptcy Code] to the extent they prohibit transfer to a § 524(g) trust."); *In re W.R. Grace & Co.*, 475 B.R. 34, 198-99 (D. Del. 2012) (holding that anti-assignment provisions in insurance policies were preempted by §

27. Similarly, insurers cannot be compelled to provide insurance coverage to any entity. See *Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to accept insurance from some other company (in which he may have no confidence) than the one contracted with.").

28. Therefore, the Insurance Program thereunder cannot be assigned or subcontracted without the prior written consent of the Chubb Companies.

29. Further, as a condition precedent for any consent that may be given by the Chubb Companies to an assignment, sale, or other transfer of the Insurance Program and/or any of the rights, benefits, interests, and/or proceeds thereunder, the Debtors and the assignee may be required to execute one or more assumption agreements, in form and substance acceptable to the Chubb Companies. These agreements have not yet been negotiated, let alone executed.

30. Accordingly, because the Chubb Companies have not consented to any proposed assignment of the Insurance Program and/or any of the rights, benefits, interests, and/or proceeds thereunder, the Chubb Companies object to any and all such assignments or attempts to subcontract at this time.

---

1123(a)(5)(B) in the context of the establishment of a § 524(g) trust). The present case does not involve an assignment to a trust created pursuant to § 524(g) nor an assignment under a plan.

**III.     The Chubb Companies Are Not Required to Make Coverage Determinations Between the Debtors and any Successful Bidder.**

31.     As of the date hereof, it is not clear exactly what, if any, portions of the Insurance Program and/or any of the rights, benefits, interests, and/or proceeds thereunder the Debtors intend to transfer to the Successful Bidder.

32.     While, as discussed above, any split of the rights, benefits, interests and/or proceeds under the Insurance Program from the Obligations thereunder, or any split of the Insurance Program that would purportedly require the Chubb Companies to insure separate, unrelated entities, would be improper, any transfer of only a certain (as yet unspecified or as set forth in Schedule 3.22) portion of the Insurance Program and/or any of the rights, benefits, interests, and/or proceeds thereunder in connection with any sale transaction is likely to result in coverage disputes between the Successful Bidder and the Debtors.

33.     To the extent any portion of the Insurance Program and/or any of the rights, benefits, interests, and/or proceeds thereunder is assigned in connection with any sale transaction, the Chubb Companies should not be put in the position of determining, as between the Debtors and any Successful Bidder, which entity is entitled to coverage under the Insurance Program in connection with a particular claim. Similarly, the Chubb Companies should not be put in the position of determining, as between the Debtors and any Successful Bidder, which entity is entitled to any of rights, benefits, interests and/or proceeds under the Insurance Program.

**IV.     Cure Amount Must Be Evaluated at the Time of Assumption**

34.     On the Cure Notice, despite failing to specifically identify the Policies potentially subject to assumption and assignment, the Debtors state that there the cure amounts associated with the Identified Chubb Policies are $0.00.

35. As more particularly described in the Insurance Program, the Debtors are required to pay the Obligations, and, therefore, amounts may become due and owing under the Insurance Program either prior to or after the assumption thereof.

36. Indeed, the following liquidated amounts will become due under the Insurance Program after the Petition Date on account of: (i) Workers' Compensation Policy (#718-411-57), $22,310.00, which will become due and owing on May 20, 2025; (ii) Commercial Total Package Policy (#3608-67-98), $33,059.40 and $3,125.00, both of which will become due and owing on May 20, 2025; (iii) Business Auto Policy (#7364-41-99), $5,436.00, which will become due and owing on May 20, 2025; (iv) Excess Liability Policy (#5672-33-43), $11,000.00, which will become due and owing on May 20, 2025; and (v) Umbrella Liability Policy (#5672-33-44), $6,879.00, which will become due and owing on May 20, 2025.

37. The Chubb Companies also have contingent, unliquidated claims against the Debtors for the Obligations, given the nature of the Insurance Program and the Obligations. By way of example and not limitation, premiums may be payable at audit under the terms of the Insurance Program, based upon factors as they exist throughout the coverage period. Therefore, the Chubb Companies have contingent, unliquidated claims against the Debtors for any additional premium that may become due upon completion of audit(s).

38. The amounts owed by the Debtors on account of the Obligations may vary from day to day, and are subject to ongoing reconciliation based on, among other things, claims funding provided by the Debtors and claims submitted to the Chubb Companies.

39. Accordingly, any cure amounts must be determined at the time of assumption and, further, as a condition for the assignment of the Insurance Program and/or any of the rights, benefits, interests, and/or proceeds thereunder, the assignee must remain liable for all of the

Debtors' obligations and liabilities (including the Obligations), whether now existing or hereafter arising, under the Insurance Program, including, without limitation, paying the Obligations as they become due.

### V. Any Successful Bidder Must Provide Adequate Assurance of Future Performance

40. Pursuant to section 365(f)(2) of the Bankruptcy Code, any assignee of a contract must provide adequate assurance of future performance. The Chubb Companies have not yet been definitively advised as to whether any Successful Bidder intends to seek the assignment of the Insurance Program and/or any of the rights, benefits, interests, and/or proceeds thereunder and therefore do not have, and the Debtors have not supplied, any information—much less sufficient information or a reasonable amount of time—to determine if any Successful Bidder would be capable of providing adequate assurance of future performance and whether any Successful Bidder would satisfy the Chubb Companies' credit and underwriting criteria.

41. Accordingly, the Chubb Companies are unable, at this time, to assess whether any Successful Bidder would satisfy those criteria.

### VI. Reservation of Rights

42. The Chubb Companies specifically reserve all of their rights with respect to the Insurance Program and their right to assert additional objections to the Cure Notice and any sale transaction.

WHEREFORE, the Chubb Companies accordingly object to the sale transaction and Cure Notice on the bases set forth herein and reserve their rights to assert any additional objections to the sale transaction and Cure Notice and any other document related thereto, and to the assignment of the Insurance Program.

| | |
|---|---|
| Dated: April 7, 2025 | **LANDIS RATH & COBB LLP** |
| | */s/ Kimberly A. Brown* |
| | Kimberly A. Brown (No. 5138) |
| | George A. Williams III (No. 6964) |
| | 919 Market Street, Suite 1800 |
| | Wilmington, Delaware 19801 |
| | Telephone: (302) 467-4400 |
| | Facsimile: (302) 467-4450 |
| | Email: brown@lrclaw.com |
| | williams@lrclaw.com |
| | |
| | *Attorneys for the Chubb Companies* |