## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AZZUR GROUP HOLDINGS, INC., *et al.*,[1] | Case No. 25-10342 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  April 11, 2025, at 1:00 p.m. (ET)**<br>**Objection Deadline:  April 7, 2025, at 4:00 p.m. (ET)**<br>**(Extended for U.S. Trustee)** |
| | **Re:  D.I. 86** |

### UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) APPROVING THE COMBINED DISCLOSURE STATEMENT AND PLAN ON AN INTERIM BASIS FOR SOLICITATION PURPOSES ONLY; (II) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE COMBINED DISCLOSURE STATEMENT AND PLAN; (III) APPROVING THE FORM OF BALLOT AND SOLICITATION PACKAGES; (IV) ESTABLISHING THE VOTING RECORD DATE; (V) SCHEDULING COMBINED HEARING FOR FINAL APPROVAL OF THE ADEQUACY OF DISCLOSURES IN, AND CONFIRMATION OF, THE COMBINED DISCLOSURE STATEMENT AND PLAN; AND (VI) GRANTING RELATED RELIEF

Andrew R. Vara, the United States Trustee for Regions Three & Nine ("U.S. Trustee"),

through his counsel, files this objection (the "Objection") to the *Debtors' Motion for Entry of an*

*Order (I) Approving the Combined Disclosure Statement and Plan on an Interim Basis for*

*Solicitation Purposes Only; (II) Establishing Procedures for Solicitation and Tabulation of Votes*

*to Accept or Reject the Combined Disclosure Statement and Plan; (III) Approving the Form of*

*Ballots and Solicitation Materials; (IV) Establishing the Voting Record Date; (V) Scheduling*

*Combined Hearing for Final Approval of the Adequacy of Disclosures in, and Confirmation of,*

---

[1] A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.cases.stretto.com/Azzur. The Debtors' headquarters and the mailing address for the Debtors is 330 South Warminster Road, Suite 341, Hatboro, PA 19040.

the Combined Disclosure Statement and Plan; and (VI) Granting Related Relief ("Disclosure Statement Motion") [D.I. 86], and in support of his Objection states:

## PRELIMINARY STATEMENT

1.      First, the Disclosure Statement[2] should not be approved because it fails to provide adequate information.  In the Disclosure Statement, the Debtors do not provide a liquidation analysis, nor do the Debtors identify the Debtor-owners of estate assets and the value of those assets.  Further, the Debtors do not provide any information regarding the nature and/or value of claims that they propose to release under the *Combined Disclosure Statement and Joint Chapter 11 Plan of Azzur Group Holdings, Inc. and its Affiliated Debtors* ("Plan") [D.I. 85], the amounts of recoveries for Plan classes receiving distributions, or the estimated amounts of claims.  Finally, the forms of ballots do not adequately explain the mechanism for granting the proposed third-party releases.

2.      Second, the Disclosure Statement should not be approved for additional provisions that render the proposed Plan unconfirmable.  First, the Plan extinguishes a broad range of direct claims held by creditors in Classes 3 and 4 who vote in favor of the Plan against non-debtor parties and their Related Parties without their affirmative consent.[3]  *Second*, the Plan includes an injunction to enforce the third-party release and exculpation that is not supported by any authority.  *Third*, to the extent exculpation is permissible beyond the provisions of section 1125(e), the exculpation provision in the Plan is broader than what the United States Court of Appeals for the

---

[2]  All capitalized terms not defined herein have the definitions set forth in the Disclosure Statement and Chapter 11 Plan, as applicable.

[3]  In addition to the points raised in this Objection, the U.S. Trustee's counsel has provided additional comments to Debtors' counsel to the Disclosure Statement, the form of order approving the Disclosure Statement, and the solicitation procedures and related notices which counsel expects will be resolved by agreement.  To the extent such comments are not resolved, the U.S. Trustee reserves the right to supplement this Objection or to assert additional objections at the hearing on the Disclosure Statement Motion.

Third Circuit has allowed.

## JURISDICTION AND STANDING

3.      Under (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine the Disclosure Statement Motion and this Objection.

4.      Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U. S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

5.      Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor plans and disclosure statements filed in Chapter 11 cases and to comment on such plans and disclosure statements.

6.       The U.S. Trustee has standing to be heard on the Disclosure Statement and the Disclosure Statement Motion pursuant to 11 U.S.C. § 307.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## BACKGROUND

7.      On March 2, 2025, the above-captioned cases were commenced by the filing of voluntary petitions in this Court.

8.      On March 14, 2025, the U.S. Trustee appointed an official committee of unsecured creditors. [D.I. 99].

9.      On March 7, 2025, the Debtors filed the Disclosure Statement Motion [D.I. 86], which seeks interim approval of (i) the Plan and (ii) certain procedures concerning the solicitation of votes on the Plan.

***The Solicitation Procedures***

10.     Through the Disclosure Statement Motion, the Debtors request approval of the forms of ballot for use in soliciting votes from: Class 3 (M&T Secured Claims) and Class 4 (General Unsecured Claims).   Disclosure Statement Mot. Exs. 5A, 5B (Form Ballots). Additionally, the Debtors seek to have the *Notice of Unimpaired Non-Voting Status* be mailed to parties in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims) and Class 5 (Intercompany Claims and Interests).   Similarly, it provides for *Notice of Impaired Non-Voting Status* to be mailed to parties in Class 5 (Intercompany Claims and Interests) and Class 6A (Azzur Group Holdings Interests).   Disclosure Statement Mot. Exs. 3A, 3B.   Classes 5, 6A, and 6B (Section 510(b) Claims) will receive no distribution under the terms of the proposed Plan.   Plan § 3.1.   The Form Ballots provide for an "opt-in" box to be marked by those who vote to reject the Plan or abstain from voting on the Plan, although the ballots do not articulate this procedure. Disclosure Statement Mot. Exs. 5A, 5B.   The above Notices provide that if the party receiving the notice wishes to opt in to the Third-Party Release, "you may contact the Voting Agent" via email or phone "to indicate that you wish to opt-in".   Disclosure Statement Mot. Exs. 3A, 3B.   The Ballots and the Notices set forth the text of the third-party release in Section 8.4 of the Plan and the definitions for Released Parties, Releasing Parties, and Related Parties contained in the Plan. Disclosure Statement Mot. Exs. 3A, 3B, 5A and 5B.

