## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>AZZUR GROUP HOLDINGS, INC., *et al.,*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10342 (KBO)<br><br>(Jointly Administered)<br><br>**Hearing Date: May 19, 2025, at 10 a.m. (ET)**<br>**Objection Deadline: May 14, 2025, at 4:00 p.m. (ET)**<br><br>**Re:  D.I. 410** |

## UNITED STATES TRUSTEE'S OBJECTION TO COMBINED DISCLOSURE STATEMENT AND JOINT CHAPTER 11 PLAN OF AZZUR GROUP HOLDINGS LLC AND ITS AFFILIATED DEBTORS

Andrew R. Vara, the United States Trustee for Regions Three & Nine ("U.S. Trustee"), through his counsel, files this objection (the "Objection") to the *Debtors' Combined Disclosure Statement and Joint Chapter 11 Plan of Azzur Group Holdings LLC and Its Affiliated Debtors* ("Plan") [D.I. 410], and in support of his Objection states:

### PRELIMINARY STATEMENT

1.     The Plan is not confirmable for five reasons.

■ *First*, the Plan proposes non-consensual Third-Party Releases that are not authorized under the Bankruptcy Code.

■ *Second*, the Plan includes an injunction to enforce the third-party release and exculpation that is not supported by any authority and provides the Debtors with an impermissible discharge.

---

[1]  A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.cases.stretto.com/Azzur. The Debtors' headquarters and the mailing address for the Debtors is 330 South Warminster Road, Suite 341, Hatboro, PA 19040.

- *Third*, the Debtor Release does not have an appropriate carve out for bad acts.

- *Fourth*, to the extent exculpation is permissible beyond the provisions of section 1125(e), the exculpation provision in the Plan is broader than what the United States Court of Appeals for the Third Circuit has allowed.

- *Fifth*, the Plan impermissibly implements Rule 9019 to treat the Plan, and its various releases, as a settlement and compromise.

## <u>JURISDICTION AND STANDING</u>

2.      Under (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine confirmation of the Plan and this Objection.

3.      Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

4.      Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor plans and disclosure statements filed in Chapter 11 cases and to comment on such plans and disclosure statements.

5.      The U.S. Trustee has standing to be heard on the Plan pursuant to 11 U.S.C. § 307.

**BACKGROUND**

6.      On March 2, 2025, the above-captioned cases were commenced by the filing of voluntary petitions in this Court.

7.      On March 14, 2025, the U.S. Trustee appointed an official committee of unsecured creditors. [D.I. 99].

8.      On March 7, 2025, the Debtors filed their combined disclosure statement and joint chapter 11 plan [D.I. 85] and their motion to approve the Debtors' disclosure statement and certain solicitation procedures [D.I. 86].

9.      On April 14, 2025, the Court entered the Order approving the disclosure statement and solicitation procedures. [D.I. 407]. The Court set the voting and confirmation deadlines for May 14, 2025. The confirmation hearing is scheduled for May 19, 2025, at 10:00 a.m. (ET).

*Relevant Plan Provisions*

10.     The third-party release provision in the Plan (the "Third-Party Release[s]") states in relevant part:

> Effective as of the Effective Date, for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, the adequacy of which is hereby confirmed, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each of the Releasing Parties shall be deemed to, completely, conclusively, absolutely, unconditionally, irrevocably, and forever, release, waive, void and extinguish each Debtor, Wind-Down Debtor, and Released Party from any claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy or liability whatsoever (including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors and their Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, for any act or omission in connection with, relating to, or arising out of the Debtors (including the management, ownership, or operation thereof, including as such entities existed prior to or after the Petition Date), the Chapter 11 Cases, negotiation, preparation, Filing, and consummation

of the Sale Transaction(s), the marketing and sale process related to the Sale Transaction(s), the negotiation, preparation, dissemination, solicitation, and Filing of this Combined Disclosure Statement and Plan, the Filing of the Chapter 11 Cases, the settlement of Claims or renegotiation of Executory Contracts or Leases, the pursuit of confirmation of this Combined Disclosure Statement and Plan, the consummation of this Combined Disclosure Statement and Plan, or the administration of this Combined Disclosure Statement and Plan or the property to be Distributed under this Combined Disclosure Statement and Plan, the Wind Down, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date (including before the Petition Date) related or relating to the foregoing; provided that any right to enforce the Purchase Agreement(s), the Sale Order(s), the Plan, and Confirmation Order is not so released; provided further, however, that notwithstanding anything to the contrary herein, the provisions of this Section 8.4 shall not apply with respect to any unimpaired Claim until such unimpaired Claim has been paid in full in the Allowed amount of such Claim determined in accordance with applicable law, or on terms agreed to between the holder of such Claim and the Plan Administrator or the Debtors, at which time this Section 8.4 shall apply in all respects as to the applicable unimpaired Claim.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in Section 8.4 hereof, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in Section 8.4 is: (1) by virtue of the opt-in/opt-out procedure, fully consensual; (2) in exchange for the good and valuable consideration provided by the Released Parties; (3) a good-faith settlement and compromise of claims released; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property, released pursuant to the releases described herein.

Plan § 8.4.

11.    The Plan provides the following with respect to the release of claims by the Debtors (the "Debtor Release[s]"):

Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent permissible under

applicable law, as such law may be extended or integrated after the Effective Date, each of the Debtors and the Wind-Down Debtor, on their own behalf and as a representative of the Estates, shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all Claims, Causes of Action, obligations, suits, judgments, damages, debts, rights, remedies and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or Contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors (including the management, ownership, or operation thereof, including as such entities existed prior to or after the Petition Date), the Chapter 11 Cases, negotiation, preparation, Filing, and consummation of the Sale Transaction(s), the marketing and sale process related to the Sale Transaction(s), the negotiation, preparation, dissemination, solicitation, and Filing of this Combined Disclosure Statement and Plan, the Filing of the Chapter 11 Cases, the settlement of Claims or renegotiation of Executory Contracts or Leases, the pursuit of confirmation of this Combined Disclosure Statement and Plan, the consummation of this Combined Disclosure Statement and Plan, or the administration of this Combined Disclosure Statement and Plan or the property to be Distributed under this Combined Disclosure Statement and Plan, the Wind Down, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date (including before the Petition Date) related or relating to the foregoing, that may be asserted by or on behalf of any of the Debtors or their respective Estates, against any of the Released Parties; provided that any right to enforce the Purchase Agreement(s), the Sale Order(s), the Plan, and Confirmation Order is not so released.

Plan § 8.3.

