# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AZZUR GROUP HOLDINGS LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25–10342 (KBO)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 410**<br>**Hearing Date: May 19, 2025 at 10:00 am. (ET)**<br>**Objection Deadline: May 14, 2025 at 4:00 p.m. (ET)** |

## OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND JOINT CHAPTER 11 PLAN OF AZZUR GROUP HOLDINGS LLC AND ITS AFFILIATED DEBTORS

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors in possession (the "Debtors") files this objection (the "Objection") to the Debtors' *First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Azzur Group Holdings LLC and Its Affiliated Debtors* [Docket No. 531] (the "Combined DS/Plan"), filed on May 12, 2025.[2] In support of this Objection, the Committee respectfully states as follows:

### PRELIMINARY STATEMENT

1. This is a straightforward liquidating chapter 11 case in which the Debtors have sold substantially all of their assets for the primary benefit of their prepetition and postpetition secured lender, M&T. The bulk of the sale proceeds from these asset sales have already been distributed to M&T and the Combined DS/Plan concedes that recoveries to General

---

[1] A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, may be obtained on the website of the Debtors' claims and noticing agent at https://www.cases.stretto.com/Azzur. The Debtors' headquarters and the mailing address for the Debtors is 330 South Warminster Road, Suite 341, Hatboro, PA 19040.

[2] Capitalized term used but not otherwise defined herein shall have the meanings ascribed to them in the Combined DS/Plan.

Unsecured Claims are estimated to be approximately 2.1%.[3] The primary remaining unliquidated estate assets are the Debtors' Causes of Action that have not been sold or transferred to the third-party purchasers of the Debtors' assets. As the Court is aware, the Committee announced a settlement with M&T on the record at the hearing on April 11, 2025, to provide for, *inter alia,* (a) a substantial waiver of M&T's deficiency claim, (b) the release of its liens on estate avoidance actions and claims against the Debtors' officers and directors, and (c) the funding of an aggregate sum of $1.625 million to pay Committee professional fees and serve as Distributable Cash for Class 4 General Unsecured Claims.[4] M&T also agreed not to take a position regarding the Debtors' proposed release of their insiders. Despite this agreement, the current proposed Combined DS/Plan contains many of the same roadblocks identified by the Committee in its initial plan objection,[5] which would limit the ability of any Plan Administrator to pursue Causes of Action for the benefit of unsecured creditors.

2. ***First***, the Debtors' release set forth in section 8.3 of the Combined DS/Plan gratuitously and broadly releases an array of parties from potential claims and Causes of Action, effectively removing them as potential litigation targets. The Debtors' release is problematic for several reasons. The Debtors have the burden to prove that each of the Released Parties provided a substantial contribution in consideration of their release. While this Objection highlights the infirmities with the scope of the Debtors' proposed release, it is not the Committee's evidentiary burden to show that viable estate claims exist against the Released Parties; that burden rests squarely on the Debtors. Notably, the Combined DS/Plan *still* purports

---

[3] Combined DS/Plan at 21. The Debtors project a recovery of 2.1% to Class 4 based on a preliminary estimated allocation of the $1.625 settlement million amount referenced below. The Committee reserves any and all of its rights with respect to any final allocation of this amount in advance of confirmation.

[4] Transcript of April 11, 2025, at 23-25.

[5] *See Objection of the Official Committee of Unsecured Creditors to (1) Conditional Approval of the Adequacy of Debtors' Combined Disclosure Statement and Plan and (II) Motion of Debtors for Approval of Solicitation Procedures and Related Relief* at 17-18 [Docket No. 352].

to release the Released Parties for claims and Causes of Actions arising from the Released Parties' fraud, gross negligence, and willful misconduct, even though the Committee previously flagged this issue in its initial objection to the Combined DS/Plan. There is simply no legal or evidentiary basis to release these types of intentional tort claims. The Combined DS/Plan must be amended accordingly.