*Relevant Plan Provisions*

11.     The third-party release provision in the Plan (the "<u>Third-Party Release[s]</u>") states

in relevant part:

> Effective as of the Effective Date, for good and valuable consideration,
> including the obligations of the Debtors under the Plan and the contributions
> of the Released Parties to facilitate and implement the Plan, the adequacy
> of which is hereby confirmed, to the fullest extent permissible under
> applicable law, as such law may be extended or integrated after the Effective
> Date, each of the Releasing Parties shall be deemed to, completely,
> conclusively, absolutely, unconditionally, irrevocably, and forever, release,
> waive, void and extinguish each Debtor, Wind-Down Debtor, and Released
> Party from any claim, Claim, Cause of Action, obligation, suit, judgment,
> damages, debt, right, remedy or liability whatsoever (including any
> derivative Claims or Causes of Action asserted or that may be asserted on
> behalf of the Debtors and their Estates), whether known or unknown,
> foreseen or unforeseen, existing or hereinafter arising, in law, equity, or
> otherwise, for any act or omission in connection with, relating to, or arising
> out of the Debtors (including the management, ownership, or operation
> thereof, including as such entities existed prior to or after the Petition Date),
> the Chapter 11 Cases, negotiation, preparation, Filing, and consummation
> of the Sale Transaction(s), the marketing and sale process related to the Sale
> Transaction(s), the negotiation, preparation, dissemination, solicitation, and
> Filing of this Combined Disclosure Statement and Plan, the Filing of the
> Chapter 11 Cases, the settlement of Claims or renegotiation of Executory
> Contracts or Leases, the pursuit of confirmation of this Combined
> Disclosure Statement and Plan, the consummation of this Combined
> Disclosure Statement and Plan, or the administration of this Combined
> Disclosure Statement and Plan or the property to be Distributed under this
> Combined Disclosure Statement and Plan, the Wind Down, or upon any
> other act or omission, transaction, agreement, event or other occurrence
> taking place on or before the Effective Date (including before the Petition
> Date) related or relating to the foregoing; provided that any right to enforce
> the Purchase Agreement(s), the Sale Order(s), the Plan, and Confirmation
> Order is not so released; provided further, however, that notwithstanding
> anything to the contrary herein, the provisions of this Section 8.4 shall not
> apply with respect to any unimpaired Claim until such unimpaired Claim
> has been paid in full in the Allowed amount of such Claim determined in
> accordance with applicable law, or on terms agreed to between the holder
> of such Claim and the Plan Administrator or the Debtors, at which time this
> Section 8.4 shall apply in all respects as to the applicable unimpaired Claim.

> Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in Section 8.4 hereof, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in Section 8.4 is: (1) by virtue of the opt-out[4] procedure, fully consensual; (2) in exchange for the good and valuable consideration provided by the Released Parties; (3) a good-faith settlement and compromise of claims released; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property, released pursuant to the releases described herein.

Plan § 8.4 (footnote added).

12.     The Plan provides the following with respect to the release of claims by the Debtors

(the "Debtor Release[s]"):

> Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each of the Debtors and the Wind-Down Debtor, on their own behalf and as a representative of the Estates, shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all Claims, Causes of Action, obligations, suits, judgments, damages, debts, rights, remedies and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or Contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors (including the management, ownership, or operation thereof, including as such entities existed prior to or after the Petition Date), the Chapter 11 Cases, negotiation, preparation, Filing, and consummation of the Sale Transaction(s), the marketing and sale process related to the Sale Transaction(s), the negotiation, preparation,

---

[4] There is no "opt-out procedure" proposed in the Disclosure Statement Motion; this appears to be a typographical error.  There appear to be similar typographical errors in sections 7.2 and 8.8 of the Plan which reference a non-existent opt-out election.

dissemination, solicitation, and Filing of this Combined Disclosure Statement and Plan, the Filing of the Chapter 11 Cases, the settlement of Claims or renegotiation of Executory Contracts or Leases, the pursuit of confirmation of this Combined Disclosure Statement and Plan, the consummation of this Combined Disclosure Statement and Plan, or the administration of this Combined Disclosure Statement and Plan or the property to be Distributed under this Combined Disclosure Statement and Plan, the Wind Down, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date (including before the Petition Date) related or relating to the foregoing, that may be asserted by or on behalf of any of the Debtors or their respective Estates, against any of the Released Parties; provided that any right to enforce the Purchase Agreement(s), the Sale Order(s), the Plan, and Confirmation Order is not so released.

Plan § 8.3.

13.    In the Plan, "Releasing Parties" is defined as follows:

"Releasing Parties" shall mean collectively, and in each in case in its capacity as such: (a) the Debtors and the Post-Effective Date Debtor; (b) each Holder of a Claim or Interest that (x) votes to accept the Plan, or (y) either (I) abstains from voting on the Plan or (II) is deemed to accept or reject the Plan and, in the case of either (I) or (II), affirmatively opts in to the voluntary release contained in Section 8.4 hereof by checking the opt in box on the ballot or notice,[5] and returning it in accordance with the instructions set forth thereon, indicating that they opt in to grant the releases provided in the Plan; and (c) the Related Parties of the foregoing but only to the extent such Related Party would be obligated to release under principles of agency if it were so directed by the applicable Person or Entity in clauses (a) through (b); provided, however, that notwithstanding the foregoing, M&T shall not be deemed a "Releasing Party" under the Plan and shall benefit only from releases by the Debtors. [6]

Plan § 1.101 (footnotes added).

14.    "Released Parties" is defined under the Plan as follows:

---

[5] In the Disclosure Statement Motion, the Debtors do not provide "opt in" forms for deemed accepting and rejecting classes. Further, the text of the ballots for the voting classes (Classes 3 and 4) do not clearly state that the Debtors are seeking to impose a third-party release based upon a vote in favor of the Plan, irrespective of a voter's "opt in" election.