12.    In the Plan, "Releasing Parties" is defined as follows:

"Releasing Parties" shall mean collectively, and in each in case in its capacity as such: (a) the Debtors and the Wind-Down Debtor; (b) each Holder of a Claim or Interest that (x) votes to accept the Plan and does not opt-out of the voluntary release contained in Section 8.4 hereof by checking the opt-out box on the ballot, or (y) either (I) abstains from voting on the Plan or (II) is deemed to accept or reject the Plan and, in the case of either (I) or (II), affirmatively opts-in to the voluntary release contained in Section 8.4 hereof by checking the opt-in box on the ballot or notice, and returning

it in accordance with the instructions set forth thereon, indicating that they opt-in to grant the releases provided in the Plan; and (c) the Related Parties of the foregoing but only to the extent such Related Party would be obligated to release under principles of agency if it were so directed by the applicable Person or Entity in clauses (a) through (b); provided, however, that notwithstanding the foregoing, M&T shall not be deemed a "Releasing Party" under the Plan and shall benefit only from releases by the Debtors.

Plan § 1.103.

13.    "Released Parties" is defined as follows:

"Released Parties" shall mean collectively, and in each case in its capacity as such: (a) the Debtors; (b) M&T; (c) all Holders of Claims or Interests that (i) vote to accept the Plan and do not opt-out of the voluntary release contained in Section 8.4 hereof by checking the opt out box on the ballot, or (ii) abstain from voting or do not vote on the Plan and affirmatively opt-in to the releases provided under the Plan; and (d) with respect to each of the Debtors, and each of the foregoing Entities in clauses (a) through (c), the Related Parties of such Entities; provided, that any Holder of a Claim or Interest that votes to reject or objects to the Plan shall not be a "Released Party."

Plan § 1.102.

14.    "Related Parties" is defined as follows:

"Related Parties" shall mean, with respect to any (w) Person or Entity, (x) such Person's or Entity's current and former direct or indirect subsidiaries, affiliates, parents, predecessors, successors, and assigns, (y) with respect to each of the foregoing in clause (w) and (x), solely in their respective capacities as such, their current and former directors, members, managers, officers, limited partners, general partners, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, and assigns, (z) with respect to each of the foregoing in clause (w) through (y), solely in their respective capacities as such, each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, designees, trustees, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals or representatives, and any other fiduciaries to such Person or Entity with any involvement related to the Debtors; and (zz) with respect to each of the foregoing in clauses (w) through (z), such Person's or Entity's respective heirs, executors, estates, servants, and nominees.

Plan § 1.101.

15.     The term "Wind-Down Debtor" is defined as follows:

"Wind-Down Debtor" shall mean Debtor Azzur Group, LLC, on or after the Effective Date; provided, that if the Plan Administrator elects to establish a trust under Section 7.3, references to Wind-Down Debtor in Section 2.1 hereof shall be inclusive of such trust.

Plan § 1.121.

16.     The term "Exculpated Parties" is defined as follows:

"Exculpated Parties" shall mean, each in their respective capacities as such, (a) the Debtors and the Wind-Down Debtor, (b) the Committee, (c) the Related Parties of each of the foregoing in each case as to the Persons and entities in this clause (c) to the extent such Person or Entity is a fiduciary of any of the Estates (including, without limitation, as an officer or director of the Debtors).

Plan § 1.51.

17.     The Plan has an Exculpation clause:

Notwithstanding anything to the contrary herein, effective as of the Effective Date, the Exculpated Parties shall neither have nor incur, and each Exculpated Party is released and exculpated from, any liability to any Entity for any claims or Causes of Action arising prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to, preparing and filing the Chapter 11 Cases, or formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the confirmation or consummation of the Sale Transaction or the Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with the Chapter 11 Cases, the Disclosure Statement, consummation of the Sale Transaction, or confirmation or consummation of the Plan, except for actions determined by Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

7

Plan § 8.5.

18.    Additionally, the Plan contains an injunction enjoining any actions based on the

releases or exculpated claims:

> Except as otherwise expressly provided in the Plan or for obligations issued
> or required to be paid pursuant to the Plan or the Confirmation Order, all
> Entities who have held, hold or may hold Claims against or Interests in the
> Debtors that have been released, satisfied, or are subject to exculpation are
> permanently enjoined, from and after the Effective Date from taking any of
> the following actions against, as applicable, the Debtors, the Wind-Down
> Debtor, the Exculpated Parties, the Released Parties, the 1125(e) Parties, or
> the Plan Administrator: (i) commencing, conducting or continuing in any
> manner, directly or indirectly, any suit, action or other proceeding of any
> kind (including any proceeding in a judicial, arbitral, administrative or other
> forum) on account of or in connection with or with respect to any such
> Claim or Interest; (ii) enforcing, levying, attaching (including any pre-
> judgment attachment), collecting or otherwise recovering by any manner or
> means, whether directly or indirectly, any judgment, award, decree or order
> on account of or in connection with or with respect to any such Claim or
> Interest; (iii) creating, perfecting or otherwise enforcing in any manner,
> directly or indirectly, any encumbrance of any kind on account of or in
> connection with or with respect to any such Claim or Interest; (iv) asserting
> any right of setoff, directly or indirectly, on account of or in connection with
> or with respect to any such Claim or Interest, except as contemplated or
> allowed by this Plan or pursuant to a timely filed Proof of Claim; and (v)
> acting or proceeding in any manner, in any place whatsoever, that does not
> conform to or comply with the provisions of this Plan.
>
> Upon entry of the Confirmation Order, all Holders of Claims and Interests
> and their Related Parties shall be enjoined from taking any actions to
> interfere with the implementation or consummation of the Plan. Each
> Holder of an Allowed Claim or Allowed Interest, as applicable, by
> accepting, or being eligible to accept, distributions, treatment, or
> reinstatement of such Claim or Interest, as applicable, pursuant to the Plan
> shall be deemed to have consented to the injunction provisions set forth in
> Section 8.6 hereof.
>
> For the avoidance of doubt, pursuant to section 1141(d)(3) of the
> Bankruptcy Code, confirmation of the Plan or the occurrence of the
> Effective Date will not discharge the Debtors.

Plan § 8.7.

19.     The Plan has a "Compromise, Settlement and Release of Claims and Interests" clause:

> Compromise, Settlement, and Release of Claims and Interests. As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interest of the Debtors and their Estates. Subject to Article X hereof, all distributions to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final. Release of Liens. Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date and required to be satisfied pursuant to the Plan, except for Other Secured Claims that the Debtors elect to reinstate in accordance with Article III hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and satisfied, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Wind-Down Debtor to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

Plan § 8.1.