3. ***Second***, there is also no evidence of a substantial contribution provided by the Released Parties[6] and their Related Parties[7] in exchange for the releases to be conferred on them, as required under applicable case law. While the Combined DS/Plan contains standard boilerplate language, such as each Released Party was a "critical participant in the Sale and Plan processes,"[8] the reality is that the individuals (at least those who were actually employed or serving on behalf of the Debtors postpetition as opposed to former insiders) were simply doing their jobs for which they were commensurately paid (in addition to collectively receiving $1,575,000 in payments for certain insiders under the postpetition Sale Incentive Plan)[9] to

---

[6] "'Released Parties' shall mean collectively, and in each case in its capacity as such: (a) the Debtors; (b) M&T; (c) all Holders of Claims or Interests that (i) vote to accept the Plan and do not opt-out of the voluntary release contained in Section 8.4 hereof by checking the opt-out box on the ballot, or (ii) abstain from voting or do not vote on the Plan and affirmatively opt-in to the releases provided under the Plan; and (d) with respect to each of the Debtors, and each of the foregoing Entities in clauses (a) through (c), the Related Parties of such Entities; *provided*, that any Holder of a Claim or Interest that votes to reject or objects to the Plan shall not be a 'Released Party.'" Combined DS/Plan § 1.104.

[7] "'Related Parties" shall mean, with respect to any (w) Person or Entity, (x) such Person's or Entity's current and former direct or indirect subsidiaries, affiliates, parent, predecessors, successors, and assigns, (y) with respect to each of the foregoing in clause (w) and (x), solely in their respective capacities as such, their current **and former directors, members, managers, officers, limited partners, general partners, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants successors, and assigns,** (z) with respect to each of the foregoing in clause (w) through (y), solely in their respective capacities as such, each of their respective current **and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, designees, trustees, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals or representatives, and any other fiduciaries to such Person or Entity with any involvement related to the Debtors**; and (zz) with respect to each of the foregoing in clauses (w) through (z), such Person's or Entity's respective heirs, executors, estates, servants, and nominees." *Id*. § 1.103 (emphasis added).

[8] *Id.* at 38.

[9] *See Order (I) Approving the Debtors' Sale Incentive Plan and (II) Granting Related Relief* [Docket No. 171].

effectuate a straightforward liquidation of the Debtors' assets for the benefit of M&T. Significantly, the Debtors have not performed any truly independent analysis of whether the Released Parties and their Related Parties conferred a substantial contribution to justify the releases. The only "investigation" performed by the Debtors involved a recent analysis by DLA Piper (counsel for the Debtors since 2023 and one of the Related Parties) at the direction of the Chief Restructuring Officer (another Related Party) to investigate potential claims and causes of action against the same parties who are also the beneficiaries of the Debtors' release.[10] The Debtors did not engage special counsel or an independent party to conduct a neutral and impartial investigation of value of the claims being released. Instead, the Debtors commissioned their own attorneys to review the propriety of potentially valuable causes of action that would otherwise inure to the direct benefit of unsecured creditors, and then DLA Piper presented its findings (which predictably identified no viable claims) to the same board members of the Debtors who are also beneficiaries of the releases.[11]

4. There is no reorganized debtor here and no continuing business to which the Released Parties contributed. It is the out-of-the-money unsecured creditors who are left holding the bag in the wake of Debtors' liquidation of their business. The Debtors' desire to release such an expansive laundry list of individuals, regardless of whether any substantial contribution was provided, is easily discerned by examining the scope of Released Parties, which includes *former* directors, managers, members, officers, limited partners, general partners, and equity holders, none of whom had anything to do with the Debtors' postpetition asset sales or chapter 11 liquidation. These parties do not belong in the definition of Released Parties or Related Parties. As to the remaining Released Parties who were employed and who participated

---

[10] Combined DS/Plan at 38.

[11] *Id.*

in the Debtors' chapter 11 cases, the Debtors must still show the requisite quid pro quo provided by each Released Party to entitle them to the proposed release. Simply doing their jobs is not sufficient consideration to obtain the release.

5. **Third,** the Plan should specifically preserve remaining estate claims against the Debtors' current and former members, officers, directors, and equity holders in the definition of Retained Actions, as well as to preserve the ability to pursue any available insurance coverage on account thereof, except for any Causes of Action that were sold to third parties pursuant to the Debtors' asset sales. Counsel for both the Committee and M&T agreed that M&T would not assert liens on claims against the Debtors' insiders.[12] The existence of insurance coverage on actionable Retained Actions may be the only meaningful source of recovery for general unsecured creditors under the Combined DS/Plan. The Combined DS/Plan should therefore contain specific language that expressly preserves the existence of Retained Actions against the Debtors' former and current insiders.