[6] There is no disclosure of the purported reason(s) why M&T is not releasing the Debtors' estates under the Plan.

"Released Parties" shall mean collectively, and in each case in its capacity as such: (a) the Debtors; (b) M&T; (c) all Holders of Claims or Interests that (i) vote to accept the Plan, or (ii) abstain from voting or do not vote on the Plan and affirmatively opt in to the releases provided under the Plan; and (d) with respect to each of the Debtors, and each of the foregoing Entities in clauses (a) through (c), the Related Parties of such Entities; provided, that any Holder of a Claim or Interest that votes to reject or objects to the Plan shall not be a "Released Party."

Plan § 1.100.

15.    "Related Parties" is defined under the Plan as follows:

"Related Parties" shall mean, with respect to any (w) Person or Entity, (x) such Person's or Entity's current and former direct or indirect subsidiaries, affiliates, parents, predecessors, successors, and assigns, (y) with respect to each of the foregoing in clause (w) and (x), solely in their respective capacities as such, their current and former directors, members, managers, officers, limited partners, general partners, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, and assigns, (z) with respect to each of the foregoing in clause (w) through (y), solely in their respective capacities as such, each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, designees, trustees, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals or representatives, and any other fiduciaries to such Person or Entity with any involvement related to the Debtors; and (zz) with respect to each of the foregoing in clauses (w) through (z), such Person's or Entity's respective heirs, executors, estates, servants, and nominees.

Plan § 1.99.

16.    The term "Exculpated Parties" is defined in the Plan as follows:

"Exculpated Parties" shall mean, each in their respective capacities as such, (a) the Debtors and the Post-Effective Date Debtor, (b) the Committee, (c) the Related Parties of each of the foregoing in each case as to the Persons and entities in this clause (c) to the extent such Person or Entity is a fiduciary of any of the Estates (including, without limitation, as an officer or director of the Debtors or the Plan Administrator).

Plan § 1.50.

17.    The Plan has an Exculpation clause:

> Notwithstanding anything to the contrary herein, effective as of the Effective Date, the Exculpated Parties shall neither have nor incur, and each Exculpated Party is released and exculpated from, any liability to any Entity for any claims or Causes of Action arising prior to or on the Effective Date (including prior to the Petition Date) for any act taken or omitted to be taken in connection with, or related to, preparing and filing the Chapter 11 Cases, or formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the confirmation or consummation of the Sale Transaction or the Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with the Chapter 11 Cases, the Disclosure Statement, consummation of the Sale Transaction, or confirmation or consummation of the Plan, except for actions determined by Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Plan § 8.5.

18.    Additionally, the Plan contains an injunction enjoining any actions based on the

releases or exculpated claims:

> Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold or may hold Claims against or Interests in the Debtors that have been released, satisfied, or are subject to exculpation are permanently enjoined, from and after the Effective Date from taking any of the following actions against, as applicable, the Debtors, the Wind-Down Debtor, the Exculpated Parties, the Released Parties, the 1125(e) Parties, or the Plan Administrator: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) on account of or in connection with or with respect to any such Claim or Interest; (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order

on account of or in connection with or with respect to any such Claim or Interest; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest; (iv) asserting any right of setoff, directly or indirectly, on account of or in connection with or with respect to any such Claim or Interest, except as contemplated or allowed by this Plan or pursuant to a timely filed Proof of Claim; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their Related Parties shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions, treatment, or reinstatement of such Claim or Interest, as applicable, pursuant to the Plan shall be deemed to have consented to the injunction provisions set forth in Section 8.6 hereof.

Plan § 8.7.

19.    The Plan has a Compromise, Settlement and Release of Claims and Interests clause:

Compromise, Settlement, and Release of Claims and Interests. As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interest of the Debtors and their Estates. Subject to Article X hereof, all distributions to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final. Release of Liens. Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date and required to be satisfied pursuant to the Plan, except for Other Secured Claims that the

Debtors elect to reinstate in accordance with Article III hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and satisfied, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Wind-Down Debtor to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

Plan § 8.1.

## ARGUMENT

### I.   The Disclosure Statement Does Not Contain Adequate Information.

20.    Section 1125 of the Bankruptcy Code provides that a disclosure statement must contain "adequate information" describing a confirmable plan.  11 U.S.C. § 1125; *see In re Quigley Co.*, 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007).   The Bankruptcy Code defines "adequate information" as:

[i]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, ***that would enable such a hypothetical reasonable investor of the relevant class to make an informed judgment about the plan*** . . . .

11 U.S.C. § 1125(a)(1) (emphasis added); *see Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999).

21.    The disclosure statement requirement of section 1125 of the Bankruptcy Code is

"crucial to the effective functioning of the federal bankruptcy system[;] . . . the importance of full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.*), 848 F.2d 414 (3d Cir. 1988)).

22.     The "adequate information" requirement is designed to help creditors in their negotiations with debtors over the plan. *See Century Glove, Inc. v. First Am. Bank*, 860 F.2d 94 (3d Cir. 1988). Section 1129(a)(2) conditions confirmation upon compliance with applicable Code provisions. The disclosure requirement of section 1125 is one of those provisions. *See* 11 U.S.C. 1129(a)(2); *In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000).

23.     To be approved, a disclosure statement must include sufficient information to apprise creditors of the risks and financial consequences of the proposed plan. *See In re Duratech Indus.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y.), *aff'd*, 241 B.R. 283 (E.D.N.Y. 1999) (the purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice of whether to approve or reject the debtor's plan); *In re McLean Indus.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("substantial financial information with respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors and other parties in interest in order to arrive at an informed decision concerning the acceptance or rejection of a proposed plan").

24.     Section 1125 of the Bankruptcy Code is geared towards more disclosure rather than less. *See In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990). The "adequate information" requirement merely establishes a floor, and not a ceiling for disclosure to voting creditors. *See In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006) (citing *Century Glove, Inc. v. First Am. Bank of New York*, 860 F.2d 94, at 100 (3d Cir. 1988).