# ARGUMENT

**I.    The Plan Is Not Confirmable.**

### A.  State Contract Law Applies

20.    The Supreme Court has definitively held that bankruptcy courts cannot involuntarily alter relationships between non-debtors by imposing nonconsensual releases of, or injunctions barring, claims between them.  *Harrington v. Purdue Pharma L.P.,* 603 U.S. 204, 227; 144 S. Ct. 2071, 2088 (2024).  The Court in *Purdue* did not prohibit chapter 11 plans from memorializing consensual non-debtor releases, and it did not "express a view on what qualifies as a consensual release."  *Id*. at 226.

21.    A consensual third-party release is a separate agreement between non-debtors governed by nonbankruptcy law.  As the Supreme Court recognized in *Purdue*, a release is a type of settlement agreement.  *Purdue*, 603 U.S. at 223 (explaining that what the Sacklers sought was not "a traditional release" because "settlements are, by definition, consensual") (cleaned up).  A bankruptcy court can acknowledge the parties' agreement to a third-party release, but the authority for a consensual release is the agreement itself, not the Bankruptcy Code.  If a claim has been extinguished by virtue of the agreement of the parties, then the court is not using the forcible authority of the Bankruptcy Code or the bankruptcy court to extinguish the property right.

22.    Here, there is no existing release agreement between non-debtors.  Debtors instead seek a confirmation order that would use the power of the court to impose a third-party release on claimants without their affirmative and voluntary consent.  Such a confirmation order would impermissibly alter the relations between non-debtors because a valid release does not exist under nonbankruptcy law.  "[T]he basic federal rule in bankruptcy is that state law governs the substance of claims."  *Travelers Cas. & Sur. Co. of America v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450-451

(2007) (cleaned up); *accord Butner v. United States*, 440 U.S. 48 (1979). Thus, courts apply state law when the question is whether a debtor has entered a valid settlement agreement. *See Houston v. Holder (In re Omni Video, Inc.)*, 60 F.3d 230, 232 (5th Cir. 1995) ("Federal bankruptcy law fails to address the validity of settlements and this gap should be filled by state law."); *De La Fuente v. Wells Fargo Bank, N.A. (In re De La Fuente)*, 409 B.R. 842, 845 (Bankr. S.D. Tex. 2009) ("Where the United States is not a party, it is well established that settlement agreements in pending bankruptcy cases are considered contract matters governed by state law.").

23.    The rule is no different for third-party releases. They are separate agreements between non-debtors governed by state law. Unlike a bankruptcy discharge, which "is an involuntary release by operation of law," "[i]n the case of voluntary releases, the nondebtor is released from a debt, not by virtue of 11 U.S.C. § 1141(b), but because the *creditor agrees to do so*." *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 503, 507 (Bankr. D.N.J. 1997) (emphasis in original). *See also Continental Airlines Corp. v. Air Line Pilots Assn., Int'l (In re Continental Airlines Corp.)*, 907 F.2d 1500, 1508 (5th Cir. 1990) (holding that for settlement provisions "unrelated to substantive provisions of the Bankruptcy Code," "the settlement itself is the source of the bankruptcy court's authority"). Thus, "the Bankruptcy Code has not altered the contractual obligations of third parties, the parties themselves have so agreed." *Arrowmill*, 211 B.R. at 507.

24.    Because the Bankruptcy Code does not authorize the imposition of an involuntary release, *Purdue*, 603 U.S. at 209, 227, the release must be consensual under non-bankruptcy law. There is no Bankruptcy Code provision that preempts otherwise applicable state contract law governing releases between non-debtors. *See, e.g., Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 416 (2010) (plurality) ("For where neither the Constitution, a treaty, nor a statute provides the rule of decision or authorizes a federal court to supply one, 'state law must

govern because there can be no other law.'") (quoting *Hanna v. Plumer*, 380 U.S. 460, 471-72 (1965)); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). Section 105(a), for example, "serves only to carry out authorities expressly conferred elsewhere in the code." *Purdue*, 603 U.S. at 216 n.2 (quotation marks omitted). But the Code does not confer any authority to impose a release of claims between non-debtors that would not be valid under state law. The Bankruptcy Code does not define a "consensual release." *See* 11 U.S.C. § 101. "There is no rule that specifies an 'opt out' mechanism or a 'deemed consent' mechanism" for third-party releases in chapter 11 plans. *In re Chassix Holdings, Inc.*, 533 B.R. 64, 78 (Bankr. S.D.N.Y. 2015). And no Code provision authorizes bankruptcy courts to deem a non-debtor to have consented to release claims against other non-debtors where such consent would not exist as a matter of state law.

25.   Some courts have held that federal rather than state law applies to determine whether a third-party release is consensual. But because there is no applicable Code provision, whether a non-debtor has consented to release another non-debtor is not, as one court concluded, a "matter of federal bankruptcy law." *In re Spirit Airlines, Inc.*, No. 24-11988, 2025 WL 737068, at *18, *22 (Bankr. S.D.N.Y Mar. 7, 2025); *see also In re Robertshaw US Holding Corp.*, 662 B.R. 300, 323 (Bankr. S.D. Tex. 2024) (relying on caselaw in the district rather than any provision of the Bankruptcy Code). Absent express authority in the Code, federal courts cannot simply make up their own rules for when parties have given up property rights by releasing claims. Bankruptcy courts cannot "create substantive rights that are otherwise unavailable under applicable law," nor do they possess a "roving commission to do equity." *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003) (quotation omitted). Indeed, nearly a hundred years ago, the

Supreme Court rejected the notion that federal courts can displace state law as "an unconstitutional assumption of powers by the Courts of the United States which no lapse of time or respectable array of opinion should make us hesitate to correct." *Erie*, 304 U.S. at 79 (cleaned up); *accord Rodriquez v. FDIC*, 589 U.S. 132, 133 (2020) (holding state law applies to determine allocation of federal tax refund resulting from consolidated tax return).  Courts thus may not invent their own rule for when parties may be "deemed" to have given up property rights by releasing claims.