6. **Fourth**, the Committee (rather than the Debtors) should designate the Plan Administrator given that the interests of unsecured creditors are primarily at stake postconfirmation. M&T previously agreed to this point as part of its settlement with the Committee.[13] The Plan Supplement identifies Scott Rinaldi, Managing Director of Ankura Consulting Group, LLC as the Plan Administrator.[14] Ankura Consulting Group is the Debtors' financial advisor and has advised them during the pendency of these Chapter 11 Cases. The Committee has proposed that the Plan Administrator should be Jeffrey Sutton at Yip Associates ("Yip"). Yip is a leading forensic accounting and financial investigation firm with significant

---

[12] *See* Transcript of April 11, 2025, at 23-25.

[13] *See id.* at 24, lines 7-10.

[14] Combined DS/Plan § 1.89.

bankruptcy experience. Given this particular skill set, Yip is well qualified to efficiently pursue claims and Causes of Action for the benefit of unsecured creditors in a cost-efficient manner.

## BACKGROUND

A. **General Background**

7. On March 2, 2025, each Debtor filed a voluntary petition with this Court under the Bankruptcy Code.

8. The Debtors have continued in possession of their property and are operating and managing their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 cases.

9. On March 14, 2025, the Office of the United States Trustee for Region 3 appointed the Committee. On or about March 19, 2025, the Committee engaged as its counsel Pachulski Stang Ziehl & Jones LLP and Huron Consulting Group as its financial advisor.

B. **The Debtors' Combined Disclosure Statement and Plan**

10. On March 7, 2025, the Debtors filed their initial *Combined Disclosure Statement and Joint Chapter 11 Plan of Azzur Group Holding LLC and Its Affiliated Debtors* [Docket No. 85] (the "Initial Combined DS/Plan") and a related motion to for approval of, *inter alia*, solicitation and tabulation procedures, forms of ballots, and a voting record date [Docket No. 86] (the "DS/Solicitation Motion"). The DS/Solicitation Motion also sought preliminary conditional approval of the Combined DS/Plan and the scheduling of combined hearing on final approval and confirmation thereof.

11. The Committee filed an initial objection to the Combined DS/Plan on April 7, 2025 [Docket No. 352]. Following extensive discussions, the Committee and M&T agreed to settle certain (but not all) of the Committee's objections to a pending sale, the Final

DIP Order, and the Combined DS/Plan, as set forth on the transcript of the record of the hearing on April 11, 2025.[15] M&T agreed, as part of the settlement, not to take a position on the scope of the Debtors' releases in the Combined DS/Plan.

12. On April 14, 2025, the Court entered an order conditionally approving the Combined DS/Plan and granting the DS/Solicitation Motion [Docket No. 407] as set forth on in the order thereon.

13. Also on April 14, 2025, the Debtors filed the solicitation version of the Combined DS/Plan [Docket No. 410], which addressed certain, but not all, of the Committee's objections to plan confirmation.

14. On May 12, 2025, the Debtors filed their *Notice of Filing of First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Azzur Group Holdings LLC and Its Affiliated Debtors* [Docket No. 532], and amended Combined Plan/DS [Docket No. 531]. As explained below, the Committee does not agree with certain of the plan amendments contained therein. The current Combined DS/Plan purports to grant M&T, on account of the M&T Deficiency Claim, a right to participate in "recoveries from, if any, commercial tort claims, contractual claims, and other litigation rights that are Retained Actions under the Plan."[16] M&T's settlement with the Committee includes a waiver of the M&T Deficiency Claim, except with respect to recoveries on "any tort claims or contractual claims that arise out of any of the transactions that are taking place before Your Honor . . . ."[17] The Debtors now purport to extend

---

[15] As more fully set forth on the record of the April 11, 2025 transcript, M&T agreed (1) to provide an aggregate payment in the amount of $1.625 million (in addition to the $500,000 Wind Down Amount provided in the initial Combined DS/Plan) to the benefit of holders of Class 4 General Unsecured Claim and the Committee's professionals, (2) to waive its Class 4 deficiency claim except with respect to recoveries on tort and contract claims that arise out of any transactions that are taking place before the Court, and (3) that it would not have a lien on any of the Chapter 5 Causes of Action or on any estate claims relating to Causes of Action against directors and officers. Transcript of April 11, 2025, at 24-26.

[16] Combined DS/Plan at 24.

[17] Transcript of April 11, 2025, at 25, lines 12-16.

the M&T Deficiency Claim to include other litigation rights included in the Retained Actions, which include the Chapter 5 Causes of Action and insider claims that M&T already agreed to walk away from as part of its settlement with the Committee. The Combined DS/Plan also projects the distribution amount for Class 4 General Unsecured Claims at $625,000, which is highly preliminary and subject to change.