25.     "Adequate information" under section 1125 is "determined by the facts and circumstances of each case." *See Oneida*, 848 F.2d at 417 (citing H.R. Rep. No. 595, 97th Cong., 2d Sess. 266 (1977)).

26.     A disclosure statement must inform the average creditor what it is going to get and when, and what contingencies there are that might intervene. *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). Although the adequacy of the disclosure is determined on a case-by-case basis, the disclosure must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy Code] alternatives . . . ." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

27.     Here, the Disclosure Statement does not include certain necessary information for creditors deciding how to vote on the Plan:

    a.   The Disclosure Statement does not include a liquidation analysis, which creditors need to determine whether they will receive more under the Plan than in a hypothetical chapter 7 liquidation.

    b.   The Disclosure Statement does not identify the Debtor-owners of estate assets and the value of those assets. The cases are not substantively consolidated, so creditors of each Debtor should be informed as to which assets will satisfy their claims.

    c.   The Disclosure Statement does not disclose the identity of the Related Parties who will grant the Third-Party Release and those Related Parties that will benefit from the same release.

    d.   The Disclosure Statement fails to provide any information concerning the projected amounts of claims and recoveries for Classes 3 and 4.

    e.   The Disclosure Statement fails to provide any information concerning the projected

amounts of claims for Classes 1 and 2.

 f. The ballots do not adequately describe the opt-in mechanism for those who vote against the Plan or abstain from voting.

 g. The Disclosure Statement Motion and Plan include various references to an opt-out procedure, but the Disclosure Statement Motion does not provide for such a procedure, further confusing creditors.

 h. The ballots do not clearly state that, as the Plan currently provides, the Debtors intend that those who vote for the Plan in Classes 3 and 4 will be granting the Third-Party Release solely by virtue of their vote in favor of the Plan.

28. The Disclosure Statement also fails to provide certain information relating to the Debtor Release:

 a. The disclosure statement does not adequately disclose: (a) why the Debtors will be releasing the Released Parties; (b) the nature and value of the claims the Debtors are releasing (e.g., are there any potential claims against current/former insiders, and are any claims subject to liens held by the Debtors' secured creditors); (c) what (if anything) the Debtors are receiving as consideration for such releases; or (d) why M&T is receiving a release of estate claims without releasing the estates.

29. Because the Disclosure Statement fails to provide adequate information as to the above-referenced items, it should not be approved by the Court.

**II. The Disclosure Statement Should Also Not Be Approved Because the Plan Is Not Confirmable.**

30. The Plan is not confirmable for four reasons. *First*, the Plan proposes non-consensual Third-Party Releases that are not authorized under the Bankruptcy Code. *Second*, the Plan includes an injunction to enforce the third-party release and exculpation that is not supported

by any authority.  *Third*, to the extent exculpation is permissible beyond the provisions of section 1125(e), the exculpation provision in the Plan is broader than what the United States Court of Appeals for the Third Circuit has allowed.  *Fourth*, the Plan impermissibly implements Rule 9019 to treat the Plan, and its various releases, as a settlement and compromise.

### A.    *State Contract Law Applies, Not Federal Law*

31.     If a plan is patently unconfirmable on its face, the application to approve the disclosure statement must be denied.  *See Quigley Co.,* 377 B.R. at 115 (citing *In re Beyond.com Corp.*, 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003)); *In re 266 Washington Assocs.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y.) *aff'd*, 147 B.R. 827 (E.D.N.Y. 1992); *In re Filex, Inc.*, 116 B.R. 37, 41 (Bankr. S.D.N.Y. 1990)).  The Supreme Court has definitively held that non-consensual third-party releases are not authorized under the Bankruptcy Code.  *Harrington v. Purdue Pharma L.P.,* 603 U.S. 204, 227; 144 S. Ct. 2071, 2088 (2024).  The Supreme Court in *Purdue* did not address whether consensual non-debtor releases can be included in a chapter 11 plan and confirmation order.

32.     The foundation of a consensual release is an agreement between the parties.  Whether non-debtor parties have reached an agreement—including an agreement to release one's claims against another (*i.e.*, not to sue)—is governed by state law.  The only exception is if there is federal law that preempts applicable state contract law in some specific context.  *See, e.g., Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 416 (2010) (plurality) ("For where neither the Constitution, a treaty, nor a statute provides the rule of decision or authorizes a federal court to supply one, 'state law must govern because there can be no other law.'") (quoting *Hanna v. Plumer*, 380 U.S. 460, 471-72 (1965)).

33.     No such exception applies here.  The Bankruptcy Code does not define a "consensual release."  It contains no provision that addresses how to determine whether one non-

debtor has agreed to extinguish its direct claims against another non-debtor. And no Code provision authorizes courts, as part of an order confirming a chapter 11 plan or otherwise, to "deem" a non-debtor to have consented to an agreement to release claims against other non-debtors where such consent would not otherwise be found to exist as a matter of state law. Nor does 11 U.S.C. § 105(a) itself confer any power to override state law. Rather, section 105(a) "serves only to carry out authorities expressly conferred elsewhere in the code." *Purdue*, 603 U.S. at 216 n.2, 144 S. Ct. at 2082 n.2 (internal citation, related quotation marks omitted). Bankruptcy courts cannot "create substantive rights that are otherwise unavailable under applicable law," nor do they possess a "roving commission to do equity." *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003) (quotation omitted). Accordingly, any authority to include third-party releases in a plan must derive from some other source of law. Thus, the Bankruptcy Code does not change the state-law definition of consent as applicable to claims among non-debtor parties.[7]

34. As courts have recognized, because the Bankruptcy Code does not govern relationships between claim holders and non-debtor third-parties, state-law contract principles serve as controlling authority when considering whether a release is consensual. *See, e.g.*, *Patterson v. Mahwah Bergen Ret. Grp., Inc.*, 636 B.R. 641, 684-85 (E.D. Va. 2022) (describing bankruptcy courts in the District of New Jersey as "look[ing] to the principles of contract law