26.     Accordingly, state-law contract principles govern whether a third-party release is consensual.  *See, e.g.*, *Patterson v. Mahwah Bergen Retail Grp., Inc.,* 636 B.R. 641, 684-85 (E.D. Va. 2022) (describing bankruptcy courts in the District of New Jersey as "look[ing] to the principles of contract law rather than the bankruptcy court's confirmation authority to conclude that the validity of the releases requires affirmative consent"); *In re Smallhold, Inc.*, 665 B.R. 704, 720 (Bankr. D. Del. 2024) (recognizing that "some sort of affirmative expression of consent that would be sufficient as a matter of contract law" is required); *In re SunEdison, Inc.,* 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017) ("Courts generally apply contract principles in deciding whether a creditor consents to a third-party release."); *Arrowmill*, 211 B.R. at 506, 507 (explaining that a third-party release "is no different from any other settlement or contract" and thus "the validity of the release . . . hinge[s] upon principles of straight contract law or quasi-contract law rather than upon the bankruptcy court's confirmation order") (internal quotation marks omitted) (alterations in original).  Because "'nothing in the bankruptcy code contemplates (much less authorizes it)' . . . any proposal for a non-debtor release is an ancillary offer that becomes a contract upon acceptance and consent." *In re Tonawanda Coke Corp*., 662 B.R. 220, 222 (Bankr. W.D.N.Y. 2024) (quoting *Purdue*, 603 U.S. at 223).  And "any such consensual agreement would be governed by state law." *Id.*

27.     Even if federal law applied, however, it would not lead to a different result.  That is because "federal contract law is largely indistinguishable from general contract principles under state common law."  *Young v. BP Expl. & Prod., Inc. (In re Deepwater Horizon)*, 786 F.3d 344, 354 (5th Cir 2015) (cleaned up).  *See also Deville v. United States*, 202 F. App'x 761, 763 n.3 (5th Cir. 2006) ("The federal law that governs whether a contract exists 'uses the core principles of the common law of contracts that are in force in most states.' . . . These core principles can be derived from the Restatements.") (quoting *Smith v. United States*, 328 F.3d 760, 767 n.8 (5th Cir. 2003)).

### B.  Under State Law, Silence Is Not Acceptance

28.     The "general rule of contracts is that silence cannot manifest consent."  Debtors bear the burden to prove that their plan is confirmable.  *In re American Cap. Equip., LLC*, 688 F.3d 145, 155 (3d Cir. 2012).  They have not met this burden because they have failed to establish that the third-party release is consensual under applicable state law.

29.     Under Delaware and New York law, like in other states, an agreement to release claims—like any other contract—requires a manifestation of assent to that agreement.[2]  *See, e.g.*, RESTATEMENT (SECOND) OF CONTRACTS § 17(1) ("[T]he formation of a contract requires a bargain in which there is manifestation of mutual assent to the exchange and a consideration."); *In re Hertz Corp.*, 120 F.4th 1181, 1192 (3d Cir. 2024) ("Contract law does not bind parties to promises they

---

[2] The Plan provides that its construction and enforcement is governed by the laws of the State of New York [Plan § 12.6 ("Governing Law")].  Although debtors cannot choose the law to apply to contracts between non-debtors, no one has suggested there would be a different outcome under the law of any other jurisdiction, so no choice of law is required.  *See, e.g., In re Syntax-Brillian Corp.*, 573 F. App'x 154, 162 (3d Cir. 2014).  Thus, the statement of one bankruptcy court that there is "no answer" to the choice of law question, *In re LaVie Care Cntrs., LLC*, No. 24-55507, 2024 WL 4988600, at *14 (Bankr. N.D. Ga. Dec. 5, 2024), is not true.  Even if a choice of law had to be made, if such a choice is made difficult by the breadth of the third-party release that may be a reason not to approve the plan, but it is not an excuse to flout the court's obligation to make a choice of law if there is an actual conflict of laws.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985); *Cf. Patterson v. Mahwah Bergen Retail Grp., Inc.*, 636 B.R. 641, 669 (E.D. Va. 2022).

did not make."); *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1229 (Del. 2018)

("Under Delaware law, overt manifestation of assent . . . controls the formation of a contract.")

(cleaned up); *Albrecht Chem. Co. v. Anderson Trading Corp.*, 298 N.Y. 437, 440, 84 N.E.2d 625,

626 (1949) ("where the recipient of an offer is under no duty to speak, silence–when not

misleading, may not be translated into acceptance merely because the offer purports to attached

that effect to it.").

30.     Thus, "[o]rdinarily[,] an offeror does not have power to cause the silence of the

offeree to operate as acceptance."  RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a (1981).

*See also Reichert v. Rapid Investments, Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022) ("[T]he offeror

cannot prescribe conditions so as to turn silence into acceptance."); *Jacques v. Solomon & Solomon

P.C.*, 886 F. Supp. 2d 429, 433 n.3 (D. Del. 2012) ("Merely sending an unsolicited offer does not

impose upon the party receiving it any duty to speak or deprive the party of its privilege of

remaining silent without accepting."); *Elfar v. Wilmington Trust, N.A.*, No. 20-0273, 2020 WL

7074609, at *2 n.3 (E.D. Cal. Dec. 3, 2020) ("The court is aware of no jurisdiction whose contract

law construes silence as acceptance of an offer, as the general rule."), *adopted by* 2020 WL

1700778, at *1 (E.D. Cal. Feb. 11, 2021); *accord* 1 Corbin on Contracts § 3.19 (2018); 4 Williston

on Contracts § 6:67 (4th ed.).

31.     There are only very limited exceptions to the "general rule of contracts . . . that

silence cannot manifest consent."  *Patterson*, 636 B.R. at 686; *see also, e.g.*, *McGurn v. Bell

Microproducts, Inc.*, 284 F.3d 86, 90 (1st Cir. 2002) (recognizing "general rule" that "silence in

response to an offer . . . does not constitute acceptance of the offer").  "[T]he exceptional cases

where silence is acceptance fall into two main classes: those where the offeree silently takes

offered benefits, and those where one party relies on the other party's manifestation of intention

that silence may operate as acceptance.  Even in those cases the contract may be unenforceable under the Statute of Frauds."  RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a.

32.     But absent such extraordinary circumstances, "[t]he mere receipt of an unsolicited offer does not impair the offeree's freedom of action or inaction or impose on him any duty to speak."  *Id.*  And "[t]he mere fact that an offeror states that silence will constitute acceptance does not deprive the offeree of his privilege to remain silent without accepting."  *Id.* § 69, cmt. c; *see also Patterson*, 636 B.R. at 686 (explaining how contract law does not support deeming consent based upon a failure to opt out); *Jacques*, 886 F. Supp. 2d at 433 n.3.