15. The Committee has attempted (unsuccessfully to date) to resolve its outstanding issues with the Debtors regarding the Combined DS/Plan. The parties have commenced discovery. The Committee's remaining confirmation issues are addressed by this Objection.

## ARGUMENT AND AUTHORITIES

16. The Committee requests that the Court deny confirmation of the Combined DS/Plan as currently proposed for the reasons explained below.

**A. The Debtors Have Not Demonstrated Any Substantial Contribution to Justify the Releases of the Released Parties and Related Parties**

17. The Combined DS/Plan contains an overly broad litany of "Released Parties" and "Related Parties" that the Debtors purport to release from claims or Causes of Action (even those arising from fraud, gross negligence, and willful misconduct). By way of example, the Debtors' overreach is so extreme that they even purport to release *former* insiders and *former* equity holders under the Combined DS/Plan. In any event, the burden is on the Debtors to demonstrate that the Released Parties and Related Parties are entitled to be released. The Debtors have utterly failed to carry this burden. The Debtors are attempting to broadly release any and all claims (including claims relating to the releasees' gross negligence, fraud, and willful misconduct) and only "carve out" claims relating to the Combined DS/Plan, the

Confirmation Order, and the Debtors' right to enforce their sale purchase agreements and sale orders.[18]

18. The Debtors fail to value the potential claims and Causes of Action being released beyond the generic conclusory statement that "there are no viable, valuable claims or causes of action that would be subject to the Debtor Release."[19] The Combined DS/Plan concedes that the Debtors' own attorneys at DLA Piper reviewed and considered "potential claims and causes of action related to transfers to insiders, the sale of the Labs business, the forbearances, and other agreements with M&T, prepetition settlements with certain trade creditors, and other acts or omissions."[20] However, no specifics are provided to support the summary conclusion that all of the claims against the Released Parties are valueless and not viable, the availability of insurance coverage for any such claims, or the basis for the Debtors' assertion that the releases are necessary to confirm the Combined DS/Plan, which is a basic liquidating plan. The Debtors also have not addressed the obvious conflicts of interest that exist in having the Debtors' own attorneys, officers, and board members reviewing and analyzing claims against themselves. The Debtors apparently did not even consider hiring independent special counsel to conduct the investigation or designating a new independent board member to supervise the investigation. And notwithstanding the Debtors' efforts to the contrary, it is not the Committee's burden to identify potential estate claims that should not be released under the Combined DS/Plan. Rather, the default position under any liquidating chapter 11 plan must be that no estate claims should be released absent a very good reason why they should be.

---

[18] Combined DS/Plan § 8.3.

[19] *Id*. at 38.

[20] *Id.*

19. Courts in this District have routinely applied a nonexclusive five-factor test set forth in *Master Mortgage* to determine whether such releases are appropriate:

    a. identity of interest between the debtor and the nondebtor such that a suit against the nondebtor will deplete assets of the estate,

    b. substantial contribution to the plan by the nondebtor,

    c. necessity of the release to the reorganization,

    d. overwhelming acceptance of the plan and release by creditors and interest holders, and

    e. payment of all or substantially all of the claims of the creditors and interest holders under the plan.

*See In re Master Mortg. Inv. Fund*, 168 B.R. 930, 935, 97 (Bankr. W.D. Mo. 1994); *see also In re Abeinsa Holding*, 562 B.R. 265, 282 (Bankr. D. Del. 2016) (applying *Master Mortgage* to debtors' proposed release of third parties); *In re Zenith Elecs.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999) (applying the five-factor *Master Mortgage* test to debtors' release of third parties); *see also In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004) (citing *Zenith* and *Master Mortgage*); *In re Genesis Health Ventures*, 266 B.R. 591, 606-07 (Bankr. D. Del. 2001) ("[T]here is no showing that the individual releasees have made a substantial contribution of assets to the reorganization. As in *Zenith*, the officers and directors of the debtors no doubt made meaningful contribution to the reorganization by designing and implementing the operational restructuring of the companies, and negotiating the financial restructuring with parties in interest. However, the officers, directors and employees have been otherwise compensated for their contributions, and the management functions they performed do not constitute contributions of 'assets' to the reorganization.").