---

[7] Indeed, even as to a debtor, it is well settled that whether parties have entered a valid settlement agreement is governed by state law. *See Houston v. Holder (In re Omni Video, Inc.)*, 60 F.3d 230, 232 (5th Cir. 1995) ("Federal bankruptcy law fails to address the validity of settlements and this gap should be filled by state law."); *De La Fuente v. Wells Fargo Bank, N.A. (In re De La Fuente)*, 409 B.R. 842, 845 (Bankr. S.D. Tex. 2009) ("Where the United States is not a party, it is well established that settlement agreements in pending bankruptcy cases are considered contract matters governed by state law."). That is because "the basic federal rule in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Travelers Cas. & Sur. Co. of America v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 450-451 (2007) (quotation marks omitted); *Butner v. United States*, 440 U.S. 48 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

rather than the bankruptcy court's confirmation authority to conclude that the validity of the releases requires affirmative consent"); *Smallhold, Inc.*, 665 B.R. 704, 720 (Bankr. D. Del. 2024) (recognizing that "some sort of affirmative expression of consent that would be sufficient as a matter of contract law" is required); *In re SunEdison, Inc.,* 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017) ("Courts generally apply contract principles in deciding whether a creditor consents to a third-party release."); *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 506, 507 (Bankr. D.N.J. 1997) (explaining that a third-party release "is no different from any other settlement or contract" and thus "the validity of the release . . . hinge[s] upon principles of straight contract law or quasi-contract law rather than upon the bankruptcy court's confirmation order") (internal quotation marks omitted) (alterations in original).  As one court recently held, because "'nothing in the bankruptcy code contemplates (much less authorizes it)' . . . . any proposal for a non-debtor release is an ancillary offer that becomes a contract upon acceptance and consent." *In re Tonawanda Coke Corp.*, 662 B.R. 220, 222 (Bankr. W.D.N.Y. 2024) (quoting *Purdue*, 144 S. Ct. at 2086). Accordingly, "any such consensual agreement would be governed by state law." *Id.*

35.    Here, the Debtors do not meet their burden of establishing that the releasing parties will affirmatively agree to release their property rights in a manner sufficient to demonstrate consent under state law.

### B.    *Under State Law, Silence Is Not Acceptance*

36.    The "general rule of contracts is that silence cannot manifest consent." *Patterson*, 636 B.R. at 686; *see also, e.g.*, *McGurn v. Bell Microproducts, Inc.*, 284 F.3d 86, 90 (1st Cir. 2002) (recognizing "general rule" that "silence in response to an offer . . . does not constitute acceptance of the offer").  Moreover, "[o]rdinarily[,] an offeror does not have power to cause the silence of the offeree to operate as acceptance." RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a (1981);

*accord* 1 Corbin on Contracts § 3.19 (2018); 4 Williston on Contracts § 6:67 (4th ed.); *Reichert v. Rapid Investments, Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022) ("[T]he offeror cannot prescribe conditions so as to turn silence into acceptance.").  Instead, under state law, an agreement to release claims—like any other contract—generally requires a manifestation of assent to that agreement.  *See, e.g.*, RESTATEMENT (SECOND) OF CONTRACTS § 17(1) ("[T]he formation of a contract requires a bargain in which there is manifestation of mutual assent to the exchange and a consideration.").  Consent cannot be imputed or "deemed" based on a party's failure to object—rather, consent must be affirmatively shown to exist.  *See, e.g.*, *id.*; RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a.

37.     There are only very limited exceptions to that principle.  "[T]he exceptional cases where silence is acceptance fall into two main classes: those where the offeree silently takes offered benefits, and those where one party relies on the other party's manifestation of intention that silence may operate as acceptance.  Even in those cases the contract may be unenforceable under the Statute of Frauds."  RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a (1981).

38.     But absent such extraordinary circumstances, "[t]he mere receipt of an unsolicited offer does not impair the offeree's freedom of action or inaction or impose on him any duty to speak."  *Id.*  And "[t]he mere fact that an offeror states that silence will constitute acceptance does not deprive the offeree of his privilege to remain silent without accepting."  *Id.* § 69 cmt. c; *see also Patterson*, 636 B.R. at 686 (explaining how contract law does not support deeming consent based upon a failure to opt out).

39.     Using Delaware common law as a point of reference, silence does not equal consent

except under limited circumstances not applicable here.[8] *See, e.g., Hornberger Mgmt. Co. v. Haws & Tingle Gen. Contractors, Inc.*, 768 A.2d 983, 991 (Del. Super. Ct. 2000) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 69 (1981)). Delaware follows the "mirror image" rule, requiring the acceptance to be identical to the offer. *See Urban Green Techs., LLC v. Sustainable Strategies 2050 LLC*, No. N136-12-115, 2017 WL 527565, at *3 (Del. Super. Ct. Feb. 8, 2017); *see also Patterson*, 636 B.R. at 686 (contract law does not support consent by failure to opt out).

### C.    *Merely Voting for a Plan Does Not Provide the Required Affirmative Consent*

40.    The Debtors propose that the non-debtor releases in the Plan bind all parties who vote to accept the Plan.  Because the Plan would impose non-debtor releases on these parties without their affirmative consent as to those releases, the releases are not consensual under state law and thus cannot be approved under *Purdue*.

41.    The Debtors conflate a vote for the Plan, which is governed by the Bankruptcy Code's provisions for adjusting relations between a debtor and its creditors, with acceptance of proposed third-party releases, which are contracts governed by state law dealing with relations between non-debtor parties.  Those are distinct legal constructs involving distinct parties:  the Plan disposes of a creditor's claims against the Debtor, while a third-party release disposes of its claims against non-debtors.  "[A] creditor should not expect that those rights [against non-debtors] are even subject to being given away through the debtor's bankruptcy."  *Smallhold, Inc.*, 2024 WL 4296938, at *12There is nothing in the Code that authorizes treating a vote to accept a chapter 11 plan as consent to a third-party release.  Rather, for a creditor to be deemed to have affirmatively

---

[8] Ordinary choice of law principles govern which state's law applies to contracts between non-debtors, although a choice of law analysis may not be necessary absent any assertion that there is a difference in potentially applicable state laws governing what constitutes consent.  *See Smallhold*, 665 B.R. at 723 n.57. While the Plan provides that its construction and enforcement is governed by the laws of the State of Delaware, debtors cannot choose the law to apply to contracts between non-debtors.

consented to the third-party releases, each creditor must have indicated express consent to be bound by a contract with the non-debtor beneficiaries of these releases.  A vote to accept the Plan cannot demonstrate consent to such a contract with a non-debtor.