### C.  Failing to Opt Out Does Not Provide the Required Affirmative Consent

33.     The Debtors' Plan imposes a third-party release on all parties who vote to accept the Plan and who do not check a box on the ballot indicating that they have opted out of those releases.[3]   In other words, Debtors purport to impose an otherwise non-existent duty to speak on these claimants regarding the offer to release non-debtors, and their silence—the failure to opt out—is "deemed" consent.  But under black-letter law that silence is not acceptance of the offer to release non-debtors. *See, e.g.*, *Patterson*, 636 B.R. at 688 ("Whether the Court labels these 'nonconsensual' or based on 'implied consent' matters not, because in either case there is a lack of sufficient affirmation of consent.").

34.     A case from the Ninth Circuit illustrates the point.  *In Norcia v. Samsung Telecom. Am., LLC*, 845 F.3d 1279, 1286 (9th Cir. 2017), cited with approval by the Third Circuit in *Noble v. Samsung Elec. Am., Inc.*, 682 F. App'x 113, 117-118 (3d Cir. 2017), and the Fifth Circuit in *Imperial Ind. Supply Co. v. Thomas*, 825 F. App'x 204, 207 (5th Cir. 2020), the court held that a

---

[3] The Plan is not clear on what, if any, impact the third-party release has on those who reject the Plan, but the Plan suggests that these parties will not have the release imposed upon them, nor will they be asked to opt in to such release.  The Debtors should clarify if that is not the case prior to any solicitation.

failure to opt out did not constitute consent to an arbitration agreement. A consumer bought a Samsung phone and signed the Verizon Wireless Customer Agreement. *Norcia*, 845 F.3d at 1282. The phone came with a Samsung warranty brochure that contained an arbitration provision but gave purchasers the ability to opt out of it without affecting the warranty coverage. *Id*. The customer did not opt out. *Id*. When the customer later sued Samsung, Samsung argued that the arbitration provision applied. *Id*. at 1282-83.

35.    The Ninth Circuit in *Norcia* held that the customer's failure to opt out did not constitute consent to arbitrate. The court applied the "general rule," applicable under California law, that "silence or inaction does not constitute acceptance of an offer." *Norcia*, 845 F.3d at 1284 (quotation marks omitted); accord *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1229 (Del. 2018) *Albrecht Chem. Co. v. Anderson Trading Corp.*, 298 N.Y. 437, 440, 84 N.E.2d 625, 626 (1949). The customer did not agree to arbitrate because he did not "sign the brochure or otherwise act in a manner that would show his intent to use his silence, or failure to opt out, as a means of accepting the arbitration agreement." *Norcia*, 845 F.3d at 1285 (quotation marks omitted). This was true, even though the customer did take action to accept the offered contract from Verizon Wireless. "Samsung's offer to arbitrate all disputes with [the customer] cannot be turned into an agreement because the person to whom it is made or sent makes no reply, even though the offer states that silence will be taken as consent, unless an exception to this general rule applies." *Id*. at 1286 (quotation marks and citation omitted).

36.    The Ninth Circuit held that none of the exceptions to this rule applied. *Norcia*, 845 F.3d at 1284-85. There was no state law imposing a duty on the customer to act in response to the offer, the parties did not have a prior course of dealing that might impose such a duty, and the customer did not retain any benefits by failing to act given that the warranty applied whether or

not he opted out of the arbitration provision. *Id*. at 1286.

37.   Here, too, Debtors' creditors who have voted in favor of the Plan but not opted out have not signed an agreement to release the non-debtor releasees nor acted in any other manner to suggest that their silence manifests an intention to accept an offer to release the non-debtors.

### 1. *Voting on a plan plus a failure to opt out does not manifest consent to a non-debtor release.*

38.   The Plan provides that a party who votes in favor of the Plan but fails to mark the "opt-out" box on the ballot has consented to the non-debtor releases. Voting to accept a plan without checking an opt-out box does not constitute the affirmative consent necessary to reflect acceptance of an offer to enter a contract to release claims against non-debtors. *See* RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a (1981). Voting to approve a plan plus a failure to opt out of a third-party release is nothing more than silence with respect to the offer to release claims against non-debtors. The act of voting on a chapter 11 plan without opting out is not conduct that "manifest[s] [an] intention that silence may operate as acceptance" of a proposal that the creditor release claims against non-debtors. RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a. Impaired creditors have a federal right under the Bankruptcy Code to vote on a chapter 11 plan. 11 U.S.C. § 1126(a). Merely exercising that right does not manifest consent to release claims against non-debtors.

### 2. *Smallhold's conclusion that voting plus a failure to opt out equals consent to a non-debtor release is incorrect.*[4]

39.   One bankruptcy court has found that, in at least some circumstances, a failure to opt out constitutes consent when a claimant votes—either to accept or reject a plan—but not if they do not vote. *See Smallhold*, 665 B.R. at 723. Although stating it was applying "ordinary

---

[4] The Plan's definition of "Releasing Parties" does not include entities who vote to reject the Plan.

contract principles," *id*. at 724, the *Smallhold* decision did not correctly apply those principles to the question of when silence can constitute consent for those who vote on the plan.

40.     As an initial matter, the *Smallhold* court correctly recognized that a failure to opt out by those who do not vote does not constitute consent. *See Smallhold*, 665 B.R. at 721-23. The *Smallhold* court elucidated the point with a hypothetical: a chapter 11 plan requiring that any creditor that did not "check an 'opt out' box on a ballot . . . make a $100 contribution to the college education fund for the children of the CEO of the debtor." *Id*. at 710. As the court observed, "no court would find that in these circumstances, a creditor that never returned a ballot could properly be subject to a legally enforceable obligation to make the $100 contribution." *Id*. None of the cases that allow imposing a non-debtor release based on a failure to opt out "provides any limiting principle that would distinguish the third-party release from the college education fund plan." *Id*.

41.     Contract law likewise does not support imputing consent to a third-party release based on a failure to opt-out by those who vote on the plan. Nevertheless, the *Smallhold* court incorrectly reasoned that because the act of voting on a debtor's plan is an "affirmative step" taken after notice of the third-party release, failing to opt out binds the voter to the release. *Smallhold*, 665 B.R. at 717, 723-724. But while voting is an "affirmative step" with respect to the debtor's plan, it is not a "manifestation of intention that silence may operate as acceptance" of a third-party release. RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a (1981) (emphasis added).