20. Most of the *Master Mortgage* and *Zenith* factors applicable to these cases weigh in favor of *not* approving the Debtors' releases. There is no identity of interests between the Released Parties and the postconfirmation Debtors, which will be administered by the Plan Administrator. There is no "necessity" of the releases to the Released Parties because the Debtors are not reorganizing. Nor is there any payment of substantially all of the claims of General Unsecured Claims under the Combined DS/Plan. The fact that certain of the Released Parties may assert indemnification claims against the Debtors does not mean that such claims will be allowed by the Court or, even if allowed, that they would not be relegated to the status of general unsecured claims or subordinated claims. Thus, the primary analysis here is whether the Released Parties have provided a substantial contribution to the Debtors in consideration for their release. Mere participation by the Released Parties in these Chapter 11 Cases and being paid to do one's job does not constitute the substantial contribution required to obtain a release.[21] There are no facts here demonstrating that the Released Parties provided a substantial contribution in these cases, which have resulted in the liquidation of the Debtors and a projected payment of approximately 2.1% to the holders of General Unsecured Claims.

21. As noted above, the Debtors did not commission any independent investigation to determine the propriety of the proposed releases or whether the Released Parties and Related Parties conferred any substantial contribution in these cases. The only "investigation" was conducted by the Debtors' counsel at the request of the Chief Restructuring Officer.[22] This investigation is tainted with conflicts and the outcome of the investigation was reported to the same board of the Debtors that is composed of Released Parties themselves. The

---

[21] In exchange for their participation, the Debtors' insiders received commensurate compensation, including additional bonus payments totaling $1,575,000, or approximately $315,000 for each participant in the Sale Incentive Plan. *Motion of the Debtors for Entry of an Order (I) Approving the Debtors' Sale Incentive Plan, and (II) Granting Related Relief* [Docket No. 90-1] ¶ 5.

[22] Combined DS/Plan at 39.

Debtors' long-standing attorneys and the Chief Restructuring Officer, who directed this review, are both Related Parties tasked with investigating claims and causes of action against their fellow Released and Related Parties, to whom they directly or indirectly report. This investigation cannot serve as an independent evidentiary basis for the Court to conclude that the Released Parties and Related Parties conferred the required substantial contribution to entitle them to the Debtors' releases.

**B.  No Substantial Contribution Has Been Provided by the
     Debtors' Former Insiders and Equity Holders to Merit a Release**

22.  In addition to the lack of any articulated substantial contribution to justify the proposed Releases (and the other infirmities identified with respect to the Releases), the Plan also purports to release the Related Parties' "*former* directors, members, managers, officers, limited parties, general partners and equity holders (regardless of whether such interest are held directly or indirectly), predecessors, participants, successors, and assigns."[23] There is no justification to confer releases on any of the Debtors' former insiders. These parties are no longer associated with the Debtors and provided no contribution to the Debtors' postpetition sale and restructuring efforts, let alone the necessary contribution to merit a release. They should be removed from the definition of "Related Parties." Similarly, there is no evidence that equity security holders have made a substantial contribution to justify their proposed inclusion as "Related Parties"; they are not entitled be released by the Debtors.

**C.  The Debtors Impermissibly Seek to Release the Released Parties and
     Related Parties From Gross Negligence, Fraud, and Willful Misconduct**

23.  The Debtors seek to release the Released Parties and Related Parties from all instances of fraud, gross negligence, and willful misconduct.[24] Aside from lacking

---

[23] Combined DS/Plan § 1.101 (emphasis added).

[24] *Id*. § 8.3.

consideration, the Debtors' attempt to absolve the Released Parties from all instances of gross negligence and willful misconduct is a plain violation of applicable law and the Combined DS/Plan must be further amended to fix these provisions accordingly. *See In re Genesis Health Ventures*, 266 B.R. at 607 (ordering debtors to modify releases that sought to release debtors' officers, directors, employees, and professionals, as well as administrative agent for senior lender, from instances of "gross negligence or willful misconduct" and finding there is "no basis" for such releases that go "beyond any applicable standard of liability"); *Whispering Pines Est., Inc. v. Flash Island, Inc. (In re Whispering Pines Est.)*, 370 B.R. 452, 461 (B.A.P. 1st Cir. 2007) (finding that third-party release purporting to cover gross negligence and willful misconduct "renders a plan unenforceable").

D. **The Combined DS/Plan Should Specifically Include Claims Against the Debtors' Insiders as Retained Actions**

24. As noted above, the Combined DS/Plan provides for a small distribution to holders of Class 4 General Unsecured Claims, even after excluding M&T's Deficiency Claim. Moreover, the existence of applicable insurance coverage may be the only meaningful source of distribution for unsecured creditors. Therefore, the definition of Retained Actions should explicitly include claims against the Debtors' current and former directors, officers, managers, limited partners, general partners, and members (other than Causes of Action that have been sold by the Debtors to various purchases of their assets) to make clear that the Plan Administrator may pursue Retained Actions against these parties, including any applicable insurance coverage received to which the Debtors' estates may be entitled.