42.     The Debtors' conflation of voting for the Plan with acceptance of the third-party release violates black letter contract law.  Voting for a plan disposing of claims against the debtor and its bankruptcy estate does not reflect the unambiguous assent necessary to find consent to a release of claims against other parties.  *See, e.g., In re Congoleum Corp.*, 362 B.R. 167, 194 (Bankr. D.N.J. 2007) ("[A] consensual release cannot be based solely on a vote in favor of a plan."); *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 507 (Bankr. D.N.J. 1997) (concluding that, because consensual releases are premised on the party's agreement to the release, "it is not enough for a creditor to abstain from voting for a plan, or even to simply vote 'yes' as to a plan").

43.     Nor does it fit into any of the exceptions for when silence is a manifestation of an intent to accept an offer.  First, creditors who vote for a plan are not "silently tak[ing] offered benefits" from the released non-debtors, such that consent to release them may be inferred. RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a (1981).  The only benefits received by the creditors are distributions under the chapter 11 from the debtor's estate, not from the released non-debtors.  Thus, "[e]ssentially, creditors are being asked to give releases to third parties for no consideration." *Tonawanda Coke Corp.*, 662 B.R. at 222.  Further, non-debtors have no right to prevent a debtor's creditors from receiving distributions under the debtor's chapter 11 plan, and thus acceptance of those distributions does not manifest acceptance of an offer to release non-debtors. *See Railroad Mgmt. Co., L.L.C. v. CFS La. Midstream Co.*, 428 F.3d 214, 223 (5th Cir. 2005) ("In the absence of any evidence that Strong had the right to exclude CFS from the property in question or that CFS accepted any service or thing of value from Strong, no reasonable jury

could conclude that CFS's failure to remove its pipeline upon Strong's demand constituted consent to a contract.").

44.     Second, the mere act of voting on the chapter 11 plan does not "manifest[] [an] intention that silence may operate as acceptance" of a proposal that the creditor release claims against non-debtors.  RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a.  Because impaired creditors have a federal right under the Bankruptcy Code to vote on a chapter 11 plan, 11 U.S.C. § 1126(a), merely exercising that right does not manifest consent to release claims against non-debtors.  Rather, voting on a chapter 11 plan is governed by the Bankruptcy Code, and a favorable vote reflects only approval of the plan's treatment of the voters' claims *against the debtor*.  *See Arrowmill*, 211 B.R. at 507; *Congoleum Corp.*, 362 B.R. at 194; *In re Digital Impact, Inc*., 223 B.R. 1, 14 (Bankr. N.D. Okla. 1998).  Further, creditors have no state law duty to respond to an offer to release non-debtors such that their silence can be understood as consent, nor have they necessarily had any prior course of dealing with the released non-debtors that could conceivably impose such a duty.  *See, e.g., Norcia*, 845 F.3d at 1285-86.  Indeed, creditors do not have any affirmative obligation to act on a plan at all.  *See, e.g.*, 11 U.S.C. § 1126(a) (providing that creditors "may" vote on a plan); *SunEdison, Inc.*, 576 B.R. at 460–61 (explaining that creditors have no duty to speak regarding a plan such as could allow a court to infer consent to third-party releases from silence).  A claimant's vote in favor of a plan while remaining silent regarding a non-debtor release thus does not fit within the exception to the general state-law rule that consent cannot be inferred from silence.

45.     As explained in *Arrowmill*, a voluntary release arises only "because the *creditor agrees*" to it. 211 B.R. at 507 (emphasis in original).  Because "a creditor's approval of the plan cannot be deemed an act of assent having significance beyond the confines of the bankruptcy

proceedings," "it is not enough for a creditor . . . to simply vote 'yes' as to a plan." *Id.* (quotation marks omitted); *accord Congoleum Corp.*, 362 B.R. at 194; *Digital Impact, Inc.*, 223 B.R. at 14. Rather, a creditor must "unambiguously manifest[] assent to the release of the nondebtor from liability on its debt." *Arrowmill*, 211 B.R. at 507.

46.     Further, a plan is a package deal—a person votes yes or no on the entire plan, not particular aspects of it—and a person cannot be compelled to accept a non-debtor release as a condition of receiving the benefits of a plan.  That is not consent under governing state law.  For those who believe the plan is the best way to maximize the return of their money from the debtor, requiring them to vote "no" on the Plan solely because of an objectionable non-debtor release— thus raising the possibility that the Plan may not be able to be confirmed and they thus cannot receive the economic benefit under the Plan—would be penalizing them for exercising their right to vote in favor of the Plan.  If an offeree is penalized unless an "offer" is accepted, that circumstance "preclud[es] an inference of assent." *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1230-31 (9th Cir. 2022).  And as the *Smallhold* court recognized, if voting to accept a plan means a non-debtor release is imposed on the voter, that will discourage creditors from voting and may distort the voting process, which is intended to provide a valuable signal about the extent of creditor support, within each voting class, for the plan's treatment of creditors' allowed claims against the debtor.  *In re Smallhold, Inc.,* 2024 WL 4296938, at *7.

47.     In addition, the Bankruptcy Code guarantees that a creditor may not be required to accept in a chapter 11 plan less than it would receive in a chapter 7 liquidation.  11 U.S.C. § 1129(a)(7)(A).  But a chapter 7 liquidation could not require a release of non-debtors as a condition of receiving a distribution (because it does not involve a plan).  Requiring a creditor to accept a non-debtor release as a condition of receiving a distribution under a chapter 11 plan,

absent the individual creditor's consent, is thus inconsistent with Bankruptcy Code section 1129(a)(7)(A).