42.     "The mere receipt of an unsolicited offer does not impair the offeree's freedom of action or inaction," RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a—in this case, the federal right to vote on a chapter 11 plan. 11 U.S.C. § 1126(a). Nor does it "impose on him any duty to speak," RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a, such as by checking an opt out box. Voting on a plan while failing to opt out thus cannot be equated with affirmative

conduct manifesting consent to the non-debtor release. Just like the hypothetical creditors in *Smallhold* could not be forced to contribute $100 to a college fund to benefit the debtor's CEO's children merely because they failed to return a ballot with an "opt out" box, *Smallhold*, 665 B.R. at 710, creditors who cast such a ballot should not be forced to make such a contribution merely because they failed to check that "opt out" box.

43.     State law affords no basis to conclude that consent to release third-party claims (which are governed by nonbankruptcy law) can properly be inferred from a party's failure to check an opt-out box on a ballot expressing its views about the proposed treatment of its claims against the debtor (governed by bankruptcy law). *See supra* II. As a result, the "general proposition" that *Smallhold* recognized continues to apply: "creditors must affirmatively express consent to the release in order to be bound by it." *Id*. at 717 (emphasis added).

44.     Notably, the Ninth and Second Circuit cases cited by *Smallhold* do not support its conclusion that the act of voting on a chapter 11 plan while remaining silent regarding the non-debtor release constitutes consent. *Smallhold*, 665 B.R. at 724 n.60 (citing *Berman v. Freedom Financial Network*, 30 F.4th 849, 856 (9th Cir. 2022); *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 75 (2d Cir. 2017)). Those cases emphasize that notice to the offeree is a prerequisite to consent "regardless of apparent manifestation of his consent." *Meyer*, 868 F.3d at 74 (internal quotation marks omitted; emphasis added). But while notice of a contractual term is necessary for consent, notice alone is not sufficient. *See, e.g., Meyer*, 868 F.3d at 74; *Norcia*, 845 F.3d at 1284; RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a. There must also be a manifestation of an intent to accept the offer. *See, e.g., Berman*, 30 F.4th at 85; *Norcia*, 845 F.3d at 1284; RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a. For the reasons discussed above, the failure to opt out of the third-party release is not such a manifestation of consent.

### D. The Plan Cannot Be Confirmed Because There Is No Authority for the Injunction Against Bringing Claims Against Non-Debtors Or For a Discharge

45.     This Court also may not approve the injunction at Plan § 8.7 enforcing the release by parties in interest against non-debtors as it applies to either the third-party release or the exculpation.   The Court also may not approve the discharge provision for the Debtors, because they are not entitled to such.

46.     Even if the third-party release was consensual, that would not mean that the court has authority to impose an injunction.  An injunction is critically different from a consensual non-debtor release.  The legal effect of a consensual release is based on the parties' agreement.  *See Continental Airlines Corp. v. Air Line Pilots Assn., Int'l (In re Continental Airlines Corp.)*, 907 F.2d 1500, 1508 (5th Cir. 1990) (holding that for settlement provisions "unrelated to substantive provisions of the Bankruptcy Code," "the settlement itself is the source of the bankruptcy court's authority").  The non-debtor parties themselves are altering their relations; the court is not using its judicial power to effect that change.  An injunction, by contrast, relies on the court's power to enter orders binding on parties.  The court must therefore have both constitutional and statutory authority to enter an injunction.  And, once such jurisdiction and authority are established, the court still must determine that an injunction is warranted.

47.     There is no authority in the Bankruptcy Code for the injunction barring claims between non-debtors.  Debtors cannot rely on section 105(a) for this authority because it "serves only to carry out authorities expressly conferred elsewhere in the code."  *Purdue*, 603 U.S. at 216 n.2 (quotation marks omitted).  But nothing in the Code authorizes the court to use its judicial power to bar claims between non-debtors.  *Id*. at 227.

48.     Such an injunction is not warranted by the traditional factors that support injunctive

relief.  A party seeking an injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'") (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)); *id.* (noting that an injunction is an "extraordinary remedy").

49.     Debtors have not shown that any of these factors are met.  There is no imminent threat that anyone is going to bring suit on a released claim.  And if a released claim is brought, the release may be asserted as an affirmative defense.  An injunction "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat."  *Lyons*, 461 U.S. at 111 (cleaned up).  Further, the injunction harms those bound by it because it precludes them from challenging the applicability or enforceability of the third-party release (e.g., based on mistake or lack of capacity) under applicable non-bankruptcy law.

50.     Similarly, to the extent that applicable law authorizes exculpation beyond 11 U.S.C. § 1125(e), there is no statutory authority in the Bankruptcy Code that justifies an injunction to enforce an exculpation, and the Debtors have shown no need for an injunction to prevent "irreparable harm" to either the estates or the released parties.

51.     Finally, the Plan provides that it does not discharge the Debtors.  Plan § 8.7 ("For the avoidance of doubt, pursuant to section 1141 (d)(3) of the Bankruptcy Code, confirmation of

the Plan will not discharge the Debtors"). But the Plan would create a permanent injunction protecting the Debtors, their estates, and the post-effective Wind-Down Debtors from claims that are released or exculpated under the Plan. *See id.* If the Debtors are not eligible for a discharge, then they are not eligible for a discharge injunction. *See* 11 U.S.C. 542(a)(2) ("A discharge in a case under this title…operates as an injunction against the continuation of an action, employment of process, or an act, to collect, recover or offset" any debt discharged under section 1141).

### E.  *The Debtor Release Should Contain an Exception for Bad Acts.*

52.  The Plan provides for the Debtors and their estates to provide broad releases of all of the Released Parties, which include the pre- and post-petition lender, Debtors, Noteholders, the Debtors' present and former directors and officers, employees, agents, managers, members, and professionals. The release covers not just actions and omissions relating to the bankruptcy cases but also includes any act or omission that took place prior to the Effective Date "in connection with or related to any of the Debtors (including the management, ownership, or operation thereof, including as such entities existed prior to or after the Petition Date)." Plan, § 8.3. Additionally, as noted above, given that they are "Released Parties," the Debtors are included in the third-party release provision.

53.  The five factors set forth in *In re Zenith Electronics Corp.,* 241 B.R. 92, 110 (Bankr. D. Del 1999) and *In re Master Mortgage Investment Fund, Inc.,* 168 B.R. 930, 937-38 (Bankr. W. D. Mo. 1994), have been employed by courts to determine whether, notwithstanding § 524(e) of the Code, a plan may provide for releases by debtors of non-debtor entities. *See Tribune* 464 B.R. at 186; *Washington Mut.*, 442 B.R. at 346; *In re Spansion, Inc.* 426 B.R. 114, 142-43 n. 47 (Bankr. D. Del. 2010); *In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004). The five factors are:

    a.   identity of interests between debtor and non-debtor releasee, so that a suit against the non-debtor will deplete the estate's resources (e.g., due to a debtor's indemnification of a non-debtor);

    b.   substantial contribution to the plan by non-debtor;

    c.   necessity of release to the reorganization;

    d.   overwhelming acceptance of plan and release by creditors; and

    e.   payment of all or substantially all of the claims of the creditors and interest holders under the plan.