E. **The Committee Should Designate the Plan Administrator**

25. The primary economic constituents who stand to benefit from any postconfirmation litigation recoveries are holders of Class 4 General Unsecured Claims. There

are limited funds available to compensate the Plan Administrator and to fund litigation expenses. M&T has agreed that the Committee designate the Plan Administrator.[25] The Committee has identified Jeffrey Sutton at Yip to serve as the Plan Administrator. Yip is a leading forensic accounting firm that has substantial bankruptcy consulting, financial investigation, and litigation support experience. The Committee believes that Yip is best positioned to represent the interests of general unsecured creditors in a cost-effective manner and to execute the duties of Plan Administrator. The ability to pursue litigation and any available insurance coverage may be the only source of meaningful recovery for unsecured creditors, who will otherwise receive little or nothing under the current Combined DS/Plan. The Committee therefore should be the party designating the Plan Administrator and not the Debtors.

F. **The Debtors' Combined DS/Plan Does Not Accurately Reflect the Committee's Settlement With M&T as Set Forth at the Transcript of the April 11, 2025 Hearing**

26. M&T agreed not to share in any Class 4 General Unsecured Claims recoveries *except* with respect to tort or contract claims recoveries that arise out of "any tort claims or contractual claims that arise out of any of the transactions that are taking place before Your Honor . . . ."[26] M&T also agreed that its liens *do not* extend to the Debtors' Chapter 5 Causes of Action and insider Causes of Action in which the Debtors' estates have an ownership interest, all as set forth on the April 11, 2025 transcript. However, the Combined DS/Plan does not accurately reflect the terms of the settlement. Despite M&T's agreement to limit recovery on the M&T Deficiency Claim to claims arising from tort or contract recoveries that arise out of any transactions that are taking place before the Court, the Debtors purport to allow the M&T Deficiency Claim to receive distributions, if any, from "other litigation rights that are Retained

---

[25] *See* Transcript of April 11, 2025, at 24, lines 7-10.

[26] *Id.* at 25, lines 12-16.

Actions under the Plan."[27] The Chapter 5 Causes of Action and insider claims that M&T explicitly relinquished at the April 11, 2025 hearing[28] constitute Retained Actions. The Plan must be amended accordingly to accurately reflect the settlement between the Committee and M&T.

27. Moreover, the $625,000 that the Debtors have now allocated in the General Unsecured Claims Recovery was a preliminary estimate provided by the Committee and is subject to change. The final distributable amount to Class 4 General Unsecured Claims has not yet been agreed to by the Committee.

28. The Committee reserves all rights to raise these objections at confirmation if they are not satisfactorily resolved and if the Debtors do not conform the Combined DS/Plan to reflect the terms of the Committee's settlement with M&T. The Committee also reserves all rights with respect to any supplements or modifications to the Combined DS/Plan or any amendments or supplements thereto as well as the ability to raise any issues arising from the Committee's pending discovery at confirmation.

## **CONCLUSION**

**WHEREFORE**, for the foregoing reasons, the Committee respectfully requests that the Court deny confirmation of the Combined DS/Plan, unless the issues set forth in this Objection are properly addressed, and grant the Committee such further relief as may be just and proper under the circumstances.

---

[27] Combined DS/Plan at 30.

[28] Transcript of April 11, 2025, at 23-25.

| Dated: May 14, 2025 | **PACHULSKI STANG ZIEHL & JONES LLP** |
|---|---|
| | /s/ *Laura Davis Jones* |
| | Laura Davis Jones (DE Bar No. 2436) |
| | David M. Bertenthal (*pro hac vice* pending) |
| | Colin R. Robinson (DE Bar No. 5524) |
| | Edward A. Corma (DE Bar No. 6718) |
| | 919 N. Market Street, 17th Floor |
| | P.O. Box 8705 |
| | Wilmington, DE 19899-8705 (Courier 19801) |
| | Telephone: (302) 652-4100 |
| | Facsimile: (302) 652-4400 |
| | Email: ljones@pszjlaw.com |
| | dbertenthal@pszjlaw.com |
| | crobinson@pszjlaw.com |
| | ecorma@pszjlaw.com |
| | |
| | *Proposed Counsel to the* |
| | *Official Committee of Unsecured Creditors* |