48.     Further, imputing state-law consent to a non-debtor release from a vote in favor of a plan assumes that the creditor understands that an affirmative vote will have this dramatic impact, which would require both that the creditor sees that the ballot includes a non-debtor release and that the creditor understands its terms.  But that assumption has no evidentiary support.  Here, the release language and the ballot appear to contradict each other; the "opt in" section of the ballot makes no mention of the fact that an affirmative vote in favor of the Plan binds a creditor to the Third-Party Release.  "[A]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious."  *Norcia*, 845 F.3d at 1285 (quotation marks omitted); *Noble v. Samsung Elec. Am., Inc.*, 682 F. App'x 113, 117-118 (3d Cir. 2017) (reaffirming that a person cannot be presumed to have agreed to contractual provisions unless "there is a reasonable basis to conclude that consumers will have understood the document contained a bilateral agreement").  Hence, voting for a plan does not reflect actual and knowing consent, particularly in the context of "an immensely complicated plan" where "it would be difficult for any layperson to comprehend all of its details."  *In re Congoleum Corp.*, 362 B.R. at 194.

49.     In sum, there will be no affirmative consent to Third-Party Releases given by the numerous persons and entities on whom such releases will be imposed who vote for the Plan.  Such releases are therefore non-consensual.

**D.     The Plan Cannot Be Confirmed Because There Is No Authority for the Injunction Against Bringing Claims Against Non-Debtors**

50.     This Court also may not approve the injunction enforcing the release by parties in interest against non-debtors because *Purdue* clearly stands for the proposition that non-consensual

third-party releases and injunctions are not permitted by the Bankruptcy Code. *See Purdue Pharma L.P.*, 603 U.S. at 227, 144 S. Ct. at 2088. As the *Purdue* court noted, the Bankruptcy Code allows courts to issue an injunction in support of a non-consensual, third-party release in exactly one context: asbestos-related bankruptcies, and these cases are not asbestos-related. *See id.* at 2085 (citing 11 U.S.C. § 524(e)). Even if non-debtor releases are consensual, there is no Code provision that authorizes chapter 11 plans or confirmation orders to include injunctions to enforce them. Further, such an injunction is not warranted by the traditional factors that support injunctive relief. Parties seeking an injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'") (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)); *Fechter v. HMW Indus., Inc.*, 879 F.2d 1111, 1119 (3d Cir. 1989) ("We have long followed the principle that equitable remedies are available once legal remedies are found to be inadequate.") (citing *Weinberger*). For example, if the release is truly consensual, there is no threatened litigation and no need for an injunction to prevent irreparable harm to either the estates or the released parties. A consensual release may serve as an affirmative defense in any ensuing, post-effective date litigation between the third party releasees and releasors, but there is no reason for this Court to be involved with the post-effective date enforcement of those releases. Moreover, this injunction essentially precludes any party deemed to consent to this release from raising any issue with

respect to the effectiveness or enforceability of the release (such as mistake or lack of capacity) under applicable non-bankruptcy law.

51.     Similarly, to the extent that applicable law authorizes exculpation beyond 11 U.S.C. § 1125(e), there is no statutory authority in the Bankruptcy Code that justifies an injunction to enforce an exculpation, and the Debtors have shown no need for an injunction to prevent "irreparable harm" to either the estates or the released parties.

### E.     The Exculpation Provision is Impermissibly Broad Beyond Circuit Precedent

52.     To the extent exculpation is permissible beyond the provisions of section 1125(e) of the Bankruptcy Code, this Circuit has only approved post-petition, pre-effective date exculpations that are limited to estate fiduciaries.  First, the Plan's Exculpation Provision is inconsistent with controlling case law because it includes persons and entities that are not estate fiduciaries as well as entities that do not even exist until after the Effective Date.  Although the Exculpation Provision is limited to those actions arising prior to the Effective Date, the inclusion of the "Post Effective Date Debtor," the officers and directors of the "Plan Administrator," and successors or assigns, and other entities that will not come into being until after the Effective Date raises clear concerns that it is intended to stretch past that time.  Second, the provision is also inconsistent with Third Circuit law because it is not temporally cabined to the post-petition, pre-Effective Date period.  The exculpation provision specifically includes "any liability to any Entity for any claims or causes of action arising prior to or on the Effective Date (including prior to the Petition Date)".  Plan § 8.5.  For all these reasons, the Plan should not be confirmed if the provision is not modified.

53.     The Third Circuit in *In re PWS Holding Corporation*, 228 F.3d 224 (3d Cir. 2000) articulated the standard of liability to which estate fiduciaries are held in a chapter 11 case in a

plan. *See id.* at 246. This Court has consistently interpreted *PWS Holding Corporation* and uniformly held that a party's entitlement to exculpation is based upon its role or status as an estate fiduciary. *See In re Washington Mut., Inc.*, 442 B.R. 314, 350-51 (Bankr. D. Del. 2011) (holding that an "exculpation clause must be limited to the fiduciaries ***who have served during the chapter 11 proceeding***: estate professionals, the Committees and their members, and the Debtors' directors and officers.") (emphasis added); *accord In re Tribune Co.*, 464 B.R. 126, 189 (Bankr. D. Del. 2011); *In re Indianapolis Downs, LLC.*, 486 B.R. 286, 306 (Bankr. D. Del. 2013); *In re PTL Holdings LLC*, No. 11-12676 (BLS), 2011 WL 5509031, at *38 (Bankr. D. Del. Nov. 10, 2011) (Shannon, J.) ("courts have permitted exculpation clauses insofar as they merely state[] the standard to which ... estate fiduciaries [a]re held in a chapter 11 case. That fiduciary standard, however, applies only to estate fiduciaries, no one else.") (internal quotations omitted).

54. Because exculpation is limited to estate fiduciaries who served in the bankruptcy case, they must also be limited to actions and omissions taking place during the bankruptcy case. *See Washington Mut.*, 442 B.R. at 350 (exculpations cover "actions in the bankruptcy case") (citing *PWS*, 228 F.3d at 246).

55. In *In re Mallinckrodt PLC*, 639 B.R. 837 (Bank. D. Del. 2022), this Court recently held that exculpation "only extends to conduct that occurs between the Petition Date and the effective date," and ordered the debtors to strike contrary language from the exculpation provision. *Id.* at 883.