*Tribune*, 464 B.R. at 186 (citing *Washington Mut.*, 442 B.R. at 346). "The factors are neither exclusive nor conjunctive requirements, but simply provide guidance in the Court's determination of fairness." *Tribune*, 464 B.R. at 186 (citing *Washington Mutual*, 442 B.R. at 346). The Debtors have the burden to establish whether the *Zenith/Master Mortgage* factors have been met as to each of the non-debtors who are the beneficiaries of the Debtor Releases.

54. The Debtor Release has no exception for known or unknown claims of actual fraud, willful misconduct, criminal acts or gross negligence. The lack of such exceptions is objectionable for at least three reasons. First, non-debtor parties who are to receive a release from the Debtors should not be released from claims as to which a debtor could not be discharged under section § 523(a) of the Bankruptcy Code. *See* 11 U.S.C. § 523(a)(2, 4, 6) (barring claims of fraud and willful misconduct from discharge).

55. Second, the Debtors are releasing, among others, all of their current and former directors, officers and employees from all claims, whether known or unknown. If, for example, it is later learned that a current or former officer or employee of one the Debtors misappropriated Debtor funds at any time up to the Effective Date, it appears that any claim based on such misappropriation would be released under the Plan.

56.     Third, the Debtor Release releases claims against certain fiduciaries of the estate, such as those of the Debtors' directors and officers who served during these cases, and professionals the Debtors retained in these cases.  To the extent that applicable law permits exculpation beyond that provided in 11 U.S.C. § 1125(e), such exculpation must carve out claims of intentional misconduct and gross negligence, as the Exculpation provision in the Plan does. However, because the Debtor Release does not have carve-outs for intentional misconduct and gross negligence, these estate fiduciaries would obtain immunity from such claims even though such immunity is not permitted under the Third Circuit's ruling in *PWS Holding*.  As recognized by this Court in *Washington Mutual*, the receipt of Debtor releases by exculpated parties is "unnecessary, duplicative and ***exceed[s] the limits of what they are entitled to receive***" under the exculpations.  *Washington Mut.,* 442 B.R. at 350 (emphasis added).

57.     Similarly, in *Tribune*, this Court rejected the release by the debtors of their Related Persons, which included all the debtors' "current and former officers, directors, employees, attorneys, advisors and professionals."  464 B.R. at 187.  Applying the *Zenith/Master Mortgage* factors, the Court stated:

> There is no basis in the record to support any finding that any "substantial contribution" has been made by the Debtors' Related Persons or that a release is necessary to the reorganization. Despite acceptance by a majority of creditors, I cannot conclude that the Plan's release of the Debtors' Related Persons, based on this record, would be fair.

*Id*. at 188.

58.     In *In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001), the Court also rejected the debtors' proposed releases of their officers, directors, employees and professionals, holding that:

> [T]he release of the debtors' pre-petition claims against the officers, directors, employees and professionals of the debtors is

> beyond the ***post-petition focus*** of the *PWS Holding Corporation*
> [228 F.3d 224 (3d Cir. 2000)] release clause. . . . As in *Zenith*, the
> officers and directors of the debtors no doubt made meaningful
> contribution to the reorganization by designing and implementing
> the operational restructuring of the companies, and negotiating the
> financial restructuring with parties in interest. However, the
> officers, directors and employees have been otherwise
> compensated for their contributions, and the management
> functions they performed do not constitute contributions of
> "assets" to the reorganization.

*Genesis,* 266 B.R. at 606–07 (emphasis added).

59.     Because an evidentiary predicate is necessary to approve the Debtor Releases, the

U.S. Trustee reserves argument on this issue until the record at the confirmation hearing is closed.

At a minimum, however, the Plan cannot be confirmed unless exceptions are added to the Debtor

Release for known and unknown claims arising from fraud, intentional misconduct, criminal acts

and gross negligence.

### F.   The Exculpation Provision is Impermissibly Broad Beyond Circuit Precedent

60.     To the extent exculpation is permissible beyond the provisions of section 1125(e)

of the Bankruptcy Code, this Circuit has only approved post-petition, pre-effective date

exculpations that are limited to estate fiduciaries.  First, the Plan's Exculpation Provision is

inconsistent with controlling case law because it includes persons and entities that are not estate

fiduciaries as well as entities that do not even exist until after the Effective Date.  Although the

Exculpation Provision is limited to those actions arising prior to the Effective Date, the inclusion

of the "Wind-Down Debtor," the officers and directors of the "Plan Administrator," and successors

or assigns, and other entities that will not come into being until after the Effective Date raises clear

concerns that it is intended to stretch past that time.  Second, the provision is also inconsistent with

Third Circuit law because it is not temporally cabined to the post-petition, pre- Effective Date

period.  The exculpation provision specifically includes "any liability to any Entity for any claims

or causes of action arising prior to or on the Effective Date". Plan § 8.5. For all these reasons, the Plan should not be confirmed if the provision is not modified.

61. The Third Circuit in *In re PWS Holding Corporation*, 228 F.3d 224 (3d Cir. 2000) articulated the standard of liability to which estate fiduciaries are held in a chapter 11 case in a plan. *See id*. at 246. This Court has consistently interpreted *PWS Holding Corporation* and uniformly held that a party's entitlement to exculpation is based upon its role or status as an estate fiduciary. *See In re Washington Mut., Inc*., 442 B.R. 314, 350-51 (Bankr. D. Del. 2011) (holding that an "exculpation clause must be limited to the fiduciaries ***who have served during the chapter 11 proceeding***: estate professionals, the Committees and their members, and the Debtors' directors and officers.") (emphasis added); *accord In re Tribune Co.*, 464 B.R. 126, 189 (Bankr. D. Del. 2011); *In re Indianapolis Downs, LLC*., 486 B.R. 286, 306 (Bankr. D. Del. 2013); *In re PTL Holdings LLC*, No. 11-12676 (BLS), 2011 WL 5509031, at *38 (Bankr. D. Del. Nov. 10, 2011) (Shannon, J.) ("courts have permitted exculpation clauses insofar as they merely state[] the standard to which ... estate fiduciaries [a]re held in a chapter 11 case. That fiduciary standard, however, applies only to estate fiduciaries, no one else.") (internal quotations omitted).