56. The Plan impermissibly provides for the inclusion of certain entities as "Exculpated Parties" and their Related Parties who are not fiduciaries as required by established precedent articulated above. The definition of Related Parties includes "members, managers, limited partners, general partners, equity holders…predecessors, participants, successors, and assigns".

Plan § 1.99.  This vague, all-encompassing description of participants in the chapter 11 process arguably includes non-fiduciaries – e.g., advisors, consultants, and other professionals.

57.     Additionally, to the extent that exculpation is permitted beyond the scope of section 1125(e) of the Bankruptcy Code, the Plan's exculpation provision neglects to exclude protection for willful misconduct by the Exculpated Parties.  The exculpation provision reviewed by the Third Circuit in *PWS Holding* contains no protection for willful misconduct.

58.     Finally, the last sentence of the Plan's exculpation provision exceeds the scope of Code section 1125(e).  That sentence provides:

> The Exculpated Parties have, and upon consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Plan § 8.5.  Section 1125(e) of the Bankruptcy Code states:

> A person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title, or that participates, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan, of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities.

The definition of "Exculpated Parties" in the Plan contains a number of entities that neither "solicited" acceptance or rejection of a plan or participated "in the offer, issuance, sale or purchase of a security, offered or sold under the plan …."  This Court cannot "deem" protection for entities in connection with the solicitation of votes on a plan or the offer, issuance, sale, or purchase of securities inconsistent with limitations expressly set by Congress under section 1125(e).

27

59.     Consequently, unless the Plan is revised to (i) clarify that the exculpation is limited to the Debtors, their officers and directors, and estate professionals employed by order of this Court and to the period between the Petition Date and the Effective Date in accordance with Circuit precedent and (ii) address the other points identified above, the Plan should not be confirmed.

### F.     *Rule 9019 Cannot Be Used to Evade* Purdue

60.     Given that it is a rule, Bankruptcy Rule 9019(a) cannot be read as superseding a party's right to consent as defined by state law.  And Rule 9019(a) does not purport to do anything of the sort.

61.     Bankruptcy Rule 9019(a) provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  "In making its evaluation, the court must determine whether 'the compromise is fair, reasonable, and in the best interest of the estate.'"  *In re Washington Mut., Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011) (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)).  The purpose of Bankruptcy Rule 9019 is thus not to determine the existence or validity of consent to a proposed settlement (which remains a question of state contract law), but instead to ensure that the proposed settlement is fair.

62.     Nothing in Bankruptcy Rule 9019 permits bankruptcy courts to impose nonconsensual non-debtor releases.  The Rule is limited to approvals of a debtor's "compromise or settlement."  Fed. R. Bankr. P. 9019(a).  But a debtor lacks standing to pursue its creditors' direct claims against third parties.  *See Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 426-29 (1972).  Moreover, a compromise or settlement is, by definition, consensual. *See* Black's Law Dictionary (10th ed. 2014) (emphasis added) (defining a "settlement" as "an agreement ending a dispute or lawsuit," and defining an "agreement" as "a mutual understanding

between two or more persons about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by two or more persons") (emphasis added).  By its plain terms, Bankruptcy Rule 9019 does not authorize the imposition of non-consensual releases between non-debtors.

63.     Bankruptcy Rule 9019 could not authorize the imposition of nonconsensual releases, even if, counterfactually, it purported to do so.  Because 28 U.S.C. § 2075 commands that Bankruptcy Rules shall not abridge substantive rights, Bankruptcy Rule 9019 cannot authorize bankruptcy courts to approve something the Supreme Court held in Purdue no Bankruptcy Code provision permits.  *Purdue*, 603 U.S. at 227, 144 S. Ct. at 2088 ("[T]he bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants.").

64.     Nor can such a "settlement" be included in a chapter 11 plan.  A plan and a settlement are not one and the same thing.  What may be permissible under a negotiated settlement agreement that is considered "fair, reasonable, and in the best interest of the estate" is different than what may be permissible under a plan, which is subject to the requirements of sections 1123 and 1129 of the Bankruptcy Code. *See, e.g., Tribune Co.*, 464 B.R. at 176 (concluding at confirmation stage that a negotiated settlement could be approved because it was fair, reasonable and in the best interest of the Debtors' estates and making an express finding that the settlement was properly part of the plan pursuant to section 1123(b)(3)(A)).  Section 1123(b)(3)(A) of the Bankruptcy Code allows a plan proponent to propose "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." 11 U.S.C. § 1123(b)(3)(A) (emphasis added).  Thus, under section 1123(b)(3)(A), the Plan may only provide for the settlement of claims or

interests belonging to the Debtor or the estate—not the settlement of claims held by third parties. *Purdue*, 603 U.S. at 219-20, 144 S. Ct. at 2084 ("[P]recisely nothing in § 1123(b) suggests those claims can be bargained away without the consent of those affected, as if the claims were somehow Purdue's own property.").

## CONCLUSION

65.     For the reasons set forth above, the Disclosure Statement should not be approved, and the Disclosure Statement Motion should be denied.

## RESERVATION OF RIGHTS

66.     The U.S. Trustee leaves the Debtors to their burden of proof and reserves any and all rights, remedies and obligations to, *inter alia*, (i) complement, supplement, augment, alter and/or modify this Objection, (ii) file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required, and (iii) assert such other grounds as may become apparent upon further factual discovery.  The U.S. Trustee also reserves all rights with respect to plan confirmation issues until the relevant objection deadline.

**WHEREFORE**, the U.S. Trustee requests that this Court enter an order (i) denying approval of the Disclosure Statement and the Disclosure Statement Motion and (ii) granting such other relief that the Court deems just and proper.

Dated: April 7, 2025
      Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS 3 & 9**

By: */s/ Jonathan W. Lipshie*
      Jonathan W. Lipshie
      Trial Attorney
      United States Department of Justice
      Office of the United States Trustee
      J. Caleb Boggs Federal Building
      844 King Street, Suite 2207, Lockbox 35
      Wilmington, Delaware 19801
      Phone: (202) 567-1124
      Fax:   (302) 573-6497
      Email: jon.lipshie@usdoj.gov