62. Because exculpation is limited to estate fiduciaries who served in the bankruptcy case, they must also be limited to actions and omissions taking place during the bankruptcy case. *See Washington Mut.*, 442 B.R. at 350 (exculpations cover "actions in the bankruptcy case") (citing *PWS*, 228 F.3d at 246).

63. In *In re Mallinckrodt PLC*, 639 B.R. 837 (Bank. D. Del. 2022), this Court recently held that exculpation "only extends to conduct that occurs between the Petition Date and the effective date," and ordered the debtors to strike contrary language from the exculpation provision. *Id.* at 883.

64.     The Plan impermissibly provides for the inclusion of certain entities as "Exculpated Parties" and their Related Parties who are not fiduciaries as required by established precedent articulated above.  The definition of Related Parties includes "members, managers, limited partners, general partners, equity holders…predecessors, participants, successors, and assigns".  Plan § 1.101.  This vague, all-encompassing description of participants in the chapter 11 process arguably includes non-fiduciaries – e.g., advisors, consultants, and other professionals.

65.     Additionally, to the extent that exculpation is permitted beyond the scope of section 1125(e) of the Bankruptcy Code, the Plan's exculpation provision neglects to exclude protection for willful misconduct by the Exculpated Parties.  The exculpation provision reviewed by the Third Circuit in *PWS Holding* contains no protection for willful misconduct.

66.     Finally, the last sentence of the Plan's exculpation provision exceeds the scope of Code section 1125(e).  That sentence provides:

> The Exculpated Parties have, and upon consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Plan § 8.5.  Section 1125(e) of the Bankruptcy Code states:

> A person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title, or that participates, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan, of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities.

The definition of "Exculpated Parties" in the Plan contains a number of entities that neither

"solicited" acceptance or rejection of a plan or participated "in the offer, issuance, sale or purchase of a security, offered or sold under the plan …." This Court cannot "deem" protection for entities in connection with the solicitation of votes on a plan or the offer, issuance, sale, or purchase of securities inconsistent with limitations expressly set by Congress under section 1125(e).

67.     Consequently, unless the Plan is revised to (i) clarify that the exculpation is limited to the Debtors, their officers and directors, and estate professionals employed by order of this Court and to the period between the Petition Date and the Effective Date in accordance with Circuit precedent and (ii) address the other points identified above, the Plan should not be confirmed.

### G.  *Rule 9019 Cannot Be Used to Evade* **Purdue**

68.     Given that it is a rule, Bankruptcy Rule 9019(a) cannot be read as superseding a party's right to consent as defined by state law. And Rule 9019(a) does not purport to do anything of the sort.

69.     Bankruptcy Rule 9019(a) provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). "In making its evaluation, the court must determine whether 'the compromise is fair, reasonable, and in the best interest of the estate.'" *In re Washington Mut., Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011) (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)). The purpose of Bankruptcy Rule 9019 is thus not to determine the existence or validity of consent to a proposed settlement (which remains a question of state contract law), but instead to ensure that the proposed settlement is fair.

70.     Nothing in Bankruptcy Rule 9019 permits bankruptcy courts to impose nonconsensual non-debtor releases. The Rule is limited to approvals of a debtor's "compromise or settlement." Fed. R. Bankr. P. 9019(a). But a debtor lacks standing to pursue its creditors'

direct claims against third parties. *See Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 426-29 (1972). Moreover, a compromise or settlement is, by definition, consensual. *See* BLACK'S LAW DICTIONARY (10th ed. 2014) (emphasis added) (defining a "settlement" as "an agreement ending a dispute or lawsuit," and defining an "agreement" as "a mutual understanding between two or more persons about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by two or more persons") (emphasis added). By its plain terms, Bankruptcy Rule 9019 does not authorize the imposition of non-consensual releases between non-debtors.

71. Bankruptcy Rule 9019 could not authorize the imposition of nonconsensual releases, even if, counterfactually, it purported to do so. Because 28 U.S.C. § 2075 commands that Bankruptcy Rules shall not abridge substantive rights, Bankruptcy Rule 9019 cannot authorize bankruptcy courts to approve something the Supreme Court held in Purdue no Bankruptcy Code provision permits. *Purdue*, 603 U.S. at 227, 144 S. Ct. at 2088 ("[T]he bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants.").

72. Nor can such a "settlement" be included in a chapter 11 plan. A plan and a settlement are not one and the same thing. What may be permissible under a negotiated settlement agreement that is considered "fair, reasonable, and in the best interest of the estate" is different than what may be permissible under a plan, which is subject to the requirements of sections 1123 and 1129 of the Bankruptcy Code. *See, e.g., Tribune Co.*, 464 B.R. at 176 (concluding at confirmation stage that a negotiated settlement could be approved because it was fair, reasonable and in the best interest of the Debtors' estates and making an express finding that the settlement

was properly part of the plan pursuant to section 1123(b)(3)(A)).  Section 1123(b)(3)(A) of the Bankruptcy Code allows a plan proponent to propose "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." 11 U.S.C. § 1123(b)(3)(A) (emphasis added). Thus, under section 1123(b)(3)(A), the Plan may only provide for the settlement of claims or interests belonging to the Debtor or the estate—not the settlement of claims held by third parties. *Purdue*, 603 U.S. at 219-20, 144 S. Ct. at 2084 ("[P]recisely nothing in § 1123(b) suggests those claims can be bargained away without the consent of those affected, as if the claims were somehow Purdue's own property.").

## **RESERVATION OF RIGHTS**

73.    The U.S. Trustee leaves the Debtors to their burden of proof and reserves any and all rights to (i) amend or supplement this Objection and (ii) conduct discovery.

**WHEREFORE**, the U.S. Trustee requests that this Court enter an order (i) denying confirmation of the Plan and (ii) granting such other relief that the Court deems just and proper.

Dated: May 14, 2025
Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS 3 & 9**

By: */s/ Jonathan W. Lipshie*
　　　Jonathan W. Lipshie
　　　Trial Attorney
　　　United States Department of Justice
　　　Office of the United States Trustee
　　　J. Caleb Boggs Federal Building
　　　844 King Street, Suite 2207, Lockbox 35
　　　Wilmington, Delaware 19801
　　　Phone: (202) 567-1124
　　　Fax:　(302) 573-6497
　　　Email: jon.lipshie@usdoj.